UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BROADSPRING, INC.,

                Plaintiff,

v.

CONGOO, LLC, doing business as ADIANT
and ADBLADE, ASHRAF NASHED,
RAFAEL COSENTINO, and DOES 1-10,

                Defendants.

13 Civ. 1866 (JMF)

**AMENDED COMPLAINT**

**Jury Trial Demanded**

Plaintiff Broadspring, Inc., for its amended complaint against defendants Congoo, LLC, doing business as Adiant and Adblade, Ashraf Nashed, Rafael Cosentino and Does 1-10, alleges as follows:

## NATURE OF THE ACTION

1. The parties are competitors in the online marketing and advertising business. Plaintiff brings this action for defamation, unfair competition and tortious interference based on, *inter alia,* a sales campaign of fraud implemented through a brazenly defamatory article about plaintiff that defendants posted on a popular web site. The article, among other libelous statements, falsely accuses plaintiff of having been "shut down by the FTC," "founded by [a notorious spammer who] was banned from online activity for 5 years," and having entered into a settlement with the FTC because "6 million users [were] scammed." Although defendants know that these statements are utterly false, they have rebuffed plaintiff's entreaties for retraction. Worse, they have been republishing the defamatory statements to plaintiff's clients in a successful scheme to steal plaintiff's business. Moreover, even as user information concerning

the author of the defamatory statements has been manually deleted by persons yet to be identified but known to be located in the immediate vicinity of defendants' corporate headquarters, defendants and their counsel have refused to provide even the most basic assurances that they will preserve vital electronic evidence necessary to remedy the harm caused by their misconduct. In short, defendants' conduct is outrageous and cries out for significant monetary damages as well as injunctive relief.

## THE PARTIES

2. Plaintiff Broadspring, Inc. ("Broadspring") is a corporation formed under the laws of Delaware with is principal place of business in California.

3. Upon information and belief, defendant Congoo, LLC ("Congoo") is a limited liability company formed under the laws of Delaware with its principal of place of business in Somerville, New Jersey. Congoo has applied for, and received, authorization to conduct business in the State of New York, and it maintains an office for the transaction of business in New York County. Since at least as early as January 2012, Congoo has conducted business under the name "Adiant." Congoo currently operates several divisions, including, insofar as relevant here, a division known as "Adblade." Adblade is not a separate legal entity.

4. Upon information and belief, defendant Ashraf Nashed is a founder and Chief Executive Officer of Congoo, is a citizen of New Jersey, and dominates and controls Congoo.

5. Upon information and belief, defendant Rafael Cosentino is a founder and Vice President of Business Development of Congoo, and a citizen of New Jersey. Numerous online publications have described Congoo as the "brainchild" of Cosentino and Nashed. Upon information and belief, Cosentino created the defamatory internet article, and disseminated it to Broadspring's customers.

6. Does 1-10 are persons whose true names are unknown to plaintiff and who, upon information and belief, participated in or otherwise aided and abetted the tortious conduct described herein.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over Broadspring's Lanham Act claim pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121, and supplemental jurisdiction over Broadspring's state law claims pursuant to 28 U.S.C. § 1367. In addition, because the amount in controversy exceeds $75,000 exclusive of interest and costs, this Court may also have diversity jurisdiction over this entire action if none of Congoo's members is a citizen of Delaware or California.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because defendant Congoo resides in this district and a substantial part of the events or omissions giving rise to Broadspring's claims occurred in this district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

9. Broadspring is in the business of online marketing and advertising. Among other media, it frequently works with a form of advertisement known as "advertorial." An advertorial is an article, usually full-length, discussing a particular product or service. Web site owners commonly host links to advertorials on their sites in order to generate advertising revenue. Broadspring's clients include many prominent web sites, such as Yahoo! News, Forbes.com, FoxNews.com, WashingtonPost.com and Slate.com.

10. Congoo's Adblade division is also in the online marketing and advertising business, and is a direct competitor of Broadspring.

11. This action arises out of misleading and defamatory statements posted to a popular web site called "Squidoo" (www.squidoo.com). Squidoo is owned and operated by Squidoo, LLC, which, upon information and belief, has its principal place of business in Hastings-on-Hudson, New York.

12. Squidoo permits users to create web pages (which Squidoo calls "Lenses") that contain information about a given topic. Squidoo generates revenue through advertising links in the Lenses, and splits this revenue with the creator of the Lens.

13. At some time on or before March 2, 2013, a Squidoo user with the moniker "Recruiterman" created a Lens on the topic of online advertising and marketing businesses. This Lens contains a list of several of these businesses with accompanying descriptions and ratings, including Broadspring and Adblade. As of March 2, 2013, the Broadspring entry was misleadingly disparaging. For example, the entry stated: "most of [Broadspring's] distribution seems to come through media buys at DSPs and other exchanges. All of their display units take users to howlifeworks.com where they embed links to advertiser pages for offers like 'make your computer faster.'" This is false; most of Broadspring's publisher inventory consists of reputable businesses such as Yahoo!, MSN and CNBC.

14. Further, the entry also stated that Broadspring's advertisers "make[] it tough to cancel" credit card subscriptions. This, too, is false; the advertisers do not make it difficult to cancel, and indeed, upon information and belief, all of Broadspring's advertisers have toll-free numbers customers can call to cancel, and they all comply with applicable FTC standards. And this statement is misleading for the additional reason that it implies Broadspring's advertisers are predominantly subscription offerors when, in fact, the majority are not.

15. The Adblade entry, by contrast, is misleadingly laudatory. For example, the entry omits mention of the fact that a substantial portion of Adblade's advertising consists of continuity credit card offers, and falsely asserts that Adblade is very selective about the publishers with which it works.

16. Thus, upon information and belief, since on or before March 2, 2013, the Lens was at all relevant times misleadingly disparaging of Broadspring and misleadingly laudatory of Adblade.

17. To compound matters, upon information and belief, at some point between March 2 and March 7, 2013, the Broadspring entry in the Lens was edited to include the following brazenly defamatory paragraph:

> Downside: A simple Google search shows that Broadspring was formerly Mindset Interactive, a notorious spyware company. Mindset was eventually shut down by the FTC in 2005 and Sanford Wallace, their founder, known as "Spamford Wallace" was banned from online activity for 5 years. In Nov 2006, Broadspring's shareholders then launched a notorious ringtones company, New Motion dba Atrinsic. Atrinsic has $17mm in financing (from various unknown investors), became public through a shady reverse-merger. They settled 3 years ago with 6 million users scammed: http://www.ftc.gov/os/caselist/0423142/wallacefinaljudgment.pdf

18. The paragraph quoted above is replete with false statements of fact, to wit:

- Broadspring was not "formerly Mindset Interactive," and Mindset Interactive was never "shut down," by the FTC or otherwise. Nor was it a "notorious spyware company."

- Sanford Wallace was not a "founder" of either Broadspring or Mindset. In fact, he has never held any equity in either of these entities, nor has he ever served as an officer, director or employee of either entity.

5

- Atrinsic is not a "notorious ringtones company," and it did not become public "through a shady reverse-merger." The reverse merger was an arms-length transaction properly reflected in SEC filings.

- The statement that "they settled 3 years ago with 6 million users scammed" is also false, and the hyperlink links to a copy of the FTC's final judgment against Sanford Wallace, which had nothing to do with Broadspring or Atrinsic.

19. Upon information and belief, one of the IP addresses used to make these edits is registered to an account owned by Congoo.

20. Upon information and belief, Congoo has been republishing this defamatory article to Broadspring's clients. For example, on March 7, 2013, a principal of Broadspring's then-client, Geology.com, advised that the company had decided to switch its business to Adblade. When Broadspring asked why, the principal replied that "someone" had sent him a link to the defamatory Squidoo Lens, and stated: "I really like the look of your ads, the controls of your website, and the pay was very good … but I am hesitant to run the ads after seeing the above." (Ellipsis in original.) In a subsequent conversation, Geology.com advised Broadspring that it was happy with Broadspring's services, and only switched to Adblade because it had received the defamatory Squidoo post from a Broadspring "competitor."

21. In addition, on March 18, 2013, Broadspring received an e-mail from another client, Tech Media Network, advising that it had received "concerning information" about Broadspring's history, and specifically referenced the FTC judgment against Sanford Wallace that was hyperlinked in the Squidoo posting.

22. On March 11, 2013, Broadspring's outside counsel wrote to Squidoo, LLC to inform it of the defamatory content hosted on its site; Squidoo promptly "locked" the Lens.

6

Nonetheless, as evidenced by the loss of the Geology.com business and the transmission of defamatory information to Tech Media Network, the damage has already begun, and the potential for harm continues because Congoo can still republish the defamatory content despite the locking of the Lens.

### FIRST CLAIM FOR RELIEF — 15 U.S.C. § 1125
### (Against all Defendants)

23. Broadspring incorporates by reference the allegations of paragraphs 1 through 22.

24. Upon information and belief, Congoo, Nashed and Cosentino caused to be published on the Squidoo Lens (a) statements that are likely to deceive, mislead or confuse consumers, as well as (b) false statements about Broadspring. In addition, defendants caused these statements to be republished to Broadspring's clients and prospective clients. This conduct violates § 43(a) of the Lanham Act, 15 U.S.C. § 1125, and Broadspring is entitled to damages, injunctive relief and attorneys' fees.

### SECOND CLAIM FOR RELIEF — DEFAMATION
### (Against all Defendants)

25. Broadspring incorporates by reference the allegations of paragraphs 1 through 24.

26. Congoo knew or should have known that the statements on the Squidoo Lens were false, and its publication of these statements constitutes defamation *per se*, and directly caused Broadspring damages to its reputation as well as the loss of at least one significant client.

### THIRD CLAIM FOR RELIEF — TORTIOUS INTERFERENCE
### (Against all Defendants)

27. Broadspring incorporates by reference the allegations of paragraphs 1 through 26.

28. Upon information and belief, Congoo knew that Geology.com had a business relationship with Broadspring, and intentionally interfered with that relationship by republishing the defamatory Squidoo Lens statements to Geology.com. As a result of these actions,

Geology.com chose not to enter into contracts with Broadspring, causing Broadspring to sustain damages in the form of lost revenue.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Broadspring hereby demands trial by jury of all the issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Broadspring demands judgment against defendants as follows:

A. On the first claim for relief, treble actual damages in an amount to be determined at trial, injunctive relief, and costs and attorneys' fees.

B. On the second claim for relief, actual and punitive damages in an amount to be determined at trial.

C. On the third claim for relief, actual and punitive damages in an amount to be determined at trial.

D. On all claims for relief, any other relief the Court deems proper, together with the costs and disbursements of the action.

Dated: New York, New York
      April 23, 2013

KENT, BEATTY & GORDON, LLP

*/s/ Jack A. Gordon*

Jack A. Gordon
(jag@kbg-law.com)
Joshua B. Katz
(jbk@kbg-law.com)
425 Park Avenue, The Penthouse
New York, New York 10022
(212) 421-4300

*Attorneys for Plaintiff Broadspring, Inc.*