**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BROADSPRING, INC.,

                Plaintiff,

      v.

CONGOO, LLC, doing business as ADIANT
and ADBLADE, ASHRAF NASHED,
RAFAEL COSENTINO and DOES 1-10,

                Defendants.

13 Civ. 1866 (JMF)


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION FOR SUMMARY JUDGMENT OR,**
**ALTERNATIVELY, JUDGMENT ON THE PLEADINGS**


Respectfully submitted,

KENT, BEATTY & GORDON, LLP
Jack A. Gordon
  (jag@kbg-law.com)
Joshua B. Katz
  (jbk@kbg-law.com)
425 Park Avenue, The Penthouse
New York, New York 10022
(212) 421-4300

*Attorneys for Plaintiff Broadspring, Inc.*

## TABLE OF CONTENTS

Page:

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND AND PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.      Congoo's Original Counterclaims and Amended Counterclaims. . . . . . . . . . . . . . 2

          A.     Congoo's Original Counterclaims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

          B.     Congoo Belatedly Requests Leave to Amend its Counterclaims. . . . . . . . . 3

          C.     The Amended Counterclaims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    II.     Broadspring's First Motion for Judgment on the Pleadings. . . . . . . . . . . . . . . . . 6

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    I.      The Legal Standards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

          A.     Summary Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

          B.     Judgment on the Pleadings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    II.     The Tortious Interference Counterclaim Should be Dismissed. . . . . . . . . . . . . . . 9

          A.     There is No Evidence Broadspring Had Knowledge of the Contracts. . . . . 10

          B.     There is No Evidence Broadspring Intentionally and
                Improperly Procured a Breach. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          C.     The Reader's Digest Contract Was Rejected in Bankruptcy. . . . . . . . . . . . 13

    III.    The Unfair Competition Counterclaim Should be Dismissed. . . . . . . . . . . . . . . . 14

    IV.    Congoo Has No Claim Based on Broadspring's Advertising Disclosures. . . . . . . 16

          A.     Congoo Dropped its Sole Claim Based on Advertising Disclosures. . . . . . 18

          B.     Any "Advertising Disclosure" Claim Would Fail as a Matter of Law. . . . 19

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## **TABLE OF AUTHORITIES**

**Cases**                                                                              **Page(s)**

*A A Tube Testing Co., Inc. v. Sohne*,
    20 A.D.2d 639 (2d Dep't 1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Abe's Rooms, Inc. v. Space Hunters, Inc.*,
    38 A.D.3d 690 (2d Dep't 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ascroft v. Iqbal*,
    556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bank of N.Y. v. Meridien Biao Bank Tanzania Ltd.*,
    171 F.R.D. 135 (S.D.N.Y. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Burrowes v. Combs*,
    25 A.D.3d 370 (1st Dep't 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Capitol Records, Inc. v. Mp3tunes, LLC*,
    611 F. Supp. 2d 342 (S.D.N.Y. 2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Chandok v. Klessig*,
    632 F.3d 803 (2d Cir. 2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Eagle Comtronics, Inc. v. Pico Prods., Inc.*,
    256 A.D.2d 1202 (4th Dep't 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*,
    58 F. Supp. 2d 228 (S.D.N.Y. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Grocery Haulers, Inc. v. C&S Wholesale Grocers, Inc.*,
    2011 U.S. Dist. LEXIS 103694 (S.D.N.Y. Sept. 12, 2011). . . . . . . . . . . . . . . . . 14

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hayden v. Paterson*,
    594 F.3d 150 (2d Cir. 2010); . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Health-Chem Corp. v. Baker*,
    915 F.2d 805 (2d Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ideal Steel Supply Corp. v. Anza*,
    652 F.3d 310 (2d Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 19

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
    58 F.3d 27 (2d Cir. 1995).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 21

*Johnson v. Rowley*,
    569 F.3d 40 (2d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Krinos Foods, Inc. v. Vintage Food Corp.*,
    30 A.D.3d 332 (1st Dep't 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 20

*LinkCo, Inc. v. Fujitsu Ltd.*,
    230 F. Supp. 2d 492 (S.D.N.Y. 2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*LoPresti v. Mass. Mutual Life Ins. Co.*,
    30 A.D.3d 474 (2d Dep't 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20

*MBNA Am. Bank, N.A. v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.)*,
    275 B.R. 712 (Bankr. D. Del. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Medtech Prods. Inc. v. Ranir, LLC*,
    596 F. Supp. 2d 778 (S.D.N.Y. 2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Morris v. Lindau*,
    196 F.3d 102 (2d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Pattison-Bolson Rug Svc., Inc.. v. W. & J. Sloane*,
    45 A.D.2d 862 (2d Dep't 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Randa Corp. v. Mulberry Thai Silks, Inc.*,
    2000 U.S. Dist. LEXIS 17014 (S.D.N.Y. Nov. 27, 2000). . . . . . . . . . . . . . . . . . . 15

iii

*Sears Petrol. & Transp. Corp. v. Archer Daniels Midland Co.*,
    2006 U.S. Dist. LEXIS 27540 (N.D.N.Y. May 9, 2006). . . . . . . . . . . . . . . . . . . . . . . 16, 21

*Technomarine SA v. Jacob Time, Inc.*,
    2013 U.S. Dist. LEXIS 100831 (S.D.N.Y. Jul. 16, 2013). . . . . . . . . . . . . . . . . . . . . . 9, 12

*Telecom Int'l Am., Ltd. v. AT&T Corp.*,
    280 F.3d 175 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20

*The Nat'l Pharm. Manuf., Inc. v. Ayerst Laboratories*,
    850 F.2d 904 (2d Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*White Plains Coat & Apron Co. Inc. v. Cintas Corp.*,
    8 N.Y.3d 422 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

## **Statutes, Rules and Regulatiopns**

Fed. R. Civ. P. 12(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 16

Fed. R. Civ. P. 12(h)(2)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. Civ. P. 56(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

11 U.S.C. § 365(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11 U.S.C. § 1107(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Plaintiff Broadspring, Inc. ("Broadspring") respectfully submits this memorandum in support of its motion for summary judgment or, alternatively, judgment on the pleadings, seeking dismissal of the amended counterclaims of Defendant Congoo, LLC, doing business as Adiant and Adblade ("Congoo").

## PRELIMINARY STATEMENT

Congoo's two counterclaims are predicated on its allegation that Broadspring falsely told only two "Congoo Clients," Reader's Digest and Geology.com, that Broadspring pays higher CPM (cost per thousand impressions) than Congoo, and also offers "cleaner" creatives (*i.e.*, advertisements). Congoo's first counterclaim alleges these statements constitute tortious interference with contract because both Reader's Digest and Geology.com had exclusivity and advance notice of cancellation provisions in their contracts, which they allegedly did not honor when they chose to drop Congoo in favor of Broadspring. The second counterclaim alleges that these statements also constitute common law unfair competition. Broadspring is entitled to dismissal of these counterclaims for multiple, independently sufficient reasons.

First, there is no evidence that Broadspring had actual knowledge of the exclusivity and notice of cancellation provisions in either contract—an essential element of a claim for tortious interference.

Second, there is no evidence that Broadspring's statements to Reader's Digest or Geology.com were either improper (as required for tortious interference) or made in bad faith (as required for unfair competition). On the contrary, the undisputed evidence—including Congoo's admissions—establishes that the statements were truthful and did not mislead either recipient.

Third, Reader's Digest did not breach its contract with Congoo; rather, it rejected the contract in connection with its bankruptcy filing in February 2013. *See* 11 U.S.C. § 365. Thus, the tortious interference claim with respect to Reader's Digest fails for this reason as well.

Finally, Congoo's theory of liability for unfair competition is fundamentally unsound. The tort of unfair competition requires misappropriation of the skill, expenditures and labor of another, which is not even alleged by Congoo. Thus, even if there were any genuine factual dispute about the nature of Broadspring's statements to Reader's Digest and Geology.com, this counterclaim claim still fails as a matter of law.

## BACKGROUND AND PROCEDURAL HISTORY

### I.   Congoo's Original Counterclaims and Amended Counterclaims

#### A.   Congoo's Original Counterclaims

On April 11, 2013, Congoo filed an Answer containing three counterclaims: (1) tortious interference with contract, (2) false advertising under the Lanham Act, and (3) common law unfair competition. (Declaration of Joshua B. Katz in Support of Plaintiff's Motion for Summary Judgment, dated December 18, 2013 ("Katz Decl."), Ex. 1 ¶¶ 42-66.)

The tortious interference counterclaim alleged that Broadspring had "systematically solicited publishers, including Readers Digest, Geology.com, Tech Media, World Now and The Journal Register Company (the 'Congoo Clients'), from whom Congoo purchases space," with knowledge that these publishers had exclusive contracts with Congoo. (*Id*. ¶¶ 48-50.) The counterclaim further alleged that Broadspring caused these "Congoo Clients" to breach their contracts by falsely stating that it "offered higher cost per thousand impressions (also known as

'CPM') than Congoo, and that Broadspring's creatives – advertisements – were much cleaner than those of Congoo."  (*Id*. ¶¶ 51-52.)

The Lanham Act counterclaim alleged that "Broadspring intentionally misled, and continues to mislead, actual and prospective customers of Broadspring, including, without limitation, the Congoo Clients, to believe that Broadspring generates higher CPMs than it actually does," and that "Broadspring artificially and wrongly increases its actual CPMs by using unmarked ad units and pointing their [*sic*] ads to sites with articles and blogs, which are also not properly disclosed as being advertisements."  (*Id*. ¶¶ 58-59.)  According to Congoo, these actions "damaged the market for legitimate online advertising," entitling Congoo to damages and injunctive relief.  (*Id*. ¶¶ 60-62.)

Finally, the third counterclaim—unfair competition—incorporated by reference the allegations of the first two counterclaims, and then asserted that "Broadspring intentionally and in bad faith wrongfully competed with Congoo" and "misappropriated business from Congoo," and that "[b]y reason of the foregoing, Congoo has, upon information and belief, been damaged in an amount to be determined at trial."  (*Id*. ¶¶ 63-65.)

### B.    Congoo Belatedly Requests Leave to Amend its Counterclaims

After Congoo interposed the counterclaims, it soon became apparent that Congoo was not prepared to litigate them.  For instance, Broadspring served an interrogatory requesting that Congoo identify all of the "Congoo Clients" so that Broadspring could prepare a defense, but Congoo refused to respond.  (Katz Decl. Ex. 2, Interrog. No. 14.)  In that same vein, Broadspring served a document request seeking revenue information for purposes of determining Congoo's alleged damages, but once again Congoo refused to provide any information.  (*Id*. Ex. 3, Doc.

3

Req. No. 39.)  On June 18, counsel met and conferred in person, and Broadspring's counsel

proposed, as a compromise solution, that Congoo produce a report of gross revenue and net profit

received from each Congoo Client.  This proposal was rejected, yet Congoo continued to take the

position that it would provide no damages discovery.  (*See* ECF Nos. 35 & 36.)

Broadspring was thus forced to seek a discovery conference regarding, among other

issues, Congoo's refusal to provide any damages discovery for its counterclaims.  (ECF No. 35.)

Congoo responded with a letter asserting, "Plaintiff's document request no. 39, which seeks 'all'

documents concerning gross revenues and net profits that Congoo has received from each of its

clients since 2008, is an overly broad and unduly burdensome request that attempts to glean

highly confidential business information from Broadspring's direct competitor.  Moreover, the

request is premature as it relates directly to damages, which are likely to be addressed through the

use of experts in the case."[1]  (ECF No. 36.)

Not surprisingly, the Court admonished Congoo at the conference that its position was

untenable:

> THE COURT:  Ms. Nigro, do you have a proposed compromise here?
> Because I don't understand how you could maintain that
> they're not entitled to at least some information concerning
> your revenues and profits related to the Congoo clients insofar
> as they're entitled to understand what your theory of damages
> is and evaluate whether you have any damages.  If you think
> that there is something less than what they're asking that
> would give them that, I'm open to suggestions.
>
> MS. NIGRO:  My main objection is that the request itself is so
> broad, and then the compromise itself -- it asks us to create
> documents that don't otherwise exist; and the highly confidential

---

[1]     Congoo never proffered a damages expert.

4

> nature of that information, there's extreme anxiety on the part
> of my client in disclosing any documents of that nature.
>
> THE COURT:  I understand.  But again they're entitled
> to some information concerning what your damages, if any, are
> underlying your counterclaims.  You brought the counterclaims.
> You didn't have to bring the counterclaims.
>
> MS. NIGRO:  Understood, your Honor.
>
> THE COURT:  You don't have to pursue the counterclaims
> but if you choose to, then they are entitled to get information
> from you concerning what you allege to be your damages.
> So my question to you is -- I mean beyond my simply
> saying you have to give them this, is there a compromise that
> you can propose that allows them to get what they need to test
> whatever damages you're claiming that preserves your client's
> peace of mind with respect to their confidential proprietary
> information.

(ECF No. 38, 25:7–26:10.)  In response, defense counsel requested an "opportunity to create

some sort of analysis or report and then produce the underlying documents for it" (*id*. 26:11-13),

which was the same proposal that Congoo had rejected at the June 18 meet and confer,

necessitating Broadspring's request for a discovery conference.

The Court granted Congoo that opportunity, and directed Congoo's counsel to "go back

to your client, talk about it, think about it," and then confer with Broadspring's counsel to see if

an agreement could be reached.  (*Id*. 26:18–27:16.)  The parties were directed to report back in

one week, *i.e.*, by July 23.  (*Id*.)  Over the course of the next week, Broadspring's counsel e-

mailed Congoo's counsel numerous times to request a damages proposal, but Congoo

inexplicably refused to respond to any of these entreaties, in derogation of the Court's order.

(ECF No. 43 (enclosure to letter).)

5

Late in the day on July 23, Congoo finally broke its silence by announcing that it had decided to amend its counterclaims; Congoo then demanded that Broadspring advise that same day whether it would consent to the amendment.  (ECF No. 44.)  The proposed amendments contained three significant changes.  First, they limited the "Congoo Clients" to Reader's Digest and Geology.com.  Second, they deleted the Lanham Act cause of action.  Third, they deleted all of the allegations underlying the Lanham cause of action in their entirety.  Based on these proposed amendments, Congoo argued that it need only provide damages discovery pertaining to Reader's Digest and Geology.com.  (*Id*.)

### C.   The Amended Counterclaims

Three days later, the Court granted Congoo's request for leave to amend.  (*Id*.)  Therefore, as amended, Congoo's counterclaims allege only that Broadspring tortiously interfered with the Reader's Digest and Geology.com contracts by making misrepresentations about offering higher CPM and "cleaner" advertising, and that the same conduct also constitutes unfair competition.  (Katz Decl. Ex. 4, ¶¶ 39-56.)  Deleted altogether were the original allegations that Broadspring had violated the Lanham Act by "artificially and wrongly increas[ing] its actual CPMs by using unmarked ad units and pointing their [*sic*] ads to sites with articles and blogs, which are also not properly disclosed as being advertisements," thereby "mislead[ing] online consumers."  (ECF No. 26, ¶¶ 59-60.)

## II.   Broadspring's First Motion for Judgment on the Pleadings

On October 21, Broadspring filed a motion for judgment on the pleadings seeking dismissal of Congoo's unfair competition counterclaim.  (ECF Nos. 64-66.)  The motion noted that this counterclaim "contains no factual allegations distinct from Congoo's tortious

interference claim," and accordingly, "[t]o the extent this counterclaim is based on anything other than the factual allegations of the tortious interference claim, it clearly does not pass muster under *Iqbal* and *Twombly*."  (ECF No. 66, p. 8.)

In its opposition papers filed on November 7 and 8 (ECF Nos. 70-74), Congoo argued that the "cleaner creatives" allegation in the tortious interference counterclaim was really a secret reference to Broadspring's advertising disclosures.  The purported basis for this argument was the October 30, 2013, deposition of Congoo's Rule 30(b)(6) designee, Ashraf Nashed. who testified:  "I don't think it's clean creative when you're sending people to an undisclosed fake review page."  According to Congoo, this testimony was sufficient to retroactively amend the unfair competition claim to allege that Broadspring does not properly label its advertising units. (ECF No. 72, pp. 3, 7-8, 14.)

On November 18, 2013—the day Broadspring's reply was due to be filed[2]—the Court entered an Order on Broadspring's motion for judgment on the pleadings.  The Order noted that discovery closed that day, and that summary judgment motions were due 30 days thereafter.  The Order accordingly denied the motion "without prejudice to seeking the same relief on summary judgment."  (ECF No. 79.)

---

[2]  Congoo served its opposition papers electronically on November 7 and 8, 2013.  (ECF Nos. 70-74.)  Pursuant to Local Civil Rule 6.1(b), in conjunction with Fed R. Civ. P. 6(d), reply papers were due ten days later—*i.e.*, on Monday, November 18.

## ARGUMENT

## I.     The Legal Standards

### A.     Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Because Congoo bears the burden of proving its counterclaims at trial, "the burden on [Broadspring] may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [Congoo's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment." *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011).

To overcome Broadspring's showing that there is no evidence to support essential elements of Congoo's counterclaims, Congoo "may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful." *Morris v. Lindau*, 196 F.3d 102, 109 (2d Cir. 1999) (internal quotation omitted).  "The mere existence of a scintilla of evidence in support of [Congoo's] position will be insufficient; there must be evidence on which the jury could reasonably find for [Congoo]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### B.     Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure authorizes a party to move for judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial."

And Rule 12(h) expressly authorizes a party to raise the defense of failure to state a claim "by a motion under Rule 12(c)." Fed. R. Civ. P. 12(h)(2)(B). Thus, "a defense of failure to state a claim may be raised in a Rule 12(c) motion for judgment on the pleadings, and when this occurs the court simply treats the motion as if it were a motion to dismiss." *The Nat'l Pharm. Manuf., Inc. v. Ayerst Laboratories*, 850 F.2d 904, 910 n.2 (2d Cir. 1988).

Since a Rule 12(c) motion is treated as if it were a motion to dismiss, the familiar requirements of *Iqbal* and *Twombly* fully apply. *Hayden v. Paterson*, 594 F.3d 150, 157 n.4, 160-61 (2d Cir. 2010); *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009). Accordingly, "to survive a [Rule 12(c)] motion," Congoo's counterclaims "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ascroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Furthermore, "although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Hayden*, 594 F.3d at 161 (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)).

## II.     The Tortious Interference Counterclaim Should be Dismissed

To prove tortious interference with contract, "the plaintiff must show the existence of its valid contract with a third party, defendant's knowledge of that contract, defendant's intentional and improper procuring of a breach, and damages." *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 426 (2007). "To withstand summary judgment as to a tortious

interference claim," therefore, Congoo "must raise a triable issue" as to each of these four

elements.  *Technomarine SA v. Jacob Time, Inc.*, 2013 U.S. Dist. LEXIS 100831, *9 (S.D.N.Y.

Jul. 16, 2013).  Here, Broadspring is entitled to summary judgment because (i) there is no

evidence that it knew the terms of Congoo's contracts with either Reader's Digest or

Geology.com; (ii) there is no evidence that it intentionally and improperly procured any breach;

and (iii) the Reader's Digest contract was rejected in bankruptcy.

### A.      There is No Evidence Broadspring Had Knowledge of the Contracts

The "knowledge" element of tortious interference is strictly construed.  It requires proof

that Broadspring had "***actual*** knowledge" of each contract; in other words, "an allegation that

[Broadspring] 'should have known' of the existence of the contract is insufficient."  *A A Tube*

*Testing Co., Inc. v. Sohne*, 20 A.D.2d 639 (2d Dep't 1964) (emphasis in original); *see also*

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 58 F. Supp. 2d 228, 267 n.21 (S.D.N.Y.

1999) (plaintiff's "assertion that 'by virtue of their knowledge of ACM's status as a registered

investment advisor, or otherwise, the Brokers knew or should have known that ACM was a party

to investment advisory agreements with each of the Funds and knew or should have known of

those agreements' terms' is also patently insufficient").

Further, not only must Congoo prove actual knowledge of the contract, it must also show

that Broadspring knew of the specific exclusivity and notice of cancellation provisions that

Congoo claims were breached.  *See, e.g., Pattison-Bolson Rug Svc., Inc.. v. W. & J. Sloane*, 45

A.D.2d 862 (2d Dep't 1974) ("Plaintiff failed to prove that defendant Servicemaster willfully

induced a breach of its rug cleaning, repair and storage contract with defendant Sloane, because it

failed to show that Servicemaster had knowledge that the contract was anything but terminable at

will"); *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 797 (S.D.N.Y. 2008) ("it cannot be said that Plaintiff is claiming that DenTek saw the governing contracts and therefore was aware of the limitations they imposed on Duane and Kaplan.  Given these allegations, the Court finds inadequate the general claim of DenTek's knowledge of the contracts").

There is absolutely no evidence that Broadspring ever saw the contracts or was informed of the exclusivity or notice of cancellation provisions.  None of Broadspring's witnesses testified that they ever saw the Reader's Digest or the Geology.com contract, or had been informed of their terms.  (Katz Decl. Ex. 5, Broadspring's 30(b)(6) Dep. Tr., pp. 247:15-19, 255: 4 -15; Houck Dep. Tr., pp. 80:13-81:20, 102:20-103:9.)  Likewise, representatives of both Reader's Digest and Geology.com confirmed at deposition that they did not show the contracts to Broadspring or disclose any of the terms.  (*Id.* Ex. 6, King Dep. Tr., pp. 52:25-53:14, 102:24-103:11; Sottile Dep. Tr., pp. 31:16-22.)  Indeed, both representatives testified that they themselves were not even aware of any notice of cancellation provisions in the respective contracts.  (*Id.* Ex. 7, King Dep. Tr., pp. 50:11-21, 108:14-16; Sottile Dep. Tr., pp. 32:3-4.)

And, for its part, Congoo's Rule 30(b)(6) designee confirmed that Congoo has no "specific evidence" that Broadspring knew of either contract, and that Congoo's allegation to the contrary was based on rank speculation about what Broadspring purportedly should have "assumed" about Congoo's relationships with Reader's Digest and Geology.com. (*Id.* Ex. 8, Congoo's 30(b)(6) Dep. Tr., pp. 179:16-180:22, 220:19-222:12.)  But as previously explained, allegations about what Broadspring "should have known" are patently "insufficient."  *A A Tube Testing Co., Inc.*, 20 A.D.2d at 639.  Rather, Congoo must prove "actual knowledge of the specific contract."  *LinkCo, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492, 495 (S.D.N.Y. 2002)

11

(quotation omitted).  "Knowledge of a 'specific' contract requires that the defendant must know of a particular contract between plaintiff and a third party, rather than knowing in general that plaintiff has contracts or agreements with third parties."  *Technomarine SA*, 2013 U.S. Dist. LEXIS 100831, *14.  Because Congoo lacks any evidence that could support a finding of actual knowledge, Broadspring is entitled to summary judgment.

### B.   There is No Evidence Broadspring Intentionally and Improperly Procured any Breach

To survive summary judgment, Congoo must also come forward with evidence that Broadspring intentionally and improperly procured breaches by Readers' Digest and Geology.com.  *White Plains Coat & Apron Co., Inc.*, 8 N.Y.3d at 426.  As the Court of Appeals explained,

> [P]rotecting existing contractual relationships does not negate a competitor's right to solicit business, where liability is limited to improper inducement of a third party to breach its contract.  Sending regular advertising and soliciting business in the normal course does not constitute inducement of breach of contract.  A competitor's ultimate liability will depend on a showing that the inducement exceeded a minimum level of ethical behavior in the marketplace.

*Id*. at 427 (quotation omitted).  "[T]o be actionable, the interference must be intentional and not incidental to some other lawful purpose."  *Health-Chem Corp. v. Baker*, 915 F.2d 805, 809 (2d Cir. 1990).

No rational jury could conclude that Broadspring acted improperly by telling Reader's Digest or Geology.com that it typically offers higher CPM and cleaner creatives.  In fact, both Reader's Digest and Geology.com testified that they considered Broadspring's creatives to be cleaner than Congoo's, and neither testified that Congoo offered higher CPM.  (*Id*. Ex. 9, King Dep. Tr., pp. 66:13-15, 71:5-18; Sottile Dep. Tr., pp. 49:17-50:10, 66:1-68:6.)  Indeed, the

evidence shows that even Congoo agreed that Broadspring's creatives are cleaner.  In an internal email string, Congoo's senior executives discussed an email in which Broadspring's CEO told a publisher, "typically we are able to offer publishers a higher CPM and much cleaner creatives." In the internal portion of the string, Congoo's executives admit that Broadspring is "right about running cleaner creative." (*Id.* Ex. 10.)  Put simply, making truthful statements to potential customers about offering better prices and cleaner advertising units cannot possibly "exceed[] a minimum level of ethical behavior in the marketplace."  *White Plains Coat & Apron Co., Inc.*, 8 N.Y.3d at 427.  Accordingly, Broadspring is entitled to summary judgment based on this element of tortious interference.

### C.   The Reader's Digest Contract Was Rejected in Bankruptcy

The tortious interference counterclaim with respect to Reader's Digest fails for the additional reason that Reader's Digest rejected the Congoo contract in bankruptcy.  Pursuant to 11 U.S.C. § 365(a), a bankruptcy trustee (or, where applicable, a debtor in possession, *see* 11 U.S.C. § 1107(a)), "may assume or reject any executory contract or unexpired lease of the debtor," subject to court approval.  Reader's Digest filed for bankruptcy in February 2013. (Bankr. S.D.N.Y. No. 13-22233-rdd, ECF No. 1.)  It exercised its right to reject the Congoo contract on June 11 (*id.*, ECF No. 397, p. 62), and the Bankruptcy Court approved the rejection on June 28, 2013 (*id.* ECF No. 478).

Thus, Reader's Digest did not breach its contract with Congoo, but rather exercised its statutory right to reject the contract.  This cannot give rise to liability for tortious interference. *See MBNA Am. Bank, N.A. v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.)*, 275 B.R. 712, 723 (Bankr. D. Del. 2002) (dismissing claim that defendant committed tortious

interference by inducing debtor to exercise rejection rights under Section 365).  Relatedly, Reader's Digest's rejection of the contract also means that Congoo cannot prove that Broadspring's conduct was a but-for cause.  In *Grocery Haulers, Inc. v. C&S Wholesale Grocers, Inc.*, 2011 U.S. Dist. LEXIS 103694, *6-8 (S.D.N.Y. Sept. 12, 2011), the court dismissed an analogous tortious interference claim because the "complaint suggests at most that [defendant] presented itself to [debtor] as a lower-cost alternative to [plaintiff], and that [debtor] used its powers under the Bankruptcy Code to reject its existing contract with [plaintiff] and shift its business to [defendant]."  *See also Burrowes v. Combs*, 25 A.D.3d 370, 373 (1st Dep't 2006) ("a plaintiff must allege that the contract would not have been breached 'but for' the defendant's conduct.").

### III.    The Unfair Competition Counterclaim Should be Dismissed

The unfair competition counterclaim merely incorporates by reference the allegations of the tortious interference claim and then recites, in formulaic and conclusory fashion, that this same conduct constitutes unfair competition.  (Katz Decl. Ex. 4, ¶¶ 53-56.)  Therefore, when read in the light most generous to Congoo, this counterclaim alleges that Broadspring competed unfairly by misleading Reader's Digest and Geology.com about Broadspring's CPM and cleaner creatives.  Broadspring is entitled to dismissal of this counterclaim.

First, the tort of unfair competition requires proof that Broadspring acted in bad faith.  *See Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 35 (2d Cir. 1995) (for common law unfair competition, "there must be some showing of bad faith"); *Krinos Foods, Inc. v. Vintage Food Corp.*, 30 A.D.3d 332, 334 (1st Dep't 2006) (same).  There is no evidence that Broadspring acted in bad faith.  Indeed, both Reader's Digest and Geology.com confirmed that

14

Broadspring did not say anything misleading or untruthful, and ***Congoo itself*** admitted that Broadspring's creatives were cleaner.  (Katz Decl. Ex. 10.)

More fundamentally, Congoo's theory of unfair competition is legally flawed.  "While the tort of unfair competition may be a broad and flexible doctrine, it is not all-encompassing." *Randa Corp. v. Mulberry Thai Silks, Inc.*, 2000 U.S. Dist. LEXIS 17014, *12 (S.D.N.Y. Nov. 27, 2000).  In particular, the "essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship."  *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001) (quotation omitted); *Eagle Comtronics, Inc. v. Pico Prods., Inc.*, 256 A.D.2d 1202, 1203 (4th Dep't 1998) ("the gravamen of a claim of unfair competition is the bad faith misappropriation of a commercial advantage belonging to another by infringement or dilution of a trademark or trade name or by exploitation of proprietary information or trade secrets.").

Congoo makes no such allegation, and a pleading that "fails to allege those essential elements" fails to state a claim and must be dismissed.  *Id*. at 1203; *see also Abe's Rooms, Inc. v. Space Hunters, Inc.*, 38 A.D.3d 690, 693 (2d Dep't 2007) ("Since the plaintiffs did not allege that the defendants misappropriated their labors, skills, expenditures, or good will or otherwise attempted to capitalize on the plaintiffs' name or reputation in the room-renting business, the [common law unfair competition] cause of action also should have been dismissed"); *LoPresti v. Mass. Mutual Life Ins. Co.*, 30 A.D.3d 474, 476 (2d Dep't 2006) ("cause of action alleging unfair competition was properly dismissed insofar as asserted against the respondents because the complaint failed to allege the bad faith misappropriation of a commercial advantage which

15

belonged exclusively to him"); *Krinos Foods, Inc.*, 30 A.D.3d at 333-34 ("Nor can plaintiff base

a cause of action for unfair competition on defendant's acts of importing, selling and offering to

sell products that defendant knew were covered by the distributorship agreement. Such acts do

not, as plaintiff conclusorily alleges, constitute 'a bad faith misappropriation' of plaintiff's skill,

labor and expenditures").

Congoo alleges merely that Broadspring made misleading statements to two web site

publishers. Thus, even if there were any evidence that the two publishers were misled—and

there is none—Congoo would still fail to state a claim for unfair competition. *See Sears Petrol.*

*& Transp. Corp. v. Archer Daniels Midland Co.*, 2006 U.S. Dist. LEXIS 27540, *9-16

(N.D.N.Y. May 9, 2006) (allegations of deception or fraud without misappropriation fail to state

claim for unfair competition); *Capitol Records, Inc. v. Mp3tunes, LLC*, 611 F. Supp. 2d 342, 347

(S.D.N.Y. 2009) (same).

## IV.    Congoo Has No Claim Based on Broadspring's Advertising Disclosures

Because Congoo's November 7 opposition to Broadspring's original Rule 12(c) motion

raised—for the first time—the specter of an advertising disclosure claim even though it appears

nowhere in Congoo's pleading, we address that unpled theory of liability, too. Congoo's

opposition asked the Court to construe its unfair competition counterclaim in light of the October

30 deposition testimony of its Rule 30(b)(6) designee, Ashraf Nashed. (ECF No. 72, pp. 7-9

(citing *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310 (2d Cir. 2011).) In particular, Congoo

cited the following testimony:

> Q. And what about the statement that Broadspring's creatives, advertisements,
> were much cleaner than those of Congoo, what's false or misleading about that?

A.  I don''t think it's clean creative when you're sending people to an undisclosed fake review page.

Q.  So that's what you're talking about --

A.  Yes.

Q.  -- about creatives, advertisements were much cleaner than those of Congoo?

A.  I don't think that's a clean creative. Other issues with the creatives are the actual ads themselves are making some pretty outrageous claims. Buy an iPad for under $40, buy a Mac Book for under $100, that's not clean creative.

Q.  We're talking about cleaner creatives.

A.  That's my definition of clean creative. That's not clean creative, in my view.

Q.  Anything else?

A.  You can look at their advertising directly.

Q.  I'm looking at the counterclaim that we're moving to dismiss. Anything else?

MR. ZIMMERMAN:  Objection. I will note for the record that counsel has facts that they will be relying upon that the client may or may not personally be aware of.

MR. GORDON:  Well, that's fine.  But he's the 30(b)(6) designee on this subject, so this is when it ends.

(ECF No. 72, p. 8.)[3]  Based on this testimony, Congoo argued that it had "elucidated the meaning of the phrase 'much cleaner creatives' through discovery."  (ECF No. 72, p. 3.)

However, the history of Congoo's amendment of its counterclaims establishes that "cleaner creatives" has nothing do with advertising disclosures, and that Congoo's 30(b)(6) testimony was a mendacious, back-door attempt to revive the Lanham Act counterclaim that Congoo decided to drop in an effort to avoid discovery.  In any event, Congoo's theory of

---

[3]  It bears noting that the position taken by Congoo's counsel violates Rule 30(b)(6).  A corporate designee must testify about facts "known or reasonably available to the organization," Fed. R. Civ. P. 30(b)(6), and facts possessed by counsel of record are plainly "reasonably available" to the client.  *See Bank of N.Y. v. Meridien Biao Bank Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997) ("The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources.").

liability based on advertising disclosures fails to state a claim, because it does not allege the required bad faith misappropriation.

### A.    Congoo Dropped its Sole Claim Based on Advertising Disclosures

Congoo's argument that "cleaner creatives" is secret code for "advertising disclosures" might be slightly less implausible if it had never interposed the Lanham Act counterclaim.  That counterclaim expressly alleged that Broadspring competed unfairly "by using unmarked ad units and pointing their [*sic*] ads to sites with articles and blogs, which are also not properly disclosed as being advertisements," and that this "results in injury to consumers, who make purchases based on undisclosed advertisements, and has damaged the market for legitimate online advertisements."  (ECF No. 26, ¶¶ 59-60.)  Unfortunately for Congoo, that was the precise counterclaim it decided to drop when it sought leave to amend in July.  (ECF Nos. 44 & 45.)  The July 26 amendment limited the "Congoo Clients" to Reader's Digest and Geology.com and completely deleted the "advertising disclosure" allegations of the Lanham Act claim.

Consequently, since July 26, Congoo's counterclaims lacked any reference to advertising disclosures, because Congoo had affirmatively excised those allegations from its pleading. Nevertheless, the excised allegations of the Lanham Act counterclaim show that Congoo knew how to allege, in plain English, a failure to make advertising disclosures, and that it elected not do so when it pled the tortious interference claim.

Congoo's reliance on its designee's deposition testimony is misplaced for the additional reason that the testimony does not "fill gaps," but rather seeks to effect a back-door amendment of the unfair competition counterclaim.  Although the Second Circuit held in *Ideal Steel* that a party may use facts learned in discovery to cure pleading deficiencies identified in a Rule 12(c)

motion, the plaintiff there was buttressing its complaint with details obtained from its adversaries. *Ideal Steel Supply Co.*, 652 F.3d at 325-26. Here, Congoo is attempting the exact opposite, by using its own deposition testimony to amend its counterclaim by changing the meaning of the word "cleaner." Nothing in *Ideal Steel* or any other case permits that type of duplicitous maneuver.

In fact, Congoo can't even get its bogus story straight. Another Congoo executive, Ian Kane, testified that his definition of cleaner creatives is completely different from the 30(b)(6) witness' definition. Kane, who is Congoo's Director of Publisher Relations, testified that "cleaner" is a "very vague term," but "to me it means image resolution." (Katz Decl. Ex. 11.)

Moreover, the documentary evidence strongly indicates that Mr. Nashed's deposition testimony about his understanding of the meaning of "cleaner" was mendacious. As discussed above, in an internal email discussion, Congoo's executives agreed that Broadspring is "right about running cleaner creative," and discussed the various aesthetic considerations that, in their view, made Broadspring's creatives cleaner. Their discussion contains no mention of advertising disclosures. (Katz Decl. Ex. 10.)

In sum, the record does not support, but rather forecloses, Congoo's contention that it has pled an unfair competition claim based on Broadspring's advertising disclosures. *Cf. Ideal Steel Supply Co.*, 652 F.3d at 325-26.

**B.    Any "Advertising Disclosure" Claim Would Fail as a Matter of Law**

Even if the Court were to permit Congoo to take the position that its "cleaner creatives" allegation somehow refers to the deleted references to advertising disclosures, the unfair competition claim still fails as a matter of law.

First, there is no evidence whatsoever that Broadspring made representations to Reader's Digest or Geology.com about the adequacy of its advertising disclosures.  Rather, the undisputed evidence demonstrates that neither the speaker of the statements (Broadspring) nor the recipients (Reader's Digest and Geology.com) shared Congoo's purported definition of cleaner.  (Katz Decl. Ex. 12, Houck Dep. Tr. 105:7-13; Ex. 9, King Dep. Tr., pp. 66:13-15, 71:5-18; Sottile Dep. Tr., pp. 49:17-50:10, 66:1-68:6.)   Indeed, Congoo's own Director of Publisher Relations admitted that he, too, does not believe "cleaner" refers to the adequacy of an ad unit's disclosures.  (*Id*. Ex. 11, Kane Dep. Tr. 86:20-87:9.)  And both Reader's Digest and Geology.com testified that they considered Broadspring's creatives to be cleaner than Congoo's. (*Id*. Ex. 9, King Dep. Tr., pp. 66:13-15, 71:5-18; Sottile Dep. Tr., pp. 49:17-50:10, 66:1-68:6.); therefore, regardless of what "cleaner" purportedly means to Congoo, the evidence conclusively establishes that the recipients were not misled.

Second, any misrepresentation about Broadspring's advertising disclosures would not constitute unfair competition.  As explained above, the essence of unfair competition is "that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship."  *Telecom Int'l Am., Ltd.*, 280 F.3d at 197.  The failure to plead and prove this essential element requires dismissal.  *See, e.g., Abe's Rooms, Inc.*, 38 A.D.3d at 693; *LoPresti*, 30 A.D.3d at 476; *Krinos Foods, Inc.*, 30 A.D.3d at 333-34; *Eagle Comtronics, Inc.*, 256 A.D.2d at 1203.  Congoo's unpled "advertising disclosure" theory of unfair competition does not allege any misappropriation of, or attempt to capitalize on, any of Congoo's tangible or intellectual property.  Rather, Congoo asserts only that Broadspring made misrepresentations to

20

two publishers about the adequacy of Broadspring's advertising disclosures, which is insufficient.  *Sears Petrol. & Transp. Corp.*, 2006 U.S. Dist. LEXIS 27540, *9-16.

Finally, Congoo cannot possibly satisfy the requirement of bad faith.  *See Jeffrey Milstein, Inc.*, 58 F.3d at 35.  Given that Congoo's senior executives admitted in emails that Broadspring was correct about offering cleaner creatives, and given that Congoo's own witnesses offered contradictory testimony about what "cleaner" means, it cannot be bad faith for Broadspring to tell publishers that it typically offers cleaner creatives.

## <u>CONCLUSION</u>

For the foregoing reasons, it is respectfully submitted that the Court should grant summary judgment or, alternatively, judgment on the pleadings, dismissing Congoo's counterclaims for tortious interference and unfair competition.

Dated: New York, New York
      December 18, 2013

                           KENT, BEATTY & GORDON, LLP

                            /s/  Jack A. Gordon
                           Jack A. Gordon
                           Joshua B. Katz
                           425 Park Avenue, The Penthouse
                           New York, New York 10022
                           (212) 421-4300
                           jag@kbg-law.com
                           jbk@kbg-law.com

                           *Attorneys for Plaintiff*
                           *Broadspring, Inc.*