MOSES & SINGER LLP
*Attorneys for Defendants*
Philippe Zimmerman
Shari Alexander
405 Lexington Avenue
New York, NY 10174-1299
Tel: 212-554-7800 Fax: 212-554-7700
pzimmerman@mosessinger.com
salexander@mosessinger.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BROADSPRING, INC.,<br><br>  Plaintiff/Counterclaim-Defendant,<br><br>  v.<br><br>CONGOO, LLC, doing business as ADIANT and ADBLADE, ASHRAF NASHED, RAFAEL COSENTINO, and DOES 1-10,<br><br>  Defendants/Counterclaimant. | 13 Civ. 1866 (JMF) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTION TO STRIKE THE EXPERT REPORT
<u>AND PRECLUDE THE TESTIMONY OF LANCE JAMES</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I. THE JAMES REPORT IS NOT IRRELEVANT ............................................................. 3

II. THE JAMES REPORT IS NOT UNRELIABLE ............................................................. 7

III. THE JAMES REPORT DOES NOT IMPERMISSIBLY RELY UPON
 HEARSAY ..................................................................................................................... 9

IV. LANCE JAMES' OPINIONS ARE NOT INADMISSIBLE ......................................... 11

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Amorgianos v. Amtrak*,
   303 F.3d 256 (2d Cir. 2002)..................................................................................................4

*Arista Records LLC v. Lime Group LLC*,
   784 F.Supp.2d 398 (S.D.N.Y. 2011).............................................................................12, 13

*Bd. of Trs. of Aftra Ret. Fund v. JPMorgan Chase Bank, N.A.*,
   No. 09 Civ. 686 (SAS), 2011 WL 6288415 (S.D.N.Y. Dec. 15, 2011)....................................8

*Cedar Petrochems., Inc. v. Dongbu Hannong Chem. Co., Ltd.*,
   769 F. Supp. 2d 269 (S.D.N.Y. 2011).....................................................................................5

*Computer Assocs. Int'l, Inc. v. Simple.com, Inc.*,
   No. CV 02-2748 (DRH)(MLG), 2005 WL 6042722 (E.D.N.Y. Jan. 19, 2005)........................8

*Dandong v. Pinnacle Performance Ltd.*,
   No. 10 Civ. 8086 (JMF), 2013 WL 5658790 (S.D.N.Y. Oct. 15, 2013) ..................................8

*Daubert v. Merrell Dow Pharms.*,
   509 U.S. 579, 597 (1993)........................................................................................................2

*Ebbert v. Nassau County*,
   2008 WL 8086382 (E.D.N.Y. Sept. 29, 2008) .......................................................................7

*Fournier v. McCann Erickson*,
   242 F.Supp.2d 318 (S.D.N.Y. 2003).....................................................................................10

*Giladi v. Strauch*,
   No. 94 Civ. 5976 (RMB)(HBD), 2007 WL 415365 (S.D.N.Y. Feb. 6, 2007) .........................8

*Hernandez v. Napoli*,
   2012 WL 1438240 (S.D.N.Y. Apr. 25, 2012).......................................................................11

*Highland Capital Mgmt., L.P. v. Schneider*,
   551 F.Supp.2d 173, 182 (S.D.N.Y. 2008)............................................................................13

*Howard v. Walker*,
   406 F.3d 114 (2d Cir. 2005)..................................................................................................10

*IBM v. BGC Partners, Inc.*,
   No. 10 Civ. 128 (PAC), 2013 WL 1775367 (S.D.N.Y. Apr. 25, 2013) ..................................8

*In re Fosamax Prods. Liab. Litig.*,
  No. 06 MD 1789 (JFK), 2013 WL 174416 (S.D.N.Y. Jan. 15, 2013) ..................... 11

*In re Rezulin Prods. Liab. Litig.*,
  309 F.Supp.2d 531, 546 (S.D.N.Y. 2004) ........................................................... 12,13

*Indradjaja v. Holder*,
  737 F.3d 212 (2d Cir. Dec. 9, 2013) ......................................................................... 4

*Int'l Bus. Mach. Corp. v. BGC Partners, Inc.*,
  No. 10 Civ. 128 (PAC), 2013 WL 1775437 (S.D.N.Y. April 25, 2013) .................. 7

*Joseph S. v. Hogan*,
  No. 06 Civ. 1042 (BMC)(SMG), 2011 WL 2848330 (E.D.N.Y. July 15, 2011) ...... 8

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) .................................................................................................. 3

*Leser v. U.S. Bank Nat'l Ass'n*,
  No. 09-CV-2362 (KAM)(MDG), 2012 WL 4472025 (E.D.N.Y. Sept. 25, 2012) .... 5

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
  525 F. Supp. 2d 558 (S.D.N.Y. 2007) ....................................................................... 2

*McCullock v. H.B. Fuller Co.*,
  61 F.3d 1038 (2d Cir. 1995) ..................................................................................... 8

*Nat'l Envelope Corp. v. Am. Pad & Paper Co. of Del., Inc.*,
  No. 06 Civ. 12988 (SHS)(RLE), 2009 WL 5173920 (S.D.N.Y. Dec. 30, 2009) ..... 8

*Reach Music Publ'g, Inc. v. Warner Chappell Music, Inc.*,
  No. 09 Civ. 5580 (ITS)(GWG), 2013 WL 6767806 (S.D.N.Y. Dec. 23, 2013) ....... 3

*Rochester Gas & Elec. Corp. v. GPU, Inc.*,
  No. 00-CV-6369, 2008 WL 8912083 (W.D.N.Y. Aug. 8, 2008) ............................ 13

*Strauss v. Credit Lyonnais, S.A.*,
  925 F.Supp.2d 414 (E.D.N.Y. 2013) ...................................................................... 11

*The Auto. Ins. Co. of Hartford v. Electrolux Home Prods., Inc.*,
  No. 10-CV-0011 (CS), 2012 WL 6629238 (S.D.N.Y. Dec. 20, 2012) ..................... 5

*U.S. v. Locascio*,
  6 F.3d 924 (2d Cir. 1993) ................................................................................. 10, 11

**OTHER AUTHORITIES**

5 WEINSTEIN'S FEDERAL EVIDENCE § 803.19[1], at 803-118 (2013) ............................................. 10

Federal Rule of Evidence 401 ................................................................................................. 3, 4

Federal Rule of Evidence 702 ................................................................................................. 2, 13

Federal Rule of Evidence 803(17) ............................................................................................. 10

**PRELIMINARY STATEMENT**

Defendants Congoo, LLC, Ashraf Nashed and Rafael Cosentino (collectively, "Defendants") respectfully submit this memorandum in opposition to plaintiff Broadspring, Inc.'s ("Plaintiff") motion to strike the expert report of Lance James (the "James Report") and to preclude the testimony of Lance James ("James") (the "Motion").[1]

An important question in this action is whether Mindset Interactive, Inc. ("Mindset"), which was identified as Plaintiff's predecessor in the Squidoo Lens that is the basis of Plaintiff's claims, was involved in distributing spyware. Confronted with an expert report that concludes that Mindset wrote and distributed spyware,[2] Plaintiff seeks to preclude the expert's report and testimony from being presented to the jury. Unable to credibly attack the James Report on the basis of James' qualifications or methodology, Plaintiff instead relies on incomplete statements of law and mischaracterizations of facts in an attempt to persuade the Court to strike the James Report in its entirety and to preclude James from testifying. However, as demonstrated below, the laws and rules of evidence were precisely designed to protect expert reports, such as the James Report, from these tactics.

Plaintiff's first argument, that the James Report is inadmissible because James has not detailed the "chain of custody" of the underlying data, misstates the law and relies entirely upon evidentiary "buzzwords" to suggest inadmissibility. Plaintiff's next arguments – that the James Report is unreliable because James has not conformed to traditionally scientific modes of

---

[1] A copy of the James Report was attached as Exhibit 1 to Plaintiff's Memorandum of Law in Support of its Motion to Strike the Expert Report and Preclude the Testimony of Lance James. (Dkt. No. 103.)

[2] The James Report also evidences the fact that Broadspring, Inc., was involved in distributing spyware after acquiring Mindset Interactive's assets.

substantiation and impermissibly relies upon hearsay evidence – present an incomplete statement of the law of evidence and are equally meritless. These arguments also completely ignore the principle that relevant evidence should be admitted, and that concerns about the underlying data or methodology are to be weighed by the trier of fact. For the following reasons, the Motion should be denied in its entirety.

## ARGUMENT

Under Federal Rule of Evidence 702 and the Supreme Court's ruling in *Daubert v. Merrell Dow Pharms.*, the district court must act as a gatekeeper and determine whether proposed expert testimony "both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993). The courts are given "broad latitude" in making this determination, but are guided by the principle that the Federal Rules of Evidence "favor the admissibility of expert testimony." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 562 (S.D.N.Y. 2007) (*citing Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999)). To be sure, "excluding expert testimony is the exception rather than the rule, particularly since vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof can serve as the means to attack shaky but admissible evidence." *Id.*

In *Daubert*, the Supreme Court identified several factors to be considered by the courts in determining the reliability of the expert's methodology (but not the expert's conclusions) including, (1) whether the method or theory can be tested, (2) whether it has been subjected to peer review and publication, (3) the known or potential rate of error associated with the technique and the existence and maintenance of standards controlling the technique's operation, and (4) whether the method has achieved "general acceptance" with the relevant community. *Daubert*, 509 U.S. at 592-595. However, the Supreme Court has recognized that "there are many

different kinds of experts, and many different kinds of expertise" and, subsequently, has emphasized that the reliability inquiry "is a flexible one." *Kumho Tire*, 526 U.S. at 150. As a result, the factors "identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* Ultimately, the inquiry "depends upon the particular circumstances of the particular case at issue," and the trial court is afforded "the same kind of latitude in deciding how to test an expert's reliability ... as it enjoys when it decides whether or not that expert's relevant testimony is reliable." *Id.* at 150-152.

## I.      THE JAMES REPORT IS NOT IRRELEVANT

Plaintiff argues that the James Report is irrelevant, and therefore inadmissible, because it does not set forth a "chain of custody" of the binaries that it reviewed in finding that the software distributed by Mindset was in fact spyware. This argument not only misunderstands the standard for relevance under the Federal Rules of Evidence, but also distorts the standard for admissibility of expert testimony under the law.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. With respect to expert testimony, a determination of relevancy focuses squarely on "the purpose for and context in which the testimony would be offered." *Reach Music Publ'g, Inc. v. Warner Chappell Music, Inc.*, No. 09 Civ. 5580 (ITS)(GWG), 2013 WL 6767806, *7 (S.D.N.Y. Dec. 23, 2013) (finding that expert testimony as to whether a party had actual knowledge of a contract – an essential element of the tortious interference with contract claim asserted against it – was relevant). To the extent that expert testimony speaks to an essential element of the cause of action asserted, it is relevant. *Id.* See

*also, Indradjaja v. Holder*, 737 F.3d 212 (2d Cir. Dec. 9, 2013) (expert testimony purporting to establish key element of claim was "plainly relevant").

The defamation claim asserted in the instant action, in defense of which the James Report is submitted, hinges, in part, upon whether the Defendants' alleged statement that Mindset Interactive was involved in distributing spyware is true, *viz.*, whether software distributed by Plaintiff's predecessor was in fact spyware. The James Report is specifically designed to address an element of the defense of truth, and sets forth for the trier of fact evidence establishing that Mindset did, in fact, distribute spyware and was known to distribute spyware. Without question, the James Report provides an expert analysis of information that will aid a trier of fact in considering "the existence of any fact that is of consequence to the determination of the action" – specifically, the veracity of the alleged statements – and is thus relevant to the defamation claim.

Plaintiff's contention that James' testimony "flunks the basic requirement of relevance because there is absolutely no 'chain of custody'" is plainly erroneous. Indeed, in *Amorgianos v. Amtrak*, 303 F.3d 256, 265 (2d Cir. 2002), the one case Plaintiff cites in support of this contention, the court never even considered the "chain of custody" of the data upon which the expert reports were based or opined on the issue at all. In fact, the court simply reiterated the edict of Federal Rule of Evidence 401 that testimony is relevant if it "has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.*

Although Plaintiff denounces James for failing to set forth the means by which the binaries were collected and verified by ReversingLabs, it is telling that Plaintiff does not actually claim that the binaries are inaccurate with respect to the original source code. Plaintiff presumably has (or had) access to both the original source code and the binaries, which are

publicly available on ReversingLabs, and is uniquely positioned to compare the two to determine whether there are meaningful differences between them.  The fact that Plaintiff has not shown the existence of any such differences strongly suggests that the ReversingLabs binaries do accurately represent the original source code distributed by Plaintiff, and reveals Plaintiff's argument to be nothing more than a baseless attempt to keep from the jury evidence that nullifies its claim.

However, even assuming, *arguendo*, that the ReversingLabs binaries did not accurately reflect the original source code, such discrepancy of data would not render the James Report inadmissible; rather, it would go to the weight attributed to the James Report by the trier of fact. It is black letter law that "[q]uestions over whether there is sufficient factual basis for an expert's testimony may go to weight, not admissibility," *Cedar Petrochems., Inc. v. Dongbu Hannong Chem. Co., Ltd.*, 769 F. Supp. 2d 269, 285 (S.D.N.Y. 2011), and courts examine allegations of inaccurate testing pursuant to this standard.  *See The Auto. Ins. Co. of Hartford v. Electrolux Home Prods., Inc.*, No. 10-CV-0011 (CS), 2012 WL 6629238, *2 (S.D.N.Y. Dec. 20, 2012) (finding that argument that expert's testing conditions were improper "goes to the weight of the expert's opinion, not its admissibility"); *Leser v. U.S. Bank Nat'l Ass'n*, No. 09-CV-2362 (KAM)(MDG), 2012 WL 4472025, at *8 (E.D.N.Y. Sept. 25, 2012) ("Whether that level of certainty will support [the expert]'s findings goes to the weight of the evidence, not its admissibility, and it is the jury who must determine the weight to accord an expert's opinion"). Accordingly, even if – for the sake of argument – the ReversingLabs binaries did not accurately reflect the original source code of the software distributed by Mindset, the James Report would still be admissible.

Furthermore, it is plain from the record – including the James Report and the Declaration of Lance James, sworn to January 7, 2014 ("James Decl.") – that the ReversingLabs binaries do accurately reflect the original source code. The binaries relied upon by James in his analysis were acquired via industry-standard methods and were verified within the anti-virus industry as legitimate files that were created by Mindset. (James Decl., ¶ 2.) Indeed, the binaries themselves contain pieces of data called "file hashes" that were specifically designed to match a binary to a file and to confirm that the binary has not been modified from the original source code. (James Decl., ¶ 2.) The ReversingLabs binaries used by James in his report are verified by their file hashes as being authentic to the software distributed by Mindset. (James Decl., ¶ 2.) The binaries also contain meta data showing that the files are owned, trademarked, and licensed by Mindset, and that the files connect only to Mindset's servers. (James Decl., ¶ 2.)

While Plaintiff suggests that the binaries may have been modified, such modification is quite difficult to do without the original source code. (James Decl., ¶ 3.) To the extent that an individual is able to modify a binary, such modifications are easily detectable. (James Decl., ¶ 3.) Where, as here, a binary has been comprehensively analyzed and vetted by the greater anti-virus industry, it is nearly impossible that modification would not be detected. (James Decl., ¶ 3.) Therefore, even though the authenticity of the binaries relied upon in the James Report should not factor into the Court's decision on the Motion, it is clear from the evidence in the record that these binaries are authentic.

Moreover, even assuming, for the sake of argument, that the ReversingLabs binaries had been modified, reliance on these binaries would not render the James Report irrelevant or unreliable because, as is set forth in Figures 43-47 of the James Report, Mindset's servers still communicated with the binaries. (James Decl., ¶ 5.) This demonstrates that, even if the binaries

were not authentic, Mindset still used them to distribute spyware (James Decl., ¶ 5.), and they remain relevant and admissible evidence.

## II.  THE JAMES REPORT IS NOT UNRELIABLE

Plaintiff does not argue that the expert opinions set forth in the James Report are unreliable because James' methods are improper or ineffective; rather, without citing any relevant authority, Plaintiff argues that these opinions are unreliable because James allegedly did not explicitly describe each step of these methods prior to applying them in his analysis of the binaries.  This argument is meritless because, even if a precatory discussion of methodology was a requirement under the Federal Rules of Evidence (which it is not), James walks the reader through each and every step of his methods as he analyzes the binaries and comes to his conclusions.  As Plaintiff does not specifically criticize or find fault with these methods, it is unclear why such methods render James' opinions unreliable.

Plaintiff also argues that James' opinions are unreliable because he "cites to no published studies, analyses, treatises or textbooks" and does not apply scientific standards to his testing.  However, it is well-settled that reference to such authority and the application of scientific standards is not a requirement, even under *Daubert* and its progeny.  *Ebbert v. Nassau County*, 2008 WL 8086382, *6 (E.D.N.Y. Sept. 29, 2008) (explaining that considerations such as whether the method can be tested, has been subjected to peer review, has a defined rate of error, and has gained general acceptance in the relevant community "are neither mandatory nor exclusive, particularly when the expert's qualifications are based primarily on his or her training and experience").  *See also*, *Int'l Bus. Mach. Corp. v. BGC Partners, Inc.*, No. 10 Civ. 128 (PAC), 2013 WL 1775437, *16 (S.D.N.Y. April 25, 2013) ("While a scientific or engineering expert's use or failure to use a particular methodology may provide reason to exclude their testimony, experts may also rely primarily, if not solely, on their experience or years of accumulated

learning and insight"); *Nat'l Envelope Corp. v. Am. Pad & Paper Co. of Del., Inc.*, No. 06 Civ. 12988 (SHS)(RLE), 2009 WL 5173920, *5 (S.D.N.Y. Dec. 30, 2009) (finding expert report reliable, even though it did not utilize scientific methods). Indeed, while Plaintiff complains that two of James' opinions are *ipse dixit*, such opinions are based on James' experiential knowledge in the field of cyber intelligence and are entirely admissible. *See, e.g.*, *Bd. of Trs. of Aftra Ret. Fund v. JPMorgan Chase Bank, N.A.*, No. 09 Civ. 686 (SAS), 2011 WL 6288415, *45 (S.D.N.Y. Dec. 15, 2011) (explaining that opinions supported by an expert's experience are not *ipse dixit*); *Giladi v. Strauch*, No. 94 Civ. 5976 (RMB)(HBD), 2007 WL 415365, *31 (S.D.N.Y. Feb. 6, 2007) (same).

Furthermore, to the extent Plaintiff contends that James' opinions are otherwise unsupported or unreliable, such contentions go to the weight, not the admissibility, of these opinions. *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995) (explaining that disputes as to the expert's methodology or basis of the expert's opinion go to the weight, not the admissibility, of the testimony); *Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086 (JMF), 2013 WL 5658790, *45-46 (S.D.N.Y. Oct. 15, 2013) (denying motion to preclude expert report, finding argument that the report was based on unreliable information went to weight, not admissibility); *IBM v. BGC Partners, Inc.*, No. 10 Civ. 128 (PAC), 2013 WL 1775367, *48-49 (S.D.N.Y. Apr. 25, 2013) ("To the extent that IBM takes issue with [the expert]'s conclusions or the determinations on which they rest, they may be property explored on cross-examination and go to his testimony's weight and credibility – not its admissibility"); *Joseph S. v. Hogan*, No. 06 Civ. 1042 (BMC)(SMG), 2011 WL 2848330, *5 (E.D.N.Y. July 15, 2011) ("Defendants' remaining arguments, about the reliability of Dr. Fries' methodology and its execution, go to weight rather than admissibility"); *Computer Assocs. Int'l, Inc. v. Simple.com, Inc.*, No. CV 02-

2748 (DRH)(MLG), 2005 WL 6042722, *1 (E.D.N.Y. Jan. 19, 2005) (finding that argument that conclusions were unsupported by proper analysis goes to the weight accorded to expert report).

### III.  THE JAMES REPORT DOES NOT IMPERMISSIBLY RELY UPON HEARSAY

Although Plaintiff asserts that the James Report impermissibly relies upon hearsay, it fails to specifically identify any alleged inadmissible hearsay evidence upon which the James Report is based, stating only that "James' report consists of a recitation of whatever happened to appear on James' computer screen when he typed in various terms on third-party web sites." (Plaintiff's Memorandum of Law in Support of Motion ("Plaintiff's Br."), p. 6.)  This statement not only distorts both James' methodology and the admissibility of hearsay evidence under the Federal Rules of Evidence, but appears to ignore a material element of the statement that Plaintiff claims is defamatory.

First, the relevance of the hearsay evidence that Plaintiff seeks to preclude – public statements from a variety of sources that Mindset distributed spyware – is directly relevant to whether Mindset was a "notorious spyware company," which is among the statements that Plaintiff claims was defamatory.  (Amended Complaint (Declaration of Shari Alexander in Support of Defendants' Motion for Summary Judgment, sworn to on December 18, 2013 ("Alex Dec."), Ex. 1 [Dkt. No. 111].))  The word "notorious" concerns a party's reputation and opinions about that party.  *See* Merriam-Webster, 2013 ("generally known and talked of; especially: widely and unfavorably known") (Alex Dec., Ex. 25 [Dkt No. 118].)  The relevance of the "Threat Intelligence Research" section of the James Report cannot be overstated.  That Mindset is notorious for having distributed spyware is made clear by the fact that online publications, such as those identified in the James Report, openly and consistently identified Mindset as engaging in such conduct.  It is therefore unsurprising that Plaintiff now seeks to bury such evidence.  However, the fact remains that James' reliance on the online publications to which

Plaintiff objects is appropriate and well within the boundaries of the Federal Rules of Evidence, and his opinions are admissible in their entirety.

Second, the James Report is not simply a "recitation" of information from third party websites; rather, it is comprised of James' own testing and analysis of the software at issue, as well as his review of online published literature on the binaries examined. Federal Rule of Evidence 803(17) allows for the admissibility of reports and commercial publications that would otherwise be inadmissible as hearsay (*see also*, 5 WEINSTEIN'S FEDERAL EVIDENCE § 803.19[1], at 803-118 (2013)) and this exception to the hearsay rule extends to online publications as well as traditionally printed publications. *See, e.g.*, *Fournier v. McCann Erickson*, 242 F.Supp.2d 318, 338-339 (S.D.N.Y. 2003) (finding that online publications "fall within the purview of Rule[] 803(17)" and overruling objections to these publications based on hearsay). The online publications consulted by James in the "Threat Intelligence Research" section of the James Report are well-known and well-respected in the cyber intelligence industry and are publicly used to assess the safety of certain software. These publications – which are comprised of binary compilations – are precisely the kinds of publications contemplated by Rule 803(17) and are admissible evidence. S*ee* 5 WEINSTEIN'S FEDERAL EVIDENCE § 803.19[1], at 803-118 (2013).

Third, even if the publications relied upon in the James Report did not fall within the purview of Rule 803(17) – which they do – it is well-settled that an expert may rely on hearsay sources used in forming an opinion, particularly where other experts in the field reasonably rely on such evidence. *U.S. v. Locascio*, 6 F.3d 924, 938 (2d Cir. 1993). *See also*, *Howard v. Walker*, 406 F.3d 114, 127 (2d Cir. 2005) ("Experts are generally permitted to rely on otherwise inadmissible evidence in formulating an expert opinion … as an expert, the witness herself is assumed to have the skill to properly evaluate the hearsay, giving it probative force appropriate

to the circumstances"); *In re Fosamax Prods. Liab. Litig.*, No. 06 MD 1789 (JFK), 2013 WL 174416, *5 (S.D.N.Y. Jan. 15, 2013) ("The Court has … held that expert witnesses can rely on any literature and hearsay in making opinions"); *Hernandez v. Napoli*, 2012 WL 1438240, *2 (S.D.N.Y. Apr. 25, 2012) ("[I]t is well settled that an expert may rely on inadmissible evidence as the basis for his or her opinion …"). Accordingly, to the extent that James does rely upon hearsay evidence in forming his expert opinion, such reliance is proper.

Finally, Plaintiff's argument that the James Report and James' testimony should be precluded because it is allegedly based on hearsay evidence again completely misunderstands the standard for admissibility of expert testimony under the law. Indeed, the courts of this Circuit have long held that "the fact that [the expert witness] relied upon inadmissible evidence is less an issue of admissibility of the expert testimony for the court than an issue of credibility for the jury." *U.S. v. Locascio*, 6 F.3d 924, 938 (2d Cir. 1993). *See also*, *Strauss v. Credit Lyonnais, S.A.*, 925 F.Supp.2d 414, 440 (E.D.N.Y. 2013) (finding that expert's reliance on hearsay evidence did not render the expert's testimony inadmissible; rather, such reliance would factor into the weight afforded by the jury).

## IV.    LANCE JAMES' OPINIONS ARE NOT INADMISSIBLE

Plaintiff's contention that certain of James' opinions are inadmissible is based on a misrepresentation of these opinions, as well as misapplication of the law. Plaintiff mischaracterizes James' opinions as to the purpose and functionality of the software as an estimation of "the motives, intentions and state of mind of whomever wrote the source code that was converted into the binaries." (Plaintiff's Br., p. 6.) However, as is clear from the James Report itself, James does not purport to opine on the state of mind of the programmers who created the original source code or the binaries, but rather provides his expert opinion as to whether the software constitutes spyware based on its design, *i.e.*, what it does when downloaded

onto a computer.  For example, James observes that one component of the binaries, 17b0drhr0b.exe, which acts as a "drop" file for loading ATPartners.DLL, was rather small in size, but was "packed" with an additional program that prevents immediate analysis and disguises its purpose from spyware scanners.  (James Report, p. 14.)  James surmises that "[t]he packing of a relatively small size of the 17b0drhr0b.exe file strongly suggests that it is intended to obfuscate and hide the activity of the executable, such as surreptitiously install software that is designed to hook directly into the browser."  (James Report, p. 16.)  This opinion is clearly an analysis of the design of the binary, not of the programmer's "state of mind," and is well within the scope of permissible expert testimony.  *Arista Records LLC v. Lime Group LLC*, 784 F.Supp.2d 398, 414 (S.D.N.Y. 2011).

In *Arista Records LLC v. Lime Group LLC*, the plaintiff's expert evaluated the defendant's software program and concluded that the software program was designed to download music files, including music files containing unauthorized works.  *Id.*  The defendant objected to the admission of the expert's testimony, arguing that such testimony constituted an opinion as to the programmer's state of mind.  *Id.*  The court rejected this argument, explaining that the expert "has not opined on the parties' state of mind, but rather has provided information on the design and functionality of the LimeWire program.  Such expert opinion is proper and aids the finder-of-fact in understanding LimeWire's features."  *Id.*

The cases cited by Plaintiff in support of its argument that James' opinions as to the design and function of the software are inadmissible are readily distinguishable.  In *In re Rezulin Prods. Liab. Litig*, the court precluded expert testimony as "[i]nferences about the intent or motive of parties" where the expert testified that the defendant "decided to focus on the incomplete and inaccurate approval data and to minimize the troubling post-approval date" and

was motivated by profit.  309 F.Supp.2d 531, 546 (S.D.N.Y. 2004).  The court noted that the expert's opinion was not based on scientific knowledge, and that the expert had "admitted that his testimony about [the defendant]'s profit motive was an 'inference' unrelated to any scientific analysis".  Id.   Similarly, in *Highland Capital Mgmt., L.P. v. Schneider*, the court precluded expert testimony that "[the defendant] believed that the value of these two issues of SPNs was a deeply discounted price".  551 F.Supp.2d 173, 182 (S.D.N.Y. 2008).  Unlike the experts in *Rezulin* and *Highland*, James has not opined as to the intentions or motivations of anyone.  Rather, as in *Arista Records*, he has provided an analysis of the function of the software – an analysis that is firmly rooted in his knowledge and experience.  Such expert opinion is in perfect compliance with Federal Rule of Evidence 702, and is admissible.

   Similarly, neither *Rezulin* nor *Highland* – which Plaintiff also cites in support of its argument that James' opinions as to the relationships between Broadspring, Mindset, Addictive Technologies, and Vista Interactive are inadmissible – stands for the proposition that an expert may not opine on the existence of relationships between entities.  Unlike the experts in *Rezulin* and *Highland*, James was not simply reciting information already contained in the litigation record.  Rather, James was piecing together the existence of relationships between the entities based on information identified through his analysis of the software (*see* Exhibit B, Figure 49 of the James Report) and through research in various publications.  This information is not "merely a narrative of the case" or "a factual narrative based upon record evidence" as Plaintiff contends; rather, it is an expert opinion based on sources other than the record, and that will be helpful to the trier of fact on the issue of whether Mindset distributed spyware.  *See, e.g.*, *Rochester Gas & Elec. Corp. v. GPU, Inc.*, No. 00-CV-6369, 2008 WL 8912083, *16 (W.D.N.Y. Aug. 8, 2008) (allowing expert testimony as to corporate governance relationship between two entities where

such testimony was helpful to the trier of fact).  Accordingly, James' opinions are not inadmissible expert testimony.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court deny Plaintiff's motion to strike the expert report and to preclude the testimony of Lance James in its entirety.

Dated: January 8, 2014
       New York, New York

    Respectfully submitted

    MOSES & SINGER LLP
    *Attorneys for Defendants*

    /s/ Philippe Zimmerman

    _____
    Philippe Zimmerman
    Shari Alexander
    405 Lexington Avenue
    New York, NY 10174
    New York, NY 10174-1299
    Tel: 212-554-7800 Fax: 212-554-7700
    pzimmerman@mosessinger.com
    salexander@mosessinger.com