UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BROADSPRING, INC., <br><br> Plaintiff, <br><br> v. <br><br> CONGOO, LLC, doing business as ADIANT and ADBLADE, ASHRAF NASHED, RAFAEL COSENTINO and DOES 1-10, <br><br> Defendants. | 13 Civ. 1866 (JMF) |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT OR,
<u>ALTERNATIVELY, JUDGMENT ON THE PLEADINGS</u>**

Respectfully submitted,

KENT, BEATTY & GORDON, LLP
Jack A. Gordon
  (jag@kbg-law.com)
Joshua B. Katz
  (jbk@kbg-law.com)
425 Park Avenue, The Penthouse
New York, New York 10022
(212) 421-4300

*Attorneys for Plaintiff Broadspring, Inc.*

**TABLE OF CONTENTS**

Page:

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.       The Tortious Interference Counterclaim Should be Dismissed. . . . . . . . . . . . . . . 1

           A.      Actual Knowledge of the Contracts is Required. . . . . . . . . . . . . . . . . . . . 1

           B.      There is No Evidence of Actual Knowledge. . . . . . . . . . . . . . . . . . . . . . . 4

           C.      No Rational Jury Could Find Improper Inducement. . . . . . . . . . . . . . . . . 6

           D.      The Rejection of the Reader's Digest Contract Requires Dismissal. . . . . 7

    II.      The Unfair Competition Counterclaim Should be Dismissed. . . . . . . . . . . . . . . 8

    III.     Congoo's Request for Leave to Amend Should be Denied. . . . . . . . . . . . . . . . . 10

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**TABLE OF AUTHORITIES**

**Cases**                                                                                                      **Page(s)**

*A A Tube Testing Co., Inc. v. Sohne*,
    20 A.D.2d 639 (2d Dep't 1964).................................................... 1

*Alvord & Swift v. Stewart M. Muller Constr. Co.*,
    46 N.Y.2d 276 (1978) .............................................................. 3

*Arch Ins. Co. v. Precision Stone, Inc.*,
    584 F.3d 33 (2d Cir. 2009).......................................................... 1

*Boehner v. Heise*,
    734 F. Supp. 2d 389 (S.D.N.Y. 2012)............................................... 5

*Dayton Super. Corp. v. Marjam Supply Co.*,
    2011 U.S. Dist. LEXIS 17221 (E.D.N.Y. Feb. 22, 2011)............................ 9

*Guard-Life Corp. v. S. Hardware Manuf. Corp.*,
    50 N.Y.2d 183 (1980). ........................................................... 3, 4

*H.L. Hayden Co. of N.Y., Inc. v. Siemens Medical Systems, Inc.*,
    879 F.2d 1005 (2d Cir. 1989)....................................................... 9

*Julie Research Labs., Inc. v. Gen. Resistance, Inc.*,
    25 A.D.2d 634 (1st Dep't 1966). .................................................. 8

*Linkco, Inc. v. Fujitsu Ltd.*,
    230 F. Supp. 2d 492 (S.D.N.Y. 2002) ............................................. 6

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
    542 F.3d 290 (2d Cir. 2008)....................................................... 6

*Medtech Prods., Inc. v. Ranir, LLC*,
    596 F. Supp. 2d 778 (S.D.N.Y. 2008) ........................................... 1, 4

*Oceanside Institutional Indus., Inc. v. Superior Laundry*,
    2007 N.Y. Slip Op. 50822(U) (Sup. Ct. Nassau Cty. 2007)......................... 2

*Reach Music Publ'g, Inc. v. Warner Chappell Music, Inc.*,
    2013 U.S. Dist. LEXIS 180073 (S.D.N.Y. Dec. 23, 2013)........................... 2

*Roulette Records, Inc. v. Princess Prod. Corp.*,
    15 A.D.2d 335 (1st Dep't 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Rudder & Finn Inc. v. Seaboard Surety Co.*,
    52 N.Y.2d 663 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Saratoga Vichy Spring Co. v. Lehman*,
    625 F.2d 1037 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Sears Petrol. & Transp. Corp. v. Archer Daniels Midland Co.*,
    2006 U.S. Dist. LEXIS 27540 (N.D.N.Y. May 9, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Technomarine SA v. Jacob Time, Inc.*,
    2013 U.S. Dist. LEXIS 100831 (S.D.N.Y. Jul. 16, 2013). . . . . . . . . . . . . . . . . . . . . . . . . 1

*U.S. v. Paccione*,
    992 F. Supp. 335 (S.D.N.Y. 1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Union Car Advertising Co. v. Collier*,
    263 N.Y. 386 (1934). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Utess v. Erie R.R. Co.*,
    204 N.Y. 324 (1912). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*V. Marangi Carting Corp. v. Judex Enterprs., Inc.*,
    171 Misc. 2d 820 (Sup. Ct. N.Y. Cty. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*,
    8 N.Y.3d 422 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

## Other Authorities

4A N.Y. Prac., Com. Litig. in New York State Courts § 80:47 (2d ed.). . . . . . . . . . . . . . . . . 2

Restatement (2d) of Torts § 766 cmt. *i*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Restatement (2d) of Torts § 766 cmt. *m*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Plaintiff Broadspring, Inc. respectfully submits this reply memorandum in further support of its motion for summary judgment or, alternatively, judgment on the pleadings.

## PRELIMINARY STATEMENT

Congoo largely uses its opposition as a vehicle to smear Broadspring with irrelevant and scandalous accusations that have virtually nothing to do with Congoo's actual counterclaims. Space limitations preclude a complete response to these irrelevant accusations, so this reply instead focuses on the counterclaims that Congoo actually pled—the claims that Broadspring committed tortious interference and unfair competition by telling Reader's Digest and Geology.com that it offers higher CPMs and cleaner creatives.  Nothing in Congoo's opposition can obscure the fact that Broadspring is entitled to judgment as a matter of law.

## ARGUMENT

**I.     The Tortious Interference Counterclaim Should be Dismissed**

    **A.     Actual Knowledge of the Contracts is Required**

Broadspring's opening memorandum cited a consistent line of authority—from *A A Tube Testing Co., Inc. v. Sohne*, 20 A.D.2d 639 (2d Dep't 1964), to *Technomarine SA v. Jacob Time, Inc.*, 2013 U.S. Dist. LEXIS 100831 (S.D.N.Y. Jul. 16, 2013)—establishing that "New York law is clear on its requirement that a defendant charged with tortiously interfering with a contractual relationship have ***actual knowledge*** of the breached contract."[1]  *Medtech Prods., Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 796 n.13 (S.D.N.Y. 2008) (emphasis in original).  Constructive knowledge does not suffice.  *Roulette Records, Inc. v. Princess Prod. Corp.*, 15 A.D.2d 335, 338, 339-40 (1st Dep't 1962) (plaintiff failed to satisfy actual knowledge requirement where "it was

---

[1] Since both sides have argued New York law, there is no need to undertake a conflicts of law analysis.  *See, e.g., Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009).

proved that news of the contract was published in two trade papers, attesting to the general interest of such an occurrence in the milieu in which these people operated" and it "was also established through the testimony of defendants' own expert that the practice was to inquire of the performer, before using him to make a record, whether the performer had existing contractual commitments."), *aff'd without op.*, 12 N.Y.2d 815 (1962).  After Broadspring filed this motion, yet another Court in this district reiterated this settled rule:  "[P]roof of actual knowledge is required," and allegations "that a defendant 'should have known' of the contract in question—or, in other words, that a reasonable person in the defendant's position would have known of the contract—are not sufficient to state a claim."  *Reach Music Publ'g, Inc. v. Warner Chappell Music, Inc.*, 2013 U.S. Dist. LEXIS 180073, *19 (S.D.N.Y. Dec. 23, 2013).

      According to Congoo (Def. Mem. 10-11), an unpublished trial court decision negated all of this authority.  But in *Oceanside Institutional Indus., Inc. v. Superior Laundry*, 2007 N.Y. Slip Op. 50822(U) (Sup. Ct. Nassau Cty. 2007), the summary judgment motion was made at the outset of the case, prior to discovery.  Although the Court's reasoning is not entirely clear, it appears that it did not deny the motion because the defendant "should have known" of the contracts, but rather because there was sufficient evidence of actual knowledge for the case to proceed to discovery—specifically, an attorney's letter informing the defendant of the contracts, and evidence "that when a commercial laundry solicits business from new customers it attempts to learn when the contract with the current supplier expires."  *Id*. at *5.[2]

---

[2]  Notably, one of the two authorities on which *Oceanside* relies explains that New York law requires "[a]ctual" knowledge, which "contrasts with constructive knowledge."  4A N.Y. PRAC., COM. LITIG. IN NEW YORK STATE COURTS § 80:47 (2d ed.).  This is further confirmation that *Oceanside* did not intend to eviscerate the actual knowledge requirement.

To be sure, a defendant need not be familiar with every detail of the allegedly breached contract. But at an irreducible minimum, the defendant must know enough to establish "knowledge of the contract with which he is interfering and of the fact that he is interfering with the performance of the contract." RESTATEMENT (2d) OF TORTS § 766 cmt. *i*.[3] Otherwise, it is impossible for the defendant to intentionally procure the breach. *See Alvord & Swift v. Stewart M. Muller Constr. Co.*, 46 N.Y.2d 276, 281 (1978) ("the interference must be intentional, not merely negligent or incidental to some other, lawful, purpose").

The facts of this case illustrate why New York law demands actual knowledge of the specific contract rather than assumptions or speculation or guess-work. There is no way for Broadspring (or any other Congoo competitor) to reliably guess the terms of Congoo's relationship with any given publisher at any given time, and a rule of law that requires them to try to do so would unduly stifle competition. Congoo has many different contracts with many different publishers, and their terms are far from uniform. Most importantly, ████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

---

[3] The New York Court of Appeals has repeatedly cited the Restatement as authoritative in tortious interference cases. *E.g., White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422 (2007); *Guard-Life Corp. v. S. Hardware Manuf. Corp.*, 50 N.Y.2d 183 (1980).

██████████████████████████████████████ There is undoubtedly much more variation, but the overwhelming majority of Congoo's publisher contracts were never produced in discovery.

Also telling, Congoo goes to great lengths to prevent its competitors from learning anything about the terms of its contracts. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Katz Reply Dec. Exs. 13, 16; Alex Opp. Dec. ¶ 11 & Ex. 10.) In connection with this motion, Congoo not only filed the entirety of its Reader's Digest contract under seal (*id*.), it even redacted from the publicly-filed version of its memorandum the text of ███████████████████ ████████████████████████████clause—the exact same terms it duplicitously claims are "obvious to a competitor in the industry." (*Compare* ECF No. 136, p. 11 *with id*., p. 16.)

In light of all of this, it is absurd for Congoo to argue that New York law requires all of its competitors to assume (incorrectly, it turns out) that every publisher running Congoo's advertising is bound by a contract with exclusivity and lengthy notice provisions. By insulating Congoo from legitimate competition, such a rule would disrupt the balance between protecting contract rights and ensuring that "competition not be unduly hampered." *Guard-Life Corp.*, 50 N.Y.2d at 190.

### B.  There is No Evidence of Actual Knowledge

Lacking even a scintilla of evidence that Broadspring had actual knowledge of the Reader's Digest or Geology.com contracts, Congoo relies instead on the following syllogism: (1) Broadspring was informed in the past that some Congoo contracts contained exclusivity and notice provisions; (2) Broadspring knew that Reader's Digest and Geology.com had some type of contractual relationship with Congoo; therefore, Congoo concludes, (3) Broadspring knew about

4

the exclusivity and notice provisions in the Reader's Digest and Geology.com contracts.  (Def. Mem. 8-11.)  This is a *non sequitur*.  That publishers had occasionally informed Broadspring they would have to give notice of termination to Congoo did not require Broadspring to draw the inference that every single Congoo publisher is subject to an exclusivity and notice requirement—an inference that, as demonstrated above, is flatly wrong.  (*See* Katz Reply. Dec. Exs. 15 & 16.)  In any event, the law requires actual knowledge of the specific contract, *Boehner v. Heise*, 734 F. Supp. 2d 389, 403-04 (S.D.N.Y. 2012); *Medtech Prods., Inc.*, 596 F. Supp. 2d at 796 n.13, and inferential knowledge is not actual knowledge, *see, e.g., Utess v. Erie R.R. Co.*, 204 N.Y. 324, 328 (1912); *U.S. v. Paccione*, 992 F. Supp. 335, 339 (S.D.N.Y. 1998).

Congoo also wastes much ink arguing the irrelevant point that Broadspring "targeted" publishers that were running Congoo's advertising units.  (Def. Mem. 4, 9, 21.)  But that is exactly what competitors are supposed to do.  Even Congoo's 30(b)(6) designee, Nashed, agreed that



(Katz Reply Dec. Ex. 17, pp. 219:20-220:11.)  Importantly, an exclusivity clause, by itself, prohibits only simultaneous advertising; it does not bar a publisher from immediately dropping Congoo for Broadspring.  And even if Broadspring had actual knowledge that a particular

5

publisher was also subject to a notice provision, Broadspring would still have every right to pursue that publisher and convince it to switch partners after giving the required notice.[4]

### C. No Rational Jury Could Find Improper Inducement

New York law imposes liability only upon "a showing that the inducement exceeded a minimum level of ethical behavior in the marketplace." *White Plains Coat & Apron Co., Inc.*, 8 N.Y.3d at 427 (quotation omitted). Accordingly,

> A's freedom to conduct his business in the usual manner, to advertise his goods, to extol their qualities, to fix their prices and to sell them is not restricted by the fact that B has agreed to buy similar goods from C. Even though A knows of B's contract with C, he may nevertheless send his regular advertising to B and may solicit business in normal course. This conduct does not constitute inducement of breach of the contract.

*V. Marangi Carting Corp. v. Judex Enterprs., Inc.*, 171 Misc. 2d 820, 823 (Sup. Ct. N.Y. Cty. 1997) (quoting RESTATEMENT (2d) OF TORTS § 766, cmt. *m*). Here, Congoo alleges that Broadspring made generalized statements about offering better prices ("higher CPM") and a better product ("cleaner creatives"). It is hard to imagine a more common, or more innocuous, form of solicitation. *See Union Car Advertising Co. v. Collier*, 263 N.Y. 386, 398 (1934) ("Exaggeration, puffing, boasting appear to be the very breath of salesmanship").

While Congoo insists that "cleaner creatives" is a secret reference to advertising disclosures, there is not a shred of evidence that anyone whose opinion matters (*i.e.*, Broadspring,

---

[4] Nashed's bald assertion that "it is well known in the online advertising industry" that Congoo's contracts have notice and exclusivity provisions (Nashed Dec. ¶ 15) is irrelevant, *see Linkco, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492, 496-97 (S.D.N.Y. 2002) (defendant's executive's testimony that he "thought nondisclosure agreements were 'a matter of course' and 'common practice' in employment" insufficient to prove actual knowledge of such a contract), and not even competent evidence of what the "industry" knows, *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) ("A party … does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory").

Geology.com and Reader's Digest) shares that fabricated view. As pointed out in Broadspring's opening memorandum (at 12-13), both Reader's Digest and Geology.com concurred that Broadspring's creatives were cleaner. Indeed, Congoo did not even purport to adopt that view until very late in this litigation, and, as a result of its damning pre-suit admission that Broadspring was "██████████████████████████████████" (Katz Dec. Ex. 10), Congoo is now reduced to arguing that it is "a very vague term" that "could" refer to many different things, including advertising disclosures. (Def. Mem. 14-15.) But if the term is really so vague that it could mean so many different things to so many different people, then, as a matter of law, it is mere puffery that does not offend the minimum level of ethics expected in the marketplace. *See Union Car Advertising Co.*, 263 N.Y. at 398 (rejecting tortious interference claim where defendant "was a little bit too boastful, but he was bragging about his own business, which, if not commendable, is at least not unusual.").

### D. The Rejection of the Reader's Digest Contract Requires Dismissal

Congoo's only response to this argument is to note that the alleged "breach" occurred before the Bankruptcy Court approved the rejection. But that misses the point, which is that any alleged breach indisputably occurred after Reader's Digest filed for bankruptcy in February 2013. Upon that filing, Broadspring had the right to offer, and Reader's Digest had the right to accept (subject to court approval), a better, more attractive deal than the one Congoo was offering. State law liability for tortious interference is incompatible with the bankruptcy code's policy of allowing debtors to reorganize their affairs without being saddled by pre-bankruptcy executory contracts. Tellingly, Congoo does not cite, and we have been unable to find, any case where a tortious interference claim predicated on a contract rejected in bankruptcy was allowed to proceed.

## II. The Unfair Competition Counterclaim Should be Dismissed

In analyzing Congoo's unfair competition claim, it is important to keep in mind the claim Congoo actually pled, as distinct from the claim that Congoo apparently now wishes it had pled. Congoo's amended counterclaims nowhere allege that Broadspring unfairly competed by not complying with the FTC's non-binding guidelines.[5]  Instead, Congoo alleges that Broadspring unfairly competed by telling Geology.com and Reader's Digest—and only these two publishers—that it could offer "higher CPM" and "cleaner creatives."  But as discussed above, nothing is more commonplace in the business world than this sort of mundane puffery, and Congoo now concedes that the phrase "cleaner creative" has no generally accepted meaning. Such statements do not evidence "bad faith," and are not actionable as a matter of law.  *See, e.g., Julie Research Labs., Inc. v. Gen. Resistance, Inc.*, 25 A.D.2d 634, 634-35 (1st Dep't 1966) ("The defendant's advertisements, amounting to no more than a claim in general terms of superiority of its product over the products of competitors, constitute mere 'puffing' and are not actionable."), *aff'd without op.*, 19 N.Y.2d 906 (1967).

Furthermore, as a matter of law, none of the conduct described by Congoo could satisfy the misappropriation element of unfair competition.  Contrary to Congoo's suggestions, unfair competition is not a catch-all for anything that might be deemed "commercial immorality," an interpretation that would render almost every other business tort superfluous.  *See Rudder & Finn Inc. v. Seaboard Surety Co.*, 52 N.Y.2d 663, 671 (1981) (rejecting argument that "would have us

---

[5]  As explained in Broadspring's opposition to Congoo's summary judgment motion, there is no private right of action to enforce the guidelines; by their plain terms, the guidelines do not even have the "force and effect of law"; and Congoo has frequently run advertising units that contain no more disclosures than the Broadspring units about which Congoo now disingenuously complains.  (ECF No. 140, pp. 34-35.)

8

put within the definition of unfair competition property rights of commercial value which are subject to any form of commercial immorality"); *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980) ("Saratoga Vichy's state law unfair competition claim … is based on the notion that the only finding necessary is that the defendant's action has been 'unfair,' as the trial judge interprets that term.  New York law in this area is indeed flexible, but it is not that flexible.").  Rather, an essential element of the cause of action is "misappropriation of the business' organization or its expenditure of labor, skill, and money."  *Rudder & Finn Inc.*, 52 N.Y.2d at 671 (internal quotations and alterations omitted); *Sears Petrol. & Transp. Corp. v. Archer Daniels Midland Co.*, 2006 U.S. Dist. LEXIS 27540, *13-14 (N.D.N.Y. May 9, 2006) ("in New York the tort of unfair competition is comprised of two distinct elements, one addressing the misappropriation of property or commercial advantage and the second focusing upon the manner of the misappropriation.  It is the second element that admits of expansive and varied definitions.").  Thus, even deception without misappropriation is not unfair competition.[6]

Here, there is no evidence of either deception or misappropriation.  Indeed, the premise that any publisher could have been deceived is nonsensical.  Web site publishers do not switch advertising partners whenever a salesman invokes the magic words "cleaner creative" or "higher CPM."  Reader's Digest, for example, explained that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  (Katz Reply Dec. Ex. 18, pp. 20:20-23:25.)  Its Rule

---

[6] Although Congoo relies on *H.L. Hayden Co. of N.Y., Inc. v. Siemens Medical Systems, Inc.*, 879 F.2d 1005, 1025 (2d Cir. 1989), for the proposition that unfair competition "must be grounded in either deception or appropriation of the exclusive property of the plaintiff" (Def. Mem. 19), multiple courts have noted that this "did not represent the holding of the Second Circuit, but was taken from the circuit court's recitation of the legal standard applied by the district court below." *Dayton Super. Corp. v. Marjam Supply Co.*, 2011 U.S. Dist. LEXIS 17221, *49-50 (E.D.N.Y. Feb. 22, 2011) (collecting cases that hold deception alone insufficient absent misappropriation).

9

30(b)(6) designee could not ███████████████████████████████████████████████████

██████████████" (*Id.*, p. 29:11-14.) In sum, this counterclaim fails at every level.

### III.     Congoo's Request for Leave to Amend Should be Denied

Congoo's request for leave to amend its unfair competition claim—which it disingenuously couches as leave to serve a more definite statement (Def. Mem. 24-25)—should be denied as futile and made in bad faith. With respect to futility, Congoo fails even to provide a proposed amended pleading, and its opposition makes clear that it cannot allege facts establishing the required bad faith and misappropriation. As for Congoo's bad faith, the contrast between Broadspring's and Congoo's approaches to litigation could not be more stark. In late October, when Broadspring finally uncovered the extent of the misconduct after obtaining a proper document production and then obtaining Cosentino's stunning admissions at his deposition, Broadspring immediately prepared a second amended complaint and filed its motion to amend. Congoo, on the other hand, has known about Broadspring's "cleaner creatives" since before this action was commenced, and its original Lanham Act counterclaim expressly alleged that Broadspring does not make proper advertising disclosures. Congoo abruptly dropped that claim after wasting a lot of Broadspring's time and money fighting over whether Congoo would have to provide any discovery, but now wants to smuggle the claim back into the case under the guise of common law unfair competition. (*See* Katz Reply Dec. ¶¶ 2-3.) The Court should not countenance this bait-and-switch.

### CONCLUSION

Broadspring respectfully requests that Congoo's counterclaims be dismissed in their entirety, without leave to amend.

Dated: New York, New York
January 17, 2014

                                                                                                      KENT, BEATTY & GORDON, LLP

                                                                                                       /s/  *Jack A. Gordon*
                                                                                                        Jack A. Gordon
                                                                                                        Joshua B. Katz
                                                                                                        425 Park Avenue, The Penthouse
                                                                                                        New York, New York 10022
                                                                                                        (212) 421-4300
                                                                                  jag@kbg-law.com
                                                                                  jbk@kbg-law.com

                                                                                 *Attorneys for Plaintiff*
                                                                                 *Broadspring, Inc.*