UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BROADSPRING, INC., <br><br>  Plaintiff, <br><br> v. <br><br> CONGOO, LLC, doing business as ADIANT and ADBLADE, ASHRAF NASHED, RAFAEL COSENTINO, <br><br>  Defendants. | 13 Civ. 1866 (JMF) <br><br> **SECOND AMENDED COMPLAINT** <br><br> **Jury Trial Demanded** |

Plaintiff Broadspring, Inc. ("Broadspring"), for its Second Amended Complaint against Defendants Congoo, LLC, doing business as Adiant and Adblade, Ashraf Nashed and Rafael Cosentino (collectively, "Defendants"), alleges the following based on personal knowledge as to its own actions, and upon information and belief as to Defendants' actions:

## NATURE OF THE ACTION

1. Broadspring and Congoo both operate online advertising networks. These networks essentially operate as intermediaries between advertisers and web site publishers who wish to generate revenue by hosting advertising on their sites. Although Broadspring and Congoo work with similar advertisers and compete for space on similar web sites, the manner in which they choose to compete could not be more different. Broadspring conducts its business honorably and ethically; its policy is not to disparage competitors, instead focusing on offering publishers superior service and higher advertising revenue.

2. Congoo, in stark contrast, employs a strategy built on deception, defamation, and false statements. The discovery conducted in this action has uncovered a pervasive culture of

dishonesty within the business development team at Congoo, which has engaged in nearly a year-long campaign of false advertising by systematically disseminating defamatory, false and misleading statements to publishers with the intention of damaging competitors, primarily Broadspring.  These misrepresentations occurred not only through direct communications with publishers, but also through the creation of multiple online false identities that Congoo used to pass off the lies as the statements of disinterested third parties.

## THE PARTIES

3. Plaintiff Broadspring, Inc. ("Broadspring") is a corporation formed under the laws of Delaware with is principal place of business in California.

4. Defendant Congoo, LLC ("Congoo" or "Adblade") is a limited liability company formed under the laws of Delaware with its principal of place of business in either Somerville, New Jersey or New York, New York.  Since at least as early as January 2012, Congoo has conducted business under the name "Adiant."  Congoo currently operates several divisions, including, insofar as relevant here, a division known as "Adblade."

5. Defendant Ashraf Nashed is a co-founder and Chief Executive Officer of Congoo.

6. Defendant Rafael Cosentino is a co-founder and the Senior Vice President of Business Development of Congoo.

7. Numerous online publications have described Congoo as the "brainchild" of Cosentino and Nashed.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over Broadspring's Lanham Act claim pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121, and supplemental jurisdiction over Broadspring's state law claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because defendant Congoo resides in this district and a substantial part of the events or omissions giving rise to Broadspring's claims occurred in this district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

10. As noted, Broadspring and Adblade both operate advertising networks. These networks enable web site publishers to monetize their traffic by hosting advertisements on their sites. Typically, publishers are paid on either a "CPM" basis, wherein the publisher receives a fixed sum for every one thousand impressions, or on a "revenue share" basis, wherein the publisher and the advertising network split the advertising revenue. Some publishers are paid through a combination of both bases, such as a revenue share with a guaranteed minimum CPM.

11. The market for advertising space on the more desirable web sites is highly competitive, and both Adblade and Broadspring have personnel dedicated to competing for such space. This aspect of the business is called "business development." Thus, as Adblade's Senior Vice President for Business Development, Defendant Cosentino has principal responsibility for creating and maintaining relationships with publishers.

12. Beginning in the summer of 2012 continuing into early 2013, Adblade was under particularly intense competitive pressure from Broadspring. Its senior management—particularly Defendants Nashed and Cosentino—were corresponding nearly daily about the threat posed by competition from Broadspring. Cosentino reacted to this pressure by launching a campaign to defame Broadspring through false advertising designed to mislead web site publishers.

**Cosentino Creates the Squidoo Lens**

13. On or about February 17, 2013, Cosentino created a web page on www.Squidoo.com ("Squidoo"). Squidoo is a very popular web site (its Alexa ranking places it in the top 400 in the United States) that allows users to create their own pages, called "Lenses," on subjects that interest them. Cosentino's Lens was intended to masquerade as an unbiased review of Adblade and Broadspring.

14. The subject of Cosentino's Lens was how publishers could best monetize their web sites, and it contained purportedly unbiased reviews of various advertising networks, including Adblade and Broadspring. However, Cosentino intentionally concealed his authorship of the Lens by using a Squidoo user account named "Recruiterman." According to Recruiterman's Squidoo profile page, the user's name is Jonathan Tovar, and he lives in Brooklyn with "my wife Susan and four year old son Liam." Cosentino has never lived in Brooklyn and does not have a wife named Susan or a child named Liam. The profile also contains a photograph of an unknown person who looks nothing like Cosentino.

15. Cosentino (a/k/a Jonathan Tovar) proceeded to give Adblade a glowing review, writing:

> Adblade ads have become ubiquitous on the web. … Adblade works with larger local and national publishers and seems to work mostly with news sites like MSNBC, Fox News, Yahoo, Forbes, McClatchy Newspapers, etc. … Adblade ads only appear on the largest sites and they do not allow long tail sites to use their ads.
> Downside:  I don't like image + Text ads as much as regular old display ads but these ads seem to be getting the highest eCPM, and have become ubiquitous across the Web.  The other downside is that Adblade probably won't approve you as they only work with the largest publishers.

16. Cosentino then wrote negative reviews of Adblade's competitors, particularly Broadspring:

4

> Broadspring is an image+ Text ad provider. I have only seen these fixed on a few websites so far. Most of their distribution seems to come through media buys at DSPs and other exchanges. All of their display units take users to howlifeworks.com where they embed links to advertiser pages for offers like "make your computer faster". Many of their advertisers appear to be continuity programs (re-bill offers) where the advertiser gets the customer to enter their credit card for a free trial and the makes it tough to cancel. I'd be careful here.
>
> Best for: Sites that cannot get approved by a higher quality network.
>
> Downside: All ad links go to Howlifeworks.com and advertorials which are designed to look like editorial content. Many continuity and rebill offers here. You'll also notice the unit is not clearly marked as advertising. This is a red flag for me.

17. This review contains several false statements. First, most of Broadspring's distribution does not come from media buys. Second, the majority of Broadspring's advertisers are not continuity programs, and the ones that are do not "make it tough to cancel." (Notably, many of Adblade's advertisers are continuity programs, though Cosentino misleadingly omitted this fact from the Lens.)

18. On February 23, 2013, Cosentino e-mailed a link to the Lens to Defendant Nashed, who replied that Cosentino's handiwork was "ingenious."

19. On March 2, 2013, Nashed sent a lengthy e-mail about Broadspring to Cosentino and two other Adblade executives. The substantive text of the e-mail concluded with the directive that "our publishers should know about their background."

20. Cosentino immediately went to work copying Nashed's March 2 e-mail into the Broadspring entry in the Lens. When he was finished, the "downside" section of the Broadspring entry read:

> Downside: A simple Google search shows that Broadspring was formerly Mindset Interactive, a notorious spyware company. Mindset was eventually shut down by the FTC in 2005 and Sanford Wallace, their founder, known as "Spamford Wallace" was banned from online activity for 5 years. In Nov 2006, Broadspring's shareholders then launched a notorious ringtones company, New Motion dba Atrinsic. Atrinsic has

5

$17mm in financing (from various unknown investors), became public through a shady reverse-merger.  They settled 3 years ago with 6 million users scammed: http://www.ftc.gov/os/caselist/0423142/wallacefinaljudgment.pdf

21. This passage was copied almost verbatim from Nashed's March 2 email. Cosentino then sent a link to the revised Lens to Nashed via instant messenger on March 4, to apprise his co-founder and CEO that he was complying with his directive.

22. The final version of the Lens that Nashed and Cosentino created was replete with false statements of fact, to wit:

- Broadspring was not "formerly Mindset Interactive," and Mindset Interactive was never "shut down," by the FTC or otherwise.  Nor was it a "notorious spyware company."

- Sanford Wallace was not a "founder" of either Broadspring or Mindset.  In fact, he has never held any equity in either of these entities, nor has he ever served as an officer, director or employee of either entity.

- Atrinsic is not a "notorious ringtones company," and it did not become public "through a shady reverse-merger."  The reverse merger was an arms-length transaction properly reviewed by the Securities Exchange Commission and reflected in SEC filings.

- The statement that "they settled 3 years ago with 6 million users scammed" is also false, and the hyperlink links to a copy of the FTC's final judgment against Sanford Wallace, which had nothing to do with Broadspring or Atrinsic.

**Cosentino Widely Disseminates the Squidoo Lens**

23. After creating the Lens using the false identity of Jonathan Tovar, Cosentino and AdBlade immediately set about disseminating to the Lens to publishers and others.

24.     First, Cosentino posted links to the Lens on web sites likely to be visited by publishers.  For instance, on or about February 23, 2013, Cosentino posted a link to the Lens on Techulator.com, using the pseudonym "Mark Jennings."  And on or about February 26, 2013, Cosentino posted a link to the Lens on AdvertisingPerspectives.com, using the pseudonym "Diana F."

25.     Cosentino also disseminated the Lens directly to publishers by email, including Geology.com, the New York Daily News, Intermarkets, Inc. and the New Hampshire Union Leader.  Cosentino did not disclose to these publishers that he was the author of the Lens; instead he intentionally deceived them by stating that he discovered the Lens by Googling Broadspring, or that he had been forwarded a link to the Lens by another publisher.

26.     Cosentino even emailed the Lens to an official at the Federal Trade Commission, in an attempt to goad the FTC into starting an investigation of Broadspring and another Adblade competitor, Taboola.  Again concealing Adblade's scheme and his handiwork, Cosentino falsely presented the defamatory Squidoo Lens to the FTC official as neutral, unbiased evidence against Adblade's competitors.

**Broadspring Loses a Publisher Client to the Scheme Before Defendants Are Exposed**

27.     Broadspring learned of the Lens on March 10 when the owner of Geology.com advised a Broadspring business development team member of his decision to switch to Adblade. When Broadspring asked why, the owner replied that "someone" had sent him a link to the defamatory Squidoo Lens, and stated:  "I really like the look of your ads, the controls of your website, and the pay was very good … but I am hesitant to run the ads after seeing the above." (Ellipsis in original.)  In a subsequent conversation, Geology.com advised Broadspring that it

7

was happy with Broadspring's services, and only switched to Adblade because it had received the defamatory Squidoo post from a Broadspring "competitor."

**Cosentino's Use of False Identities and Misrepresentations Continues Unabated**

28. On or about March 11, 2013, Squidoo locked the Lens in response to a letter from Broadspring. On March 19, this action was commenced, eventually forcing Adblade to admit that Rafael Cosentino was "Recruiterman" a/k/a "Jonathan Tovar." Incredibly, this did nothing to deter Cosentino from continuing to use false online identities and spread lies about Broadspring.

29. On or about April 20, 2013, Cosentino posted a comment on Contextly.com under the pseudonym "Richard J." The comment read:

> I have seen Broadspring change business models over the years. They used to distribute spyware under the company name Mindset Interactive. When they were named in a lawsuit by the FTC they dropped that name. They then formed a new company called Atrinsic dba New Motion which distributed Ring tone scams to 13 year olds. They were again sued and this time had to settle a class action lawsuit with 6 Million people. Now Broadspring is using content.ad to drive consumers to howlifeworks and those fake editorials which are not even marked as such so they can get their credit cards and re-bill them. Publishers who work with these guys simply have zero critical thinking or cares about their audience.

30. Shortly thereafter, Cosentino posted another comment to the same Contextly article, this time using the pseudonym "Compliance guy." That comment read:

> All of Taboola's offers are now Advertising but they do not mark their units with the required FTC advertising disclosure. Why do they not do this? Even if it was just "Content" its still advertising isn't it. But Taboola's offers are not even content anymore, they are 100% ads. So someone please ask the FTC why Taboola doesn't feel the need to disclose this to consumers? Is it because they don't want the CTR to fall? Too bad guys, the FTC requires it and Taboola should be compliant.

31. Cosentino sent links to the Contextly article to numerous publishers, including the New York Daily News, Talking Points Memo, Tech Media Network, Slate, Geology.com

and Digital First Media/Journal Register Company.  Cosentino did not disclose to any of these recipients that he was "Richard J" or "Compliance guy."

32.     Indeed, "Jonathan Tovar," "Mark Jennings," "Diana F.," "Richard J" and "Compliance guy" are apparently just the tip of the iceberg.  At his deposition taken on October 29, 2013, Cosentino revealed that he habitually uses false identities on the internet.  He testified that "I have made numerous comments over the years as my own name, as anonymous names, as monikers, as guest posters, on numerous websites, blogs."  Remarkably, Cosentino testified that he could not even recall how many times he had used a false identity in the past six months to post comments about Adblade or Broadspring.  And, Broadspring has learned that Cosentino has a history of using the false names "John Cosentino" and "John Hastings" in connection with still other unlawful activities.

33.     In addition to his pseudonymous online postings, Cosentino made numerous false statements about Broadspring directly to publishers, and also instructed other Adblade personnel to make such statements.

34.     First, Cosentino has orchestrated a false advertising campaign designed to deceive publishers about the advertising units Broadspring places on web sites.  Cosentino has repeatedly told publishers that Broadspring's advertisements consist of "scammy" continuity offers, that cause consumers to be "fleeced" and frequently "confused about who showed the ad and often Adblade ends up being blamed," and that this "has cost Adblade real damages in terms of legal fees, admin and time in court."  These statements are all false and misleading.

35.     Second, Cosentino has orchestrated a false advertising campaign designed to deceive publishers into believing that Broadspring is a fly-by-night company that will be unable to meet its financial obligations to publishers.  Cosentino has repeatedly told publishers that

9

Broadspring intentionally agreed to pay Forbes.com more than Broadspring is able to gross from the relationship. Similarly, he has repeatedly told publishers that Broadspring has very few publisher relationships, and that its "oldest fixed placement [a type of relationship with a publisher] is only 3-4 months old." These statements are all false and misleading.

36. Finally, Cosentino has continued to disseminate the false statements in the Squidoo Lens. For instance, in the April 20, 2013 "Richard J" post, Cosentino falsely represented that Broadspring was sued by the FTC. Cosentino has also continued to send numerous publishers links to the FTC's default judgment against Sanford Wallace, and falsely stated that the judgment was against Broadspring. Likewise, Cosentino has continued to misrepresent facts about Atrinsic, for example, by falsely telling publishers that Atrinsic is "convicted ringtone scam company."

### FIRST CLAIM FOR RELIEF — FALSE ADVERTISING UNDER 15 U.S.C. § 1125
**(Against all Defendants)**

37. Broadspring incorporates by reference the allegations of paragraphs 1 through 36.

38. The statements described above and conveyed to publishers via the Squidoo Lens, other pseudonymous online postings, and direct communications with publishers constitute false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

### SECOND CLAIM FOR RELIEF — DEFAMATION
**(Against all Defendants)**

39. Broadspring incorporates by reference the allegations of paragraphs 1 through 38.

40. The statements described above and conveyed to publishers via the Squidoo Lens, other pseudonymous online postings, and direct communications with publishers constitute common law defamation.

### THIRD CLAIM FOR RELIEF — TORTIOUS INTERFERENCE
(Against all Defendants)

41.     Broadspring incorporates by reference the allegations of paragraphs 1 through 40

42.     Upon information and belief, Congoo knew that Geology.com had a business relationship with Broadspring, and intentionally interfered with that relationship by republishing the defamatory Squidoo Lens statements to Geology.com.  As a result of these actions, Geology.com chose not to enter into contracts with Broadspring, causing Broadspring to sustain damages in the form of lost revenue.

### JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Broadspring hereby demands trial by jury of all the issues so triable.

### PRAYER FOR RELIEF

**WHEREFORE**, Broadspring demands judgment against Defendants Congoo, LLC, doing business as Adiant and Adblade, Ashraf Nashed and Rafael Cosentino as follows:

A.     On the first claim for relief, treble actual damages, disgorgement of profits, injunctive relief (including corrective advertising), and costs and attorneys' fees.

B.     On the second claim for relief, actual and general damages (including attorneys' fees as mitigation damages), and punitive damages.

C.     On the third claim for relief, actual and punitive damages in an amount to be determined at trial.

D.     On all claims for relief, any other relief the Court deems proper, together with the costs and disbursements of the action.

Dated: New York, New York
       November 13, 2013

KENT, BEATTY & GORDON, LLP

/s/ Jack A. Gordon
_____
Jack A. Gordon
(jag@kbg-law.com)
Joshua B. Katz
(jbk@kbg-law.com)
425 Park Avenue, The Penthouse
New York, New York 10022
(212) 421-4300

*Attorneys for Plaintiff Broadspring, Inc.*