UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BROADSPRING, INC.,

                Plaintiff,

    v.

CONGOO, LLC, doing business as ADIANT
and ADBLADE, ASHRAF NASHED,
RAFAEL COSENTINO, and DOES 1-10,

                Defendants.

13 Civ. 1866 (JMF)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION *IN LIMINE* PURSUANT TO FED. R. EVID. 401, 402, 403 AND 802
TO EXCLUDE CERTAIN OF PLAINTIFF'S TRIAL EXHIBITS**

MOSES & SINGER LLP
*Attorneys for Defendants*

Philippe Zimmerman
Shari Alexander
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-1299
Tel: (212) 554-7800 Fax: (212) 554-7700
pzimmerman@mosessinger.com
salexander@mosessinger.com

1044060  014545.0101

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................. 1

I.    LEGAL STANDARD ....................................................................................................... 1

II.   E-MAILS PURPORTEDLY FROM OR WITH THE FTC AND RELATED TESTIMONY SHOULD BE EXCLUDED ...................................................................... 2

    A.    Background Regarding the FTC Communications ................................................ 2

    B.    Communications with the FTC Are Protected by An Absolute Privilege Under California Defamation Law, Irrelevant to Plaintiff's False Advertising Claim, and Highly Prejudicial ............................................................ 4

III.  THE WAFFLESATNOON ARTICLE AND RELATED E-MAILS AND TESTIMONY SHOULD BE EXCLUDED ...................................................................... 7

    A.    Background Regarding the Wafflesatnoon Blog ................................................... 7

    B.    The Wafflesatnoon Blog and E-mail Chain Are Irrelevant to this Litigation and Highly Prejudicial ........................................................................... 7

IV.  E-MAILS AND TESTIMONY BETWEEN CONGOO AND WIT STRATEGIES SHOULD BE EXCLUDED ...................................................................... 9

    A.    Background Regarding Communications with WIT Strategies ............................ 9

    B.    Communications Between Congoo and WIT Are Irrelevant to this Litigation and Highly Prejudicial ......................................................................... 10

CONCLUSION ........................................................................................................................ 11

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Arlio v. Lively*,
   474 F.3d 46 ..................................................................................................1, 2, 7

*Braun v. Bureau of State Audits*,
   67 Cal. App. 4th 1382 (Cal. App. 1st Dist. 1998)..................................................6

*Carrasquillo v. City of Troy*,
   251 F. App'x 688 (2d Cir. 2007) .......................................................................2, 10

*Faulkner v. Nat'l Geographic Soc.*,
   576 F. Supp. 2d 609 (S.D.N.Y. 2008)......................................................................2

*Hagberg v. Cal. Fed. Bank FSB*,
   32 Cal.4th 350, 81 P.3d 244 (Cal. 2004) ...............................................................4, 5

*Kashian v. Harriman*,
   98 Cal. App. 4th 892 (Cal. App. 5th Dist. 2002) ......................................................5

*King v. Borges*,
   28 Cal. App. 3d 27 (Cal. App. 1972) .......................................................................6

*U.S. v. Miller*,
   626 F.3d 682 (2d Cir. 2010)......................................................................................2

*Wise v. Thrifty Payless, Inc.*,
   83 Cal. App. 4th 1296 (Cal. App. 3d Dist. 2000) ....................................................5

*Zimmerman v. Gruma Corp.*,
   3:11-CV-01990-L, 2013 WL 3154118 (N.D. Tex. June 21, 2013) ..........................8

**STATUTES**

California Civil Code § 47(b) ..................................................................................4, 5, 6

**OTHER AUTHORITIES**

Fed. R. Evid. 403 ..........................................................................................................2

Fed. R. Evid. 801(c)......................................................................................................2

Fed. R. Evid. 801(d)......................................................................................................2

Fed. R. Evid. 801(d)(2) ................................................................................................................8, 11

Fed. R. Evid. 802 ............................................................................................................................2

Fed. R. Evid. 802(11) ......................................................................................................................6

Fed. R. Evid. 803 ............................................................................................................................2

Fed. R. Evid. 803(6) ........................................................................................................................6

Fed. R. Evid. 804 ............................................................................................................................2

**PRELIMINARY STATEMENT**

Defendants Congoo, LLC ("Congoo"), Ashraf Nashed ("Nashed") and Rafael Cosentino ("Cosentino") (collectively, "Defendants"), by their attorneys Moses & Singer LLP, submit this memorandum in support of Defendants' motion *in limine*, pursuant to Federal Rules of Evidence ("Fed. R. Evid.") 401, 402, 403 and 802, to preclude Plaintiff, Broadspring, Inc. ("Plaintiff" or "Broadspring"), from using trial exhibits ("Pl. Exs.") 58-59, 61, 92-93 and 110-115 and related testimony at trial.

Pursuant to the Joint Pretrial Order submitted contemporaneously with this motion, Plaintiff has identified the trial exhibits that it intends to rely upon in the trial of this case. Included are objectionable documents relating to: (i) Cosentino's communications with the Federal Trade Commission ("FTC") (Pl. Exs. 58-59 and 61); (ii) an online article/blog regarding Congoo and e-mails between Congoo employees discussing that article (Pl. Exs. 92-93); and (iii) e-mails between Congoo and its public relations agency, WIT Strategies ("WIT") (Pl. Exs. 110-115).  Presumably, Plaintiff also intends to present or elicit testimony at trial concerning these exhibits.  As discussed in detail below, these irrelevant exhibits and related testimony should be excluded because they do not make the existence of any fact that is of consequence to Plaintiff's defamation or false advertising claims more or less probable and, rather, will only serve to prejudice and mislead the jury.  Furthermore, many of these documents should also be excluded because they contain hearsay.

**ARGUMENT**

**I.   LEGAL STANDARD**

"Evidence that is not relevant is not admissible."  *Arlio v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007) (*citing* Fed. R. Evid. 402).  Under the Federal Rules, evidence is relevant if it has a

"tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *U.S. v. Miller*, 626 F.3d 682, 688 (2d Cir. 2010) (*citing* Fed. R. Evid. 401).  Even if evidence is relevant, it must be excluded for "unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Arlio*, 474 F.3d at 52 (*citing* Fed. R. Evid. 403).  Thus, if the probative value of evidence is substantially outweighed by its prejudicial effect, such evidence must be excluded.  *Faulkner v. Nat'l Geographic Soc.*, 576 F. Supp. 2d 609, 613 (S.D.N.Y. 2008); *see also Carrasquillo v. City of Troy*, 251 F. App'x 688, 690 (2d Cir. 2007) ("Evidence . . . must pass muster under Rule 403: Its probative value must not be substantially outweighed by unfair prejudice." (*quoting U.S. v. Dukagjini*, 326 F.3d 45, 58 (2d Cir. 2003))).

In addition, hearsay is not admissible unless a federal statute, the Fed. R. Evid. or other rules prescribed by the Supreme Court provide otherwise.  Fed. R. Evid. 802.  The Fed. R. Evid. define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).  To be admissible, each of the below documents must either meet the definition of "statements which are not hearsay" in Fed. R. Evid. 801(d) or fit within a hearsay exception listed in Fed. R. Evid. 803, 804 or 807.

**II.    E-MAILS PURPORTEDLY FROM OR WITH THE FTC AND RELATED TESTIMONY SHOULD BE EXCLUDED**

    **A.    Background Regarding the FTC Communications**

Plaintiff has expressed its intent to use at trial irrelevant and highly prejudicial communications between Cosentino and the Federal Trade Commission ("FTC") (Pl. Exs. 58-59 and 61).  Pl. Ex. 58 is a form e-mail sent to "rcosentino@adblade.com" from an e-mail address

"no-reply@consumersentinel.gov," dated January 28, 2013, stating that a complaint was received by the FTC, with a corresponding reference number.  The text of the e-mail does not indicate the nature of the compliant received or the entity complained about.  Moreover, the e-mail pre-dates any of the conduct alleged in the Second Amended Complaint to constitute false advertising or defamatory statements.

Pl. Ex. 59 is an e-mail string between Cosentino and Richard L. Cleland ("Cleland"), an FTC employee, dated between February 28, 2013, and March 1, 2013, regarding the failure of an unrelated competitor (Taboola) to label its advertising unit as sponsored content.  Plaintiff Broadspring is not mentioned in the e-mail chain.  A link to the Squidoo Lens, a blog article that Plaintiff alleges included false statements about it, was included in the e-mail relay.

Finally, Pl. Ex. 61 is an e-mail chain between Cosentino and Cleland, dated between April 4 and 5, 2013, regarding Broadspring's failure to properly label its ad units on Forbes.com and Rawstory.com, and includes links to the Forbes and Rawstory websites and screen shots of the ads.[1]  Cosentino also included a link to a www.contextly.com blog article that discussed Broadspring's advertising practices.  Notably, this e-mail predates the posting of alleged comments attributed by Plaintiff to Cosentino and there is no evidence that Cleland read the contextly.com article when he received the e-mail from Cosentino, let alone revisited the article after Cosentino posted his comments.

---

[1] Broadspring's failure to label its Forbes.com ad unit is not in dispute as Broadspring employees testified at their deposition that Forbes' ad units are not marked and Broadspring produced e-mails between Forbes and its business development personnel discussing changing the label on the ad unit to "From Around the Web" and the implementation of that change.  *See* Alexander Dec., Ex. 1; Ex. 2, 120:12-130:22.

**B.    Communications with the FTC Are Protected by an Absolute
Privilege Under California Defamation Law, Irrelevant
to Plaintiff's False Advertising Claim, and Highly Prejudicial**

Communications between Cosentino and the FTC cannot constitute defamation under California law because they are protected by an absolute privilege, codified at California Civil Code § 47(b).  Furthermore, because the FTC is not a publisher, any statements by Cosentino to the FTC cannot constitute actionable false advertising.  Consequently, such communications are wholly irrelevant to Broadspring's causes of action in this case.  Moreover, it became clear during discovery that Plaintiff intends to use these communications for a highly prejudicial purpose – to suggest to the jury that Cosentino misled or deceived a federal regulator.[2]  While Defendants would dispute vehemently any such suggestion, to allow exhibits and such argument to be presented to the jury would create a distracting, time-consuming, and prejudicial side-show that has no bearing on the claims alleged.

Cosentino's communications with the FTC cannot be used in support of Plaintiff's defamation claim.  Cal. Civ. Code § 47(b) creates an absolute privilege for communications, *inter alia*, relating to any official proceeding authorized by law.  *Id.* at § 47(b)(3).  Cosentino's communications with the FTC fall squarely within that privilege.  The leading case on the application of this absolute privilege is *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal.4th 350, 81 P.3d 244 (Cal. 2004).  Therein, the Supreme Court of California stated that "the absolute privilege

---

[2] Indeed, Plaintiff has designated the following deposition testimony by Cosentino, related to Pl. Ex. 59, in the Joint Pretrial Order, which is being submitted contemporaneously with this motion:

> Q.    You don't think it's deception to tell the FTC there is a review of many of these services here as opposed to saying, I wrote a review, I used the name Jonathan Tovar with the moniker Recruiterman, but it was me, the senior VP of a competitor?
>
> A.    I believe it's dishonest.  I don't believe it's deception.

Alexander Dec., Ex. 3, 311:13-21.  This testimony should be excluded because the question is, to put it mildly, argumentative and Cosentino's definition of deception is irrelevant, particularly where the recipient of the e-mail at issue was not a publisher.  Moreover, while plainly irrelevant, such testimony will be highly misleading and prejudicial to the jury.

established by section 47(b) serves the important public policy of assuring free access to the courts and other official proceedings." *Id.* at 360.  The court confirmed that the privilege extended to communications with government agencies, noting that "many cases have held that the official proceeding privilege applies to a communication intended to prompt an administrative agency charged with enforcing the law to investigate or remedy a wrongdoing." *Id.* at 362 (*citing Slaughter v. Friedman*, 32 Cal.3d 149, 649 P.2d 886 (Cal. 1982) ("the privilege protect[s] communications to or from governmental officials which may precede the initiation of formal proceedings")).  The court held that "communications are privileged under section 47(b) when they are intended to instigate official governmental investigation into wrongdoing." *Id.* at 370.

In *Kashian v. Harriman*, 98 Cal. App. 4th 892 (Cal. App. 5th Dist. 2002), the court held that the absolute privilege codified in section 47(b) extended to a defendant's letter to a division of the Office of the Attorney General that specifically named a health care provider, alleged its abuse of tax exempt status, and urged the AG to initiate an investigation.  In *Kashian*, the court emphasized that the section 47(b) privilege "is absolute; it applies, if at all, regardless whether the communication was made with malice or the intent to harm." *Id.* at 913 (citation omitted).  "[T]he privilege extends to communications between private parties preliminary to the institution of an official proceeding." *Id.* at 927 (citation omitted).  The court further noted that the privilege extends to "all torts" other than malicious prosecution – which is not alleged by Plaintiff Broadspring in this action. *See id.* at 913.  The court held that the defendant's "delivery of his letter to the Attorney General was absolutely privileged" and dismissed that cause of action for defamation. *Id.* at 927.  *See also Wise v. Thrifty Payless, Inc.*, 83 Cal. App. 4th 1296, 1303 (Cal. App. 3d Dist. 2000) (holding that the § 47(b) absolute privilege extended to a

defendant's report to the motor vehicle department that his estranged wife was unfit to drive because of drug abuse, even though the statements were alleged to be unfounded and malicious; "[a]n absolute privilege exists to protect citizens form the threat of litigation for communications to government agencies whose function it is to investigate and remedy wrongdoing"); *Braun v. Bureau of State Audits*, 67 Cal. App. 4th 1382, 1389 (Cal. App. 1st Dist. 1998) (applying § 47(b) absolute privilege to a whistleblower complaint to a state regulator); *King v. Borges*, 28 Cal. App. 3d 27, 34 (Cal. App. 1972) (letter to the State of California, Division of Real Estate accusing broker of wrongdoing was absolutely privileged; "a communication to an official administrative agency, which communication is designed to prompt action by that agency, is as much a part of the 'official proceeding' as a communication made after the proceedings have commenced").

Section 47(b) clearly protects Cosentino's communications to the FTC under its absolute privilege. As such, Costentino's communications with the FTC cannot be used to support and are irrelevant to Broadspring's claims in this action. Moreover, it is undisputed that the FTC is not a "publisher" or customer of Broadspring. As such, these communications have not been pled, nor can they now be invoked, to support Plaintiff's false advertising claims.

The FTC communications are wholly irrelevant to this litigation generally and will only distract and confuse the jury.[3] For all of the reasons stated above, the Court should not allow the side-show and guaranteed distraction to the jury that will result from the introduction of the FTC

---

[3] Additionally, there are hearsay hurdles to the admission of Pl. Ex. 58 that cannot be overcome. Presumably, Plaintiff intends to submit this exhibit to show that Cosentino submitted a complaint to the FTC, which is plainly for the truth of the matter asserted and, thus, hearsay. To the extent Plaintiff attempts to argue that the e-mail is admissible as a business record pursuant to Fed. R. Evid. 803(6), Plaintiff must present the testimony of the custodian or another qualified witness, or a certification complying with Fed. R. Evid. 802(11) or (12) or with a statute permitting certification. Fed. R. Evid 803(6). Plaintiff has not listed any witness from the FTC in its witness list nor indicated that it has obtained or is obtaining a certification to submit to the Court. Moreover, Plaintiff is required to show that "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness." *Id*. at 803(6)(E).

communications, which are absolutely privileged in any event. The court should preclude Plaintiff from using Pl. Exs. 58-59 and 61 and any related deposition testimony and prohibit it from eliciting testimony on this subject at trial.

### III. THE WAFFLESATNOON ARTICLE AND RELATED E-MAILS AND TESTIMONY SHOULD BE EXCLUDED

#### A. Background Regarding the Wafflesatnoon Blog

In November 2010, more than two years before the allegedly false statements at issue in this case were made, a website www.wafflesatnoon.com posted a blog titled, "Cutting Through Adblade's BS." Pl. Ex. 92. The anonymously authored blog levied various criticisms at Adblade, a division of Congoo, and at least one of its "publishers," a website on which Congoo placed third-party ads. Broadspring was not mentioned or named in the blog. An internal e-mail exchange, dated between November 20 and 21, 2012, purportedly between Cosentino, Nashed, and other individuals discussed the anonymous blog post and whether a search engine tool known as a search engine optimization service ("SEO") could be utilized to lessen the influence or visibility of the wafflesatnoon post. Pl. Ex. 93.

#### B. The Wafflesatnoon Blog and E-mail Chain Are Irrelevant to this Litigation and Highly Prejudicial

As with the communications between Cosentino and the FTC, the wafflesatnoon blog and the e-mail regarding it are wholly irrelevant to Plaintiff's defamation and false advertising claims, have no bearing whatsoever on this litigation, and will be a highly prejudicial distraction to the jury. *See Arlio*, 474 F.3d at 52.

First, the nearly four-year-old blog is rank hearsay.[4] Plaintiff clearly intends to use the article for the truth of the matters asserted, namely that the criticisms of Adblade stated therein

---

[4] Plaintiff's attempted use of this blog post is fundamentally different than Defendants' intended use of various articles and blog posts that it will seek to place into evidence. First, many of the articles and blog posts Defendants will seeks to rely upon for the truth of the statements therein are from inherently reliable sources such as the Wall

were true, including those regarding purported ad content, responsiveness to complaints, and prices.  Plaintiff cannot show that it falls within any of the exclusions or exceptions to the hearsay rule.  Additionally, the criticisms of Adblade contained in the blog are highly prejudicial to Congoo and should not be allowed to unfairly taint the jury.

Regarding Pl. Ex. 93, it is clear from questioning at Nashed's deposition as the 30(b)(6) designee for Congoo that Plaintiff intends to use this e-mail chain to argue that Congoo somehow used or attempted to use an SEO to lessen the influence of the article.  (Alexander Dec., Ex. 4, 117:4-127:22).  Such an attempt, however, would have been absolutely irrelevant to the claims at issue.  The Wafflesatnoon blog and e-mail chain surely are meant to cast Congoo in a negative light and to suggest that Nashed and Cosentino somehow behaved improperly by attempting to minimize the impact of the negative blog post.  This irrelevant evidence should not be allowed to infect the jury or delay the resolution of this dispute with another side-ring attraction regarding four-year-old criticisms of Congoo, SEOs, and their use in the business world – legitimate or otherwise.  None of this bears on the dispute at issue.

In addition, the e-mails in Pl. Ex. 93 from Rick Ramos ("Ramos") and Jon Carmen ("Carmen"), who are not listed on Plaintiff's witness list, are hearsay.  To the extent Plaintiff argues that the exhibit should nevertheless be admitted as a party-opponent admission pursuant to Fed. R. Evid. 801(d)(2), Plaintiff cannot show that Carmen or Ramos made their statements as employees or agents of Congoo while acting in that capacity.  *See, e.g., Zimmerman v. Gruma Corp.*, 3:11-CV-01990-L, 2013 WL 3154118, at *11 (N.D. Tex. June 21, 2013) ("Plaintiff's statements constitute hearsay because she has not established that the statements qualify as party-

---

Street Journal, Bloomberg News, Ziff Davis Media and leading anti-virus/anti-spyware distributors, such as Symantec.  Second, many of the articles and blog posts Defendants intend to present as evidence are relevant to Defendants' defenses, even if not accepted for the truth, because they were reviewed by defendants Cosentino and Nashed before the communications at issue were made and establish that the statements were made with reasonable care and/or without malice.

opponent admissions, and her statements are being offered for the truth of the matter asserted. Specifically, Zimmerman has not shown that: (1) the statements were made in a representative capacity; (2) Gruma adopted the statements; (3) Gruma authorized Zimmerman's coworkers to make the statements; or (4) that the coworkers who allegedly made the statements maintained an agency relationship and that the statements were within the scope of that relationship while it existed."). Moreover, Plaintiff still needs to show that these e-mails are being offered *against* Congoo for a purpose other than the truth. Thus, the court should preclude Plaintiff from using Pl. Exs. 92 and 93 and prohibit Broadspring from eliciting testimony or referring to deposition testimony regarding them at trial.

## IV. E-MAILS AND TESTIMONY BETWEEN CONGOO AND WIT STRATEGIES SHOULD BE EXCLUDED

### A. Background Regarding Communications with WIT Strategies

Pl. Exs. 110-115 consist of e-mails, dated the first week of June 2013, between Congoo and its public relations agency, WIT. These communications regard a press release Broadspring had issued about the instant lawsuit and how Congoo should respond to it – if at all. The e-mails constitute brainstorming between Congoo and WIT in the context of the present litigation.

Plaintiff made clear through the line of questioning associated with Pl. Exs. 110-115 at Nashed's individual deposition (Alexander Dec., Ex. 5, 86:10-24, 89:24-91:6) that it intends to use these exhibits to argue to the jury that Congoo improperly put out positive press, including a response to the Broadspring press release, in order to reduce the views of the Broadspring press release – or "suppress" it – when viewers searched Google for Adblade. Plaintiff may also intend to improperly suggest to the jury that these communications evince Defendants' concern over Broadspring's lawsuit and that such concern was borne of culpability. Plaintiff may additionally seek to improperly imply to the jury that Nashed's involvement in formulating a

response to the Broadspring press release supports its theory that he participated in or condoned the Squidoo Lens and its dissemination.

### B. Communications Between Congoo and WIT Are Irrelevant to this Litigation and Highly Prejudicial

These communications should be excluded because they have no bearing on either the defamation or false advertising claims and are highly prejudicial. *See Carrasquillo*, 251 F. App'x at 690. They are also wholly irrelevant to Plaintiff's false advertising claim because the e-mails are not to or among publishers. Rather, they are communications between Congoo and its PR agency in the context of *this* litigation. Likewise, they are not relevant to the Plaintiff's defamation claim nor has Plaintiff alleged them to be. As with the other evidence discussed above, these communications threaten to create a mini-trial on SEOs and the corporate use of search engine tools to promote the visibility of positive press and reduce the negative. Congoo's tracking of or response to Broadspring's press release are irrelevant to Broadspring's claims of defamation and false advertising.

Moreover, the communications are highly prejudicial. That Plaintiff intends to use them to suggest that Defendants improperly tried to reduce the impact or exposure of Broadspring's press release is clear. Such a suggestion would be prejudicial to the jury and distract them from determining whether Plaintiff has satisfied the multiple elements of its false advertising and defamation claims.

Finally, these exhibits are littered with hearsay and double hearsay. In Pl. Exs. 110, 112[5], 113, 114[6] and 115, the e-mails authored by Mark Naples ("Naples"), whom Plaintiff has not

---

[5] It is also unclear who or what Naples was responding to in Pl. Ex. 112, and, therefore, what possible relevance this e-mail could have to the issues in this case.

6 The relevance of Pl. Ex. 114 is particularly questionable where Nashed testified he did not recall the context of the e-mail during his deposition and Plaintiff's counsel quickly moved on to the next exhibit. (Alexander Dec., Ex. 5, 102:15-103:6.).

listed on its witness list, contain hearsay. There is no evidence in these exhibits that Congoo adopted Naples's statements or that Naples is an agent of Broadspring sufficient to make these e-mails party-opponent admissions. *See* Fed. R. Evid. 801(d)(2),

For all of these reasons, the court should preclude the use of Pl. Exs. 110-115 at trial and prohibit Plaintiff from eliciting testimony or referring to deposition testimony regarding them.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant its motion *in limine* and preclude Plaintiff from introducing at trial any of the proposed trial exhibits discussed above or presenting or eliciting any testimony referring to or concerning those exhibits, including prior deposition testimony.

Dated:   October 10, 2014
         New York, New York

> MOSES & SINGER LLP
> *Attorneys for Defendants*
>
> /s/ Shari Alexander  _____
> Philippe Zimmerman
> Shari Alexander
> 405 Lexington Avenue
> New York, NY 10174-1299
> Tel: 212-554-7800 Fax: 212-554-7700
> pzimmerman@mosessinger.com
> salexander@mosessinger.com