**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BROADSPRING, INC.,

                      Plaintiff,

        v.

CONGOO, LLC, doing business as ADIANT
and ADBLADE, ASHRAF NASHED,
RAFAEL COSENTINO,

                Defendants.

13 Civ. 1866 (JMF)


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF CONGOO'S**
**TOTAL GROSS REVENUES AND PROFITS AND PLAINTIFF'S PROSPECTIVE**
**CORRECTIVE ADVERTISING COSTS**


Respectfully submitted,

KENT, BEATTY & GORDON, LLP
Jack A. Gordon
 (jag@kbg-law.com)
Joshua B. Katz
 (jbk@kbg-law.com)
425 Park Avenue, The Penthouse
New York, New York 10022
(212) 421-4300

*Attorneys for Plaintiff Broadspring, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page:**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      Evidence of Congoo's Total Revenues and Profits is
Indispensable Both To Disgorgement Under the Lanham Act
and Punitive Damages for Defamation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

          A.     The Lanham Act Requires Broadspring to Prove
Only Congoo's Gross Revenue, and
Requires Congoo to Prove Any Deductions For
Revenue Not Attributable to the False Advertising. . . . . . . . . . . . . . . . . . 2

          B.     The Jury Must Consider Congoo's Gross Revenues
and Profits in Assessing Punitive Damages. . . . . . . . . . . . . . . . . . . . . . . . 10

II.     Broadspring is Entitled to Submit Evidence of Reputational Damages. . . . . . . . 12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                           **<u>Page(s)</u>**

*Adray v. Adry-Mart, Inc.*,
    76 F.3d 984 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,
    829 F. Supp. 2d 802 (D. Minn. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bertero v. National General Corp.*,
    529 P.2d 608 (Cal. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*BMW of N. Am. v. Gore*,
    517 U.S. 559 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bose Corp. v. Consumers Union*,
    529 F. Supp. 357 (D. Mass. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Boyle v. Lorimar Prods.*,
    13 F.3d 1357 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Burndy Corp. v. Teledyne Indus., Inc.*,
    748 F.2d 767 (2d Cir. 1984).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 7

*Chamilia, LLC v. Pandora Jewelry, LLC*,
    2007 U.S. Dist. LEXIS 71246 (S.D.N.Y. Sept. 24, 2007). . . . . . . . . . . . . . . . . . . . . . 9

*Charles Atlas, Ltd. v. Time-Life Books, Inc.*,
    570 F. Supp. 150 (S.D.N.Y. 1983).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Dallas v. Goldberg*,
    143 F. Supp. 2d 312 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Davis v. The Gap, Inc.*,
    246 F.3d 152 (2d Cir. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-5, 7, 8

*Douglas v. Ostermeier*,
    1 Cal. App. 4th 729 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*George Basch Co. v. Blue Coral, Inc.*,
    968 F.2d 1532 (2d Cir. 1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hamil Am., Inc. v. GFI, Inc.*,
    193 F.3d 92 (2d Cir. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hamilton-Brown Shoe Co. v. Wolf Brothers & Co.*,
    240 U.S. 251 (1916).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lane v. Hughes Aircraft Co.*,
    993 P.2d 388 (Cal. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*,
    316 U.S. 203 (1942). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Myplaycity, Inc. v. Conduit Ltd.*,
    2013 U.S. Dist. LEXIS 115598 (S.D.N.Y. Aug. 12, 2013). . . . . . . . . . . . . . . . . . 2, 3, 5

*Neal v. Farmers Ins. Exchange*,
    582 P.2d 980 (Cal. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Nintendo of Am., Inc. v. Dragon Pacific Int'l*,
    40 F.3d 1007 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Novell, Inc. v. Network Trade Ctr.*,
    25 F. Supp. 2d 1233 (D. Utah 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Pfeifer v. John Crane, Inc.*,
    220 Cal. App. 4th 1270 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pods Enters. v. U-Haul Int'l, Inc.*,
    2014 U.S. Dist. LEXIS 96174 (M.D. Fl. Jul. 15, 2014) . . . . . . . . . . . . . . . . . . . . . 12

*POM Wonderful, LLC v. Coca-Cola Co.*,
    134 S. Ct. 2228 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rexall Sundown, Inc. v. Perrigo Co.*,
    707 F. Supp. 2d 357 (E.D.N.Y. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5

*Rodgers v. Wright*,
  2011 U.S. Dist. LEXIS 21063 (S.D.N.Y. Mar. 11, 2011). . . . . . . . . . . . . . . . . . . . . . . . . 3

*Tamko Roofing Prods., Inc. v. Ideal Roofing Co.*,
  282 F.3d 23 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Williams v. Burns*,
  540 F. Supp. 1243 (D. Colo. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*WMS Gaming, Inc. v. WPC Prods. Ltd.*,
  542 F.3d 601 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Wynn Oil Co. v. Am. Way Service Corp.*,
  943 F.2d 595 (6th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## Statutes, Rules and Regulations

15 U.S.C. § 1117(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

17 U.S.C. § 504(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## Other Authorities

J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 30.65 (4th ed. 2009) . . . . . 7

Prosser, *The Law of Torts*, § 129 (4th ed. 1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Restatement (Third) of Unfair Competition § 37, cmt. d . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Plaintiff Broadspring, Inc. ("Broadspring") respectfully submits this memorandum in opposition to Defendants' motion *in limine* (1) to exclude evidence of Congoo's total gross revenues and profits, and (2) to exclude evidence of the costs necessary to repair the damage to Broadspring's reputation.  (ECF Nos. 211, 212, and 214.)

## PRELIMINARY STATEMENT

Defendants contend that Broadspring should be precluded from presenting evidence of Congoo's total gross revenues and profits because such evidence is "not supported by the law, which only allows for recovery of a defendant's profits that are *attributable to the false advertising*," and because such evidence is "highly prejudicial."  (ECF No. 212, Def. Mem., p. 5 (emphasis in original).)  That argument gets the parties' respective burdens of proof completely backwards.  Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), unambiguously mandates that, once the prerequisites for an award of profits have been met, Broadspring bears the burden of proving only Congoo's gross revenue from its online advertising business.  The burden then shifts to Congoo to prove which portion of its gross revenue is *not* attributable to the false advertising.  If Congoo fails to do so, disgorgement of its entire gross revenue is appropriate. Separately, evidence of Congoo's wealth (*i.e.*, its total revenues and profits) must be presented to the jury so that it can determine the appropriate amount of punitive damages for Broadspring's defamation claim.

Defendants also contend that Broadspring is barred from submitting evidence of the cost of any "prospective corrective advertising" necessary to counteract Defendants' misconduct. This argument fails because it incorrectly assumes that Broadspring's corrective advertising and other measures are entirely "prospective" when, in reality, Broadspring has already engaged the services of a highly regarded public relations firm.  Moreover, settled law holds that damages in

defamation actions can include the expenses necessary to repair the plaintiff's reputation and combat the effects of the defamation.  Accordingly, Defendants' arguments are devoid of merit and must be rejected.

## ARGUMENT

**I.      Evidence of Congoo's Total Revenues and Profits is Indispensable Both To Disgorgement Under the Lanham Act and Punitive Damages for Defamation**

As explained below, evidence of Congoo's gross revenues and profits is indispensable to assessing disgorgement damages on Broadspring's Lanham Act claim and punitive damages on Broadspring's defamation claim.

**A.      The Lanham Act Requires Broadspring to Prove Only Congoo's Gross Revenue, and Requires Congoo to Prove Any Deductions For Revenue Not Attributable to the False Advertising**

Defendants' plea that the jury be kept ignorant of Congoo's gross revenue and profits rests on their contention that Broadspring bears the burden of proving the amount of Congoo's revenues attributable to the false advertising.  Unfortunately for Defendants, the plain language of the Lanham Act, as well as the overwhelming weight of authority, make clear that Broadspring's sole burden is to prove Congoo's gross revenue, while Congoo bears the burden of proving that any portion of its revenue was not related to its false advertising.

As Defendants reluctantly acknowledge, at least "two recent District Court decisions" in this Circuit have squarely held that the Lanham Act requires Defendants to prove that any portion of their gross revenue is not attributable to the false advertising.  (ECF No. 212, Def. Mem., p. 10 n.10) (citing *Myplaycity, Inc. v. Conduit Ltd.*, 2013 U.S. Dist. LEXIS 115598 (S.D.N.Y. Aug. 12, 2013); *Rexall Sundown, Inc. v. Perrigo Co.*, 707 F. Supp. 2d 357 (E.D.N.Y. 2010)).)  And,

although not mentioned by Defendants, a third recent decision within this Circuit reached the

same conclusion.  *Rodgers v. Wright*, 2011 U.S. Dist. LEXIS 21063, *7 (S.D.N.Y. Mar. 11,

2011) ("Once plaintiff justifies entitlement to defendant's profits, plaintiff must establish only

the amount of defendant's sales—i.e. defendant's profits in gross.  It is defendant's burden to

prove that any part of those sales is attributable other than to its infringing use of plaintiff's

mark.").  Defendants nevertheless urge this Court to create an intra-circuit split based on their

argument that these decisions are inconsistent with *Burndy Corp. v. Teledyne Indus., Inc.*, 748

F.2d 767 (2d Cir. 1984), and *Davis v. The Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001).  Defendants

are wrong with respect to both cases.

  First, *Myplaycity* and *Rexall* are consistent with *Davis*'s interpretation of the very similar

disgorgement of profits provision in the Copyright Act.  In *Davis*, the Gap—which, in addition to

operating stores under the Gap brand, also owns Old Navy and Banana Republic—ran an

advertisement that featured a model wearing a form of eyeglass-like jewelry copyrighted by the

plaintiff.  Although the advertisement pertained only to the Gap label stores, the plaintiff

attempted to recover the total sales revenue collected by "the corporate parent of the Gap stores."

*Id*. at 159.  The Second Circuit held that because the Gap had "infringed only with respect to Gap

label stores and eyewear … it was incumbent on Davis to submit evidence at least limited to the

gross revenues of the Gap label stores, and perhaps also limited to eyewear or accessories."  *Id*. at

160.  Thus, *Davis* stands for the proposition that the plaintiff's evidence of gross revenues should

be limited to the specific brand or product line that was the subject of the false advertising.  *See*

*also id.* ("the statutory term 'infringer's gross revenue' should not be construed so broadly as to

include revenue from lines of business that were unrelated to the act of infringement.").

Broadspring has fully complied with this requirement, because its gross revenue evidence is limited to the online advertising business that Congoo conducts under the Adblade trade name. Broadspring is not seeking to introduce revenues from any unrelated brands or lines of business that Congoo may operate, such as, for example, its Netpass Toolbar software product.  (*See* http://www.congoo.com/netpass/install.aspx, last visited October 24, 2014.)  In that regard, the revenue figures that Broadspring seeks to introduce are simply those that are reflected in the financial documents Defendants produced in response to the Court's Order of August 29, 2013 (ECF No. 50); by choosing to produce these figures, Defendants acknowledged that they reflect the gross revenues for the relevant brand or product line at Congoo.

In fact, far from supporting Defendants, *Davis* completely obliterates their argument that Broadspring must prove which publishers "received or viewed, and acted adversely to Broadspring as a direct result of, the allegedly false statements."  (ECF No. 212, Def. Mem., p. 17.)  As noted, the Second Circuit held only that "it was incumbent on Davis to submit evidence at least limited to the gross revenues of the Gap label stores, and perhaps also limited to eyewear or accessories."  *Davis*, 246 F.3d at 160.  "Had he done so, the burden would then have shifted to the defendant under the terms of § 504(b) to prove its deductible expenses and elements of profits from those revenues attributable to factors other than the copyrighted work."  *Id*.  Yet, under Defendants' reasoning, it would not have been sufficient for Davis to introduce evidence of such gross revenues; rather, Davis would also have been required to prove which consumers "received or viewed" the infringing advertisement and made a purchase "as a direct result."  (ECF No. 212, Def. Mem., p. 17.)  Thus, Defendants' core argument—which also permeates

their proposed charges and verdict form—is irreconcilable with the Second Circuit's teachings in *Davis*.

As for *Burndy Corp.*, the defendants in both *Myplaycity* and *Rexall* unsuccessfully advanced the same argument that Defendants make here. Both district courts rightly rejected that argument, explaining that *Burndy Corp.* was unambiguously a case about causation, not apportionment of revenue. *Myplaycity, Inc.*, 2013 U.S. Dist. LEXIS 115598, *9-2; *Rexall Sundown, Inc.*, 707 F. Supp. 2d at 362. That is, "[t]he plaintiff in *Burndy* could not obtain an accounting of profits because it could not demonstrate an injury caused by defendant's actions." *Id.* This threshold issue of causation is distinct from the issue of "who, assuming Rexall could meet the threshold requirements for an accounting of Perrigo's profits, bore the burden of apportioning those profits between sales due to the allegedly false advertising and sales due to other factors." *Id.* "Burndy does not address this issue in any detail and … is not inconsistent with the cases cited above, which hold that it is a Lanham Act defendant who bears the burden of apportionment." *Id.*

As the last quotation indicates, the court in *Rexall* was hardly writing on a clean slate. The principle that the defendant bears the burden of proving which sales are attributable to something other than its misconduct predates the Lanham Act and has been well-settled for at least a century. In *Hamilton-Brown Shoe Co. v. Wolf Brothers & Co.*, 240 U.S. 251, 260, 261-62 (1916), for example, the Supreme Court rejected the argument "that the burden of proof is upon complainant to show what part of defendant's profits were attributable to the use of ... [an] infringing mark," holding instead that "it is more consonant with reason and justice that the owner of the trade-mark should have the whole profit than that he should be deprived of any part

5

of it by the fraudulent act of the defendant."  Subsequently, in *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203 (1942), the Supreme Court construed the predecessor statute to the Lanham Act that contained almost identical language.  Again, the Court held that "the [Trade-mark] Act [of 1905] requires the trade-mark owner to prove only the sales of articles bearing the infringing mark," and that "[t]he burden is the infringer's to prove that his infringement had no cash value in sales made by him."  *Id.* at 206-07 (internal citations omitted).

Not surprisingly, the case law interpreting the Lanham Act is in harmony with these pre-Lanham Act precedents.  As the Second Circuit confirmed in *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1539 (2d Cir. 1992), "profits from defendant's proven sales are awarded to the plaintiff unless the defendant can show 'that the infringement had no relationship' to those earnings." (quoting *Mishawaka Rubber & Woolen Mfg. Co.*, 316 U.S. at 206.)  And the case law in other circuits is in accord.  *See, e.g., WMS Gaming, Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 608 (7th Cir. 2008) (district court erroneously "assumed that it had to segregate [defendant's] legitimate revenues from those that [defendant] derived through its infringement … The burden was … on [defendant] to show that certain portions of its revenues … were not obtained through its infringement."); *Tamko Roofing Prods., Inc. v. Ideal Roofing Co.*, 282 F.3d 23, 36 (1st Cir. 2002) ("The burden of showing that not all profits should be awarded is more akin to the burden of showing the amount of costs to be deducted from profits, which the Act places on defendant."); *Nintendo of Am., Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994) ("The burden is upon [defendant] to prove that sales were demonstrably not attributable to the infringing mark.") (quotation omitted); *Wynn Oil Co. v. Am. Way Service Corp.*, 943 F.2d 595, 605-06 (6th Cir. 1991) ("It is not the plaintiff's burden to prove the profits with exactness

6

because the statute places the burden on the defendant once the plaintiff comes forward with proof of the defendant's gross sales. … [B]oth common sense and the statute suggest that the burden of apportioning the profits should be placed on the defendants."); *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 819 (D. Minn. 2011) ("To be entitled to recover profits, Aviva must only prove Manley's sales of the allegedly falsely advertised products.  If Manley fails to prove the sales not due to the allegedly violative conduct, Aviva may be entitled to all of Manley's profits from the allegedly falsely advertised products … .").[1]

In addition to the *Burndy* and *Davis* decisions on which they principally rely, Defendants also cite several cases that stand for the unremarkable proposition that, at the end of the day, Broadspring should receive only those profits attributable to the false advertising.  (*See, e.g.,* ECF No. 212, Def Mem., p. 7.)  That general principle, however, does not address whether Broadspring or Defendants have the burden of proving which profits are so attributable and which profits are not.  In other words, Defendants mistakenly conflate the ultimate conclusion that the fact-finder must reach with the various burdens of proof and presumptions that the fact-finder must apply along the path to reaching that conclusion.  As demonstrated above, the weight of authority—including Defendants' favorite case, *Davis*, 246 F.3d at 160—overwhelmingly supports Broadspring's position that its sole burden is to prove Congoo's gross revenues for its

---

[1]       Leading secondary sources also confirm that Defendants bear the burden of proving any portions of revenue not due to the false advertising.  *See, e.g.,* Restatement (Third) of Unfair Competition § 37, cmt. d ("The plaintiff has the burden of proving the defendant's gross profits with reasonable certainty; mathematical precision is not required.  The defendant bears the burden of establishing which, if any, of the total sales are not attributable to the misconduct."); J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 30.65 (4th ed. 2009) ("Under the federal Lanham Act, as well as the common law, it is the infringer's burden to prove any proportion of his total profits which may not have been due to the use of the infringing mark.").

entire online advertising line of business.  Congoo must then attempt to identify, and prove by a preponderance of the evidence, which portions of those gross revenues are not related to its false advertising.

* * *

In light of the fact that Broadspring need only introduce evidence of Congoo's total revenue, Defendants' remaining arguments for excluding this evidence can be given short shrift. First, Defendants contend that Broadspring should be limited to submitting evidence of Congoo's revenues and profits derived solely from the nine publishers Defendants admit received their false advertising.  As discussed, this argument is irreconcilable with the Lanham Act (not to mention *Davis*'s interpretation of the analogous provision of the Copyright Act), and, in any event, the evidence at trial will show that the number of publishers exposed to the false advertising greatly exceeds Defendants' estimate.[2]

Second, Defendants' contention that the probative value of evidence of Congoo's total gross revenues and profits is substantially outweighed by unfair prejudice also stems from their misapprehension of the parties' burdens of proof and must be rejected on that basis.  Indeed, for Broadspring and Congoo to meet their respective burdens under the Lanham Act's burden-shifting framework, evidence of Congoo's total gross revenues and profits must be admitted.

Finally, Defendants' contention that "communications between 'parties with an exclusive sales agreement' do not constitute commercial advertising" (ECF No. 212, Def. Mem., p. 17) is

---

[2]        Even with respect to the nine publishers discussed in Defendants' memorandum, their calculations of profits are incorrect.  Among other errors, Defendants assume that they are entitled to a pro rata deduction for all of Congoo's general expenses.  Not so.  Defendants must demonstrate "a sufficient nexus between each expense claimed and the sales of the unlawful goods."  *Hamil Am., Inc. v. GFI, Inc.*, 193 F.3d 92, 107 (2d Cir. 1999) (quotation omitted).

concocted law.  The single case they cite in support, *Chamilia, LLC v. Pandora Jewelry, LLC*, 2007 U.S. Dist. LEXIS 71246 (S.D.N.Y. Sept. 24, 2007), does not remotely help them.  The defendant there, a jewelry company, sent "letters to its reseller customers revising the terms and conditions of their relationship" and "another letter to Defendant's vendors … reminding vendors of their obligation 'to not carry the knock-off companies,'" all of which were held to be non-actionable as false advertising on a variety of grounds.  *Id*. at **12, 26-28.  In *dicta*, the Court stated that these communications were not advertising because they were "designed to structure nascent or existing business relationships" and were about "when a breach had occurred."  *Id*. The Court did not hold that communications to customers already under contract can never constitute commercial advertising or promotion, and indeed, such a holding would constitute a dramatic contraction of the Lanham Act with no basis in either logic or the text of the statute. Twice in the past year alone, the Supreme Court has made clear that courts should not be in the business of imposing ad hoc, non-textual limitations on the Lanham Act's cause of action for false advertising.  *POM Wonderful, LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2237 (2014) (reversing court of appeals' holding that false advertising cause of action does not cover beverages subject to the Federal Food, Drug, and Cosmetic Act, because "neither the Lanham Act nor the FDCA, in express terms, forbids or limits Lanham Act claims challenging labels that are regulated by the FDCA.  By its terms, the Lanham Act subjects to suit any person who 'misrepresents the nature, characteristics, qualities, or geographic origin' of goods or services."); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014) (rejecting judicially-created "prudential" limitations on standing to sue under the Lanham Act).  This Court should decline Defendants' invitation to create just such a limitation here.

9

**B.      The Jury Must Consider Congoo's Gross Revenues and Profits in Assessing Punitive Damages**

In addition to being essential evidence for Broadspring's disgorgement damages under the Lanham Act, evidence of Congoo's total gross revenues and profits must be admitted on the independent ground that it is highly relevant to the jury's assessment of punitive damages on Broadspring's defamation claim.  *See, e.g.*, *Neal v. Farmers Ins. Exchange*, 582 P.2d 980, 990 (Cal. 1978) ("Also to be considered is the wealth of the particular defendant; obviously, the function of deterrence will not be served if the wealth of the defendant allows him to absorb the award with little or no discomfort."); *Pfeifer v. John Crane, Inc.*, 220 Cal. App. 4th 1270, 1308-09 (2013) (where plaintiffs adduced evidence that, "in 2009 and 2010, JCI had hundreds of millions of dollars of assets … and a net worth exceeding \$98 million," \$14.5 million punitive damages award "cannot be regarded as so high that it would destroy or cripple JCI"); *Douglas v. Ostermeier*, 1 Cal. App. 4th 729, 748 (1991) ("the wealthier the wrongdoing defendant, the larger the award of exemplary damages need be in order to accomplish the statutory objective.") (quoting *Bertero v. National General Corp.*, 529 P.2d 608 (Cal. 1974)).

There is also no merit to Defendants' assertion that evidence of gross revenues should be excluded because "[u]nder California law, where Plaintiff has suffered no or modest damages, any punitive award must be correspondingly modest."  (ECF No. 212, Def. Mem., pp. 18-19 n.13.)  First and foremost, the evidence at trial will show that Broadspring's damages are far greater than "modest."  Moreover, Defendants misconstrue California law and the requirements of due process.  "The appropriate relationship between punitive and compensatory damages is not demonstrated simply by concluding the two figures fit neatly into a mathematical formula."

*Boyle v. Lorimar Prods.*, 13 F.3d 1357, 1361 (9th Cir. 1994).  Rather, the question is "whether the difference between the two figures is so wide that the punitive damages have been divorced from the societal goals of retribution and deterrence."  *Id.* (internal citations omitted.).  Indeed, California "case law reveals a number of instances of intentionally harmful conduct in which only nominal actual damages were awarded because such damages were difficult to quantify, but in which punitive damages hundreds or thousands of times greater were assessed."  *Lane v. Hughes Aircraft Co.*, 993 P.2d 388, 395-96 (Cal. 2000) (Mosk, J., concurring) (collecting cases).

Likewise, as a matter of due process, the Supreme Court has "consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive award."  *BMW of N. Am. v. Gore*, 517 U.S. 559, 582 (1996).  "Indeed, low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages.  A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine."  *Id.* at 582.

Accordingly, it is essential that the jury receive evidence of Congoo's wealth when it determines the amount of punitive damages to impose.[3]

---

[3]       Defendants have not moved *in limine* to bifurcate the issue of punitive damages, and the deadline for making such a motion has passed.  (ECF No. 176.)  In any event, such a motion would have been doomed to fail because, as discussed *supra*, the jury will have to receive evidence of Congoo's revenues in order to calculate disgorgement damages under the Lanham Act.  *See Dallas v. Goldberg*, 143 F. Supp. 2d 312, 315-16 (S.D.N.Y. 2001) (denying bifurcation of punitive damages because "Defendants fail to identify any pressing or unusual circumstances that warrant bifurcation in the instant case and do not address how bifurcation would promote judicial economy.").

**II.     Broadspring is Entitled to Submit Evidence of Reputational Damages**

Defendants object to Broadspring introducing evidence regarding certain expenditures necessary to repair the harm to its reputation—namely, documentary evidence and testimony by principals of Broadspring as well as Sitrick and Company, Broadspring's public relations firm. Defendants argue that damages for prospective corrective advertising are available only where "a plaintiff *lacks the financial ability to pay for reparative ads*."  (ECF No. 212, Def. Mem., p. 19 (emphasis in original).)  This argument fails for several reasons.

First, Defendants incorrectly assume that the corrective advertising damages that Broadspring seeks are wholly prospective.  In fact, the evidence at trial will show that Broadspring has already commenced a corrective advertising campaign, the initiation of which was possible only after documents that Defendants had belatedly produced as "Attorneys' Eyes Only" were re-designated in response to the Court's orders.

Second, contrary to Defendants' assertion, it is far from "well established that *prospective* corrective advertising is 'an extraordinary remedy reserved for cases in which a plaintiff *lacks the financial ability to pay for reparative ads*."  (ECF No. 212, Def. Mem., p. 19 (emphasis in original).)  Although there are a few Southern District cases to that effect, the Second Circuit has never adopted that position, and it has been correctly rejected in other circuits.  *See, e.g., Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988-89 (9th Cir. 1996) (reversing district court's ruling "that prospective costs should be allowed only where the plaintiff demonstrates he was financially unable to conduct a corrective advertising campaign before trial … . We see no reason to so limit the availability of essentially compensatory damages"); *Pods Enters. v. U-Haul Int'l, Inc.*, 2014

12

U.S. Dist. LEXIS 96174, *12 (M.D. Fl. Jul. 15, 2014)  ("corrective advertising damages have

been awarded in the Eleventh Circuit without regard to financial ability to pay"); *Novell, Inc. v.*

*Network Trade Ctr.*, 25 F. Supp. 2d 1233, 1244 (D. Utah 1998) ("Defendants contend that this

award is merely a punishment for their willful conduct because Novell did not proffer evidence

of monies spent on corrective advertising.  However, the law does not require Novell to make

specific expenditures for corrective advertising in order to receive an award for such.").

   Third, regardless of whether corrective advertising is recoverable under the Lanham Act,

Broadspring is entitled to recover for harm to its reputation on the defamation claim.  "[T]he

more customary types of actual harm inflicted by defamatory falsehood include impairment of

reputation," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974), and it is accordingly well-

established that the available damages in defamation actions "include … expenses necessary to

counteract the defamation or disparagement."  *Williams v. Burns*, 540 F. Supp. 1243, 1251 (D.

Colo. 1982) (citing Prosser, *The Law of Torts*, § 129, pp. 760-61; 922-24 (4th ed. 1971)); *see*

*also Bose Corp. v. Consumers Union*, 529 F. Supp. 357, 361 (D. Mass. 1981) ("[D]amages

consist of the pecuniary loss that results directly from the effect of the wrongful conduct of the

defendant, in this case, lost sales and expenses necessary to counteract the effect of

publication."); *Charles Atlas, Ltd. v. Time-Life Books, Inc.*, 570 F. Supp. 150, 155 (S.D.N.Y.

1983) ("the plaintiff in this action can recover the 'special advertising expenses' incurred to

counteract the alleged product disparagement").  Here, the Sitrick & Company report, as well as

other evidence of the cost of corrective advertising, is probative of the harm caused to

Broadspring's reputation, and the cost of repairing same.  Accordingly, it is admissible.

Finally, Defendants' argument that corrective advertising is "also unnecessary based on the record adduced in discovery" (ECF No. 212, Def. Mem., p. 15) is obviously the type of argument that should be addressed to the jury.  It is not a ground for excluding an entire category of evidence *in limine*.

## <u>CONCLUSION</u>

For the foregoing reasons, and the reasons discussed in Broadspring's pretrial memorandum (ECF No. 215, pp. 17-18), Broadspring respectfully requests that the Court deny Defendants' motion in its entirety.

Dated: New York, New York
       October 24, 2014

KENT, BEATTY & GORDON, LLP


/s/  Jack A. Gordon
Jack A. Gordon
Joshua B. Katz
425 Park Avenue, The Penthouse
New York, New York 10022
(212) 421-4300
jag@kbg-law.com
jbk@kbg-law.com

*Attorneys for Plaintiff*
*Broadspring, Inc.*

14