USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/29/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
:
BROADSPRING, INC., :
:
Plaintiff, :   13-CV-1866 (JMF)
:
-v- :   OPINION AND ORDER
:
CONGOO, LLC, *d/b/a Adiant*, et al., :
:
Defendants. :
:
----------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

    Trial in this case is scheduled to begin on January 12, 2015.  Now pending are five motions *in limine* and a motion to strike filed by Plaintiff Broadspring, Inc. ("Broadspring") (Docket Nos. 202, 242) and six motions *in limine* filed by Defendants Congoo, LLC ("Congoo"), Ashraf Nashed, and Rafael Cosentino (together, "Defendants").  (Docket Nos. 199, 204, 206, 211, 217, 219).  The Court assumes familiarity with the facts relevant to the motions, and provides the following rulings and comments in advance of the final pretrial conference.

**I.    Plaintiff's Motions**

    As noted, Plaintiff filed a motion to strike and five motions *in limine*.  The Court will address each in turn.

    **A.  Plaintiff's Motion To Strike**

    First, Plaintiff moves, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, to strike Defendant's unclean hands defense.  (*See* Pl.'s Mem. Supp. Mot. To Strike Defs.' Aff. Defense Unclean Hands ("Pl.'s Strike Mem.") (Docket No. 243); *see also* Mem. Law Supp. Pl.'s

Mots. *In Limine* 10-11 (Docket No. 203)).[1]  The motion is GRANTED.  To prevail on an unclean hand defense, a defendant must demonstrate that the plaintiff has engaged in "inequitable conduct or bad faith where the misconduct has a material relation to the equitable relief that plaintiff seeks."  *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 532-33 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also Pedinol Pharmacal, Inc. v. Rising Pharm., Inc.*, 570 F. Supp. 2d 498, 505 (E.D.N.Y. 2008) (stating that the unclean hands defense is available only for "truly unconscionable and brazen behavior" (internal quotation marks omitted)).  Defendants argue that Plaintiff has engaged in three types of misconduct: (1) "systematic presentation of ad units on publishers' websites without disclosing that the units were advertisements that linked to long form fake reviews"; (2) "the posting of fake reviews on websites owned by Broadspring without disclosing that the reviews were actually paid advertisements"; and (3) "systemic false statements about Congoo and its advertisers to publishers."  (Defs.' Mem. Opp'n Pl.'s Mot. To Strike Defs.' Affirmative Defense Unclean Hands (Docket No. 255) 7-8).

The Court has already held that there is no evidence to support the third contention.  In granting Plaintiff summary judgment on Congoo's counterclaims, the Court found that "Congoo fails to adduce any evidence suggesting that Plaintiff's conduct was 'improper' . . . or that Plaintiff acted in 'bad faith.'"  *Broadspring, Inc. v. Congoo, LLC*, No. 13-CV-1866 (JMF), 2014 WL 4100615, at *13 (S.D.N.Y. Aug. 20, 2014).  The Court further found that "no rational jury"

---

[1]  As Plaintiff concedes (Pl.'s Strike Mem. 7-9), the motion to strike is technically untimely.  Nevertheless, in view of (1) the Court's authority to strike a legally insufficient defense *sua sponte* at any time, *see* Fed. R. Civ. P. 12(f)(1); (2) the fact that Broadspring raises the legal sufficiency of the defense in its fifth motion *in limine*, which was timely filed (Mem. Law Supp. Pl.'s Mots. *In Limine* 10-11); and (3) Broadspring's limited ability to raise the issue earlier (*see* Pl.'s Strike Mem. 8), the Court exercises its discretion to entertain the motion despite its untimeliness.  *See, e.g.*, *FDIC v. Ornstein*, 73 F. Supp. 2d 277, 280 n.2 (E.D.N.Y. 1999); *Ciminelli v. Cablevision*, 583 F. Supp. 158, 161 (E.D.N.Y. 1984).

could conclude that Plaintiff's statements about Congoo were false or misleading. *Id.* It follows that no rational jury could find, on the basis of Plaintiff's statements, that it had engaged in the kind of unconscionable behavior that would support a defense of unclean hands. As for the first and second categories, even if Defendants could prove that (1) Plaintiff posted advertisements and product reviews without disclosing that they were advertisements and (2) doing so was egregious misconduct (which the Court highly doubts), they cannot prove that the alleged misconduct is "directly related to the subject matter in litigation." *PenneCom B.V. v. Merrill Lynch & Co., Inc.*, 372 F.3d 488, 493 (2d Cir. 2004) (internal quotation marks omitted). Plaintiff claims that Defendants created fake profiles to disseminate knowingly false information in an effort to persuade publishers not to do business with Plaintiff. Plaintiff's supposed failure to identify content as paid advertising is simply not related to Congoo's alleged conduct, let alone so "directly" related that it could support a defense of unclean hands.

Accordingly, the Court finds that there is no question of law or fact that could allow Defendants' unclean hands defense to succeed. In addition, Plaintiff has adequately demonstrated prejudice. *See, e.g.*, *UMG Recordings, Inc. v. Lindor*, 531 F. Supp. 2d 453, 458 (E.D.N.Y. 2007) (stating that motions to strike an affirmative defense should be granted if "(1) there is no question of fact that might allow the defense to succeed; (2) there is no substantial question of law, the resolution of which would allow the defense to succeed and (3) plaintiff shows prejudice if the defense is allowed to stand" (internal quotation marks omitted)). Among other things, allowing the defense to move forward "would expand the length and scope of the trial," *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 425-26 (S.D.N.Y. 2010); *see United States v. Manhattan-Westchester Medical Servs., PC*, No. 06-CV-7905

(WHP), 2008 WL 241079, at *3 (S.D.N.Y. Jan. 28, 2008), even if, as Defendants contend, some of the same evidence may be admissible for other purposes.

For the foregoing reasons, the unclean hands defense is stricken. In light of that ruling, the parties shall confer with respect to which, if any, of the challenged exhibits are admissible for another purpose and, to the extent an advance ruling on the issue is warranted, shall bring any disagreements to the Court's attention at or before the final pretrial conference.

### B. Plaintiff's Motion *In Limine* No. 1

Plaintiff's first motion *in limine* seeks to preclude certain defense exhibits on the ground that they are hearsay. The motion is DENIED with respect to any documents or materials that Cosentino or Nashed viewed prior to their conduct at issue in this case. Such materials are relevant to their state of mind, which is, in turn, relevant to their care or lack thereof and the appropriateness of punitive damages. (Upon Plaintiff's request, the Court will give a limiting instruction that any such exhibits are to be considered, not for the truth of their contents, but solely for their effects on Cosentino and Nashed.) The motion is also DENIED with respect to any documents or materials to which the allegedly defamatory statements include a hyperlink, as they are relevant to the jury's consideration of the allegedly defamatory statements in context. *See, e.g.*, *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007) (stating that "a district court evaluating whether an advertisement is literally false" under the Lanham Act "must analyze the message conveyed in full context" (internal quotation marks omitted)); *Balzaga v. Fox News Network, LLC*, 93 Cal. Rptr. 3d 787, 793 (Cal. Ct. App. 2009) ("In reviewing an alleged defamatory meaning, the context in which the statement was made must be considered." (internal quotation marks omitted)). (Again, upon Plaintiff's request, the Court will give a limiting instruction that such materials are not to be considered for the truth.)

The motion is GRANTED, however, with respect to any documents or materials that do not fall within the two foregoing categories, substantially for the reasons stated in Plaintiff's memorandum of law. ( Mem. Law Supp. Pl.'s Mots. *In Limine* 2-5). Although Defendants argue that the documents are relevant to the truth or falsity of the statement that Broadspring was "a *notorious* spyware company" (Pl.'s Trial Ex. 47; Defs.' Mem. Law Opp'n Pl.'s Mots. *In Limine* (Docket No. 232) 1, 4), that argument depends on the documents and materials being taken as true (to support the conclusion that Broadspring was generally *known* to be a spyware company), which — as out-of-court statements — they cannot be. *See* Fed. R. Evid. 801 (defining hearsay, which is generally inadmissible, as an out-of-court statement offered "to prove the truth of the matter asserted in the statement").

The parties are directed to confer with respect to how the foregoing rulings apply to the exhibits subject to Plaintiff's first motion *in limine* and to bring any disagreements to the Court's attention at or before the final pretrial conference.

### C.  Plaintiff's Motion *In Limine* No. 2

Plaintiff's second motion *in limine* seeks to exclude nine e-mails that were sent to Broadspring or Mindset Interactive employees by third-party software distributors with whom they once conducted business. The motion is GRANTED, except insofar as an e-mail is necessary to provide context for an admissible statement by Broadspring (or its agent), in which case the Court will give a limiting instruction that the e-mail is to be considered only for context and not for its truth. To the extent they are offered for the truth, the e-mails are plainly hearsay, substantially for the reasons stated by Plaintiff in its memorandum of law. (Pl.'s Mem. Supp. Pl.'s Mots. *In Limine* 5-6). Notably, in arguing otherwise, Defendants do not rely on any of the hearsay rules or case law interpreting those rules. Instead, they cite the fact that Broadspring

5

produced the documents in this litigation and some of the documents in response to an FTC subpoena. (Defs.' Mem. Law Opp'n Pl.'s Mots. *In Limine* 7-9) Those facts may be relevant for purposes of authentication, but they do not overcome the hearsay problems with the evidence.

Again, the parties are directed to confer with respect to how the foregoing rulings apply to the exhibits subject to Plaintiff's second motion *in limine* and to bring any disagreements to the Court's attention at or before the final pretrial conference.

### D. Plaintiff's Motion *In Limine* No. 3

Next, Plaintiff seeks to exclude certain deposition testimony of Erik Sanchez regarding complaints that Broadspring received concerning "continuity programs" through which it distributed beauty products and vitamins. The motion is DENIED. It is true that the testimony is irrelevant to Broadspring's business practices today (and at the time of the Defendants' alleged misconduct). As Defendants argue, however, it is directly relevant to the truth or falsity of one of the allegedly defamatory statements at issue in this case, namely that "the origins" of Broadspring "are roote[d] in Spyway and continuity offers." (Defs.' Mem. Law Opp'n Pl.'s Mots. *In Limine* 9-10).

### E. Plaintiff's Motion *In Limine* No. 4

Plaintiff's fourth motion *in limine* seeks to exclude evidence of costs or deductions that Defendants did not disclose until after discovery had closed. The motion is DENIED. First, Defendants make a reasonable argument that they could not have disclosed some or all of the information prior to Plaintiff's filing of the second amended complaint (after discovery closed). (*Id.* at 13-14). And although the Court ordered Defendants to produce discovery "regarding 'all elements of cost or deduction claimed'" (Docket No. 50 (quoting 15 U.S.C. § 1117(a)), given Defendants' view of the law on that issue — discussed in detail in Section II.D below — the

Court cannot say that Defendants clearly violated the Court's order; that is, the scope of Defendants' production may have been based, in part, on their understanding of which costs and deductions they would have to prove at trial. In any event, even if Defendants could and should have produced the relevant exhibits during discovery, preclusion would not be warranted, substantially for the reasons stated by Defendants in their memorandum. (Defs.' Mem. Law Opp'n Pl.'s Mots. *In Limine* 14-15).[2]

### F. Plaintiff's Motion In Limine No. 5

In its final motion *in limine*, Plaintiff seeks the same relief that it seeks in its motion to strike. (*Compare* Pl.'s Mem. Supp. Pl.'s Mots. *In Limine* 10-11 *with* Pl.'s Strike Mem.). Accordingly, it is DENIED as moot.

## II. Defendants' Motions

As noted, Defendants filed six motions *in limine*. Again, the Court will address each in turn.

### A. Defendants' Motion To Exclude Certain Statements

In their first motion *in limine*, Defendants contend that Plaintiff's defamation claims should be limited to the allegedly defamatory statements quoted *in haec verba* in the second amended complaint. (Mem. Law Supp. Defs.' Mot. *In Limine* To Exclude Certain Statements As Basis Pl.'s Defamation Claim (Docket No. 218)). That argument, however, flies in the face of controlling Second Circuit precedent. *See, e.g.*, *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986) ("Complaints which do not plead the allegedly defamatory statements *in haec verba* have

---

[2] Upon a showing a good cause, the Court may be willing to grant Plaintiff leave to depose a witness for Defendants about the materials at issue during the week before trial. If Plaintiff believes that such a deposition is necessary or appropriate, it shall promptly file a letter motion. If Plaintiff does so, the parties should be prepared to address the issue at the final pretrial conference — including when, during the week before trial, a deposition could be held.

7

in the past been held sufficient. The central concern is that the complaint afford defendant sufficient notice of the communications complained of to enable him to defend himself." (internal quotation marks and citation omitted)). In light of that decision, and substantially for the reasons stated by Plaintiff in its memorandum of law (Pl.'s Mem. Law Opp'n Defs.' Mot. *In Limine* To Exclude Certain Statements As Basis Pl.'s Defamation Claim (Docket No. 240)), the motion is DENIED. For the sake of the jury and in the name of efficiency, however, the Court urges Plaintiff to consider streamlining its case by reducing further the number of statements to be submitted to the jury.

### B. Defendants' Motion To Exclude Evidence of Cosentino's Prior Convictions

Next, Defendants move, pursuant to Rule 609(b) of the Federal Rules of Evidence, to preclude Plaintiff from introducing evidence with respect to two felony convictions that Cosentino sustained almost twenty-five years ago. (Mem. Law Supp. Defs.' Mot. *In Limine* Pursuant Fed. R. Evid. 609(b) (Docket No. 200)). As an initial matter, there is no merit to Plaintiff's arguments that the convictions and the conduct underlying the convictions are admissible in their own right under either Rule 608 or 609. In light of how old the convictions are, and the fact that Cosentino was only a teenager at the time, the evidence has almost no probative value; by contrast, the dangers of unfair prejudice, wasting time, and juror confusion are patently substantial. *See* Fed. R. Evid. 403. And while there is some merit to Plaintiff's argument that Cosentino opened the door to evidence of his convictions by testifying at his deposition that "nothing [came] to mind" when asked if he had a felony conviction beyond the marijuana possession charge that he disclosed (Pl.'s Mem. Law Opp'n Defs.' Mot. *In Limine* Fed. R. Evid. 609(b) (Docket No. 233) 7; Decl. Shari Alexander Supp. Defs.' Mot. Summ. J. (Docket No. 181), Ex. 3 ("Consentino Dep.") 43), the probative value of the evidence is reduced

by the fact that, when given an opportunity to explain, Cosentino testified that he believed his second conviction was for a misdemeanor and that "they said" if he pleaded guilty, "it would be a misdemeanor." (Consentino Dep. 52). In any event, the probative value of the evidence is, in the Court's judgment, still substantially outweighed by the dangers of unfair prejudice, wasting time, and juror confusion. *See* Fed. R. Evid. 403. It follows *a fortiori* that the probative value of the evidence does not "substantially outweigh[] its prejudicial effect." Fed. R. Evid. 609(b)(1) (providing that, if more than ten years have passed since a witness's conviction or release from confinement for it, evidence of the conviction is admissible "only if," among other things, "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect"). Accordingly, the motion is GRANTED.

### C. Defendants' Motion Regarding the Verdict Form and Jury Instructions

Defendants' third motion asks the Court to use its proposed verdict form and jury instructions. More specifically, Defendants raise three issues relating to the verdict form and jury instructions: whether the jury should be required to consider each allegedly defamatory statement separately (Mem. Law Supp. Defs.' Mot. Order Directing Defs.' Proposed Verdict Forms & Jury Charges Be Given To Jury (Docket No. 220) ("Defs.' Jury Mem.") 2-3); whether the jury should be required to consider each statement in context (*id.* at 3-6); and whether the alleged defamation touched on matters of public or private concern (which, in turn, would determine which party bears the burden of proving truth or falsity) (*id.* at 7-12). In their pretrial memoranda of law, the parties lock horns on several other issues relating to the jury instructions — both with respect to the particular language that the Court should use in charging the jury and with respect to whether particular instructions (for example, an "opinion" charge for the defamation claim and a "principles of equity" charge for the Lanham Act claim) should be

9

included.  (*See* Pl.'s Pretrial Mem. (Docket No. 215) 8-21; Defs.' Mem. Opp'n Pl.'s Pretrial Mem. (Docket No. 229) ("Defs.' Pretrial Mem.") 8-29).

In the Court's view, the vast majority of these issues can and should be deferred until the charge conference, when the evidentiary record will be developed.  The sole exception to that is the question of whether the statements at issue address a matter of public concern, which is generally a question of law, *see Mott v. Anheuser-Busch, Inc.*, 910 F. Supp. 868, 874 (N.D.N.Y. 1995); *Nizam-Aldine v. City of Oakland*, 54 Cal. Rptr. 2d 781, 788 (Cal. Ct. App. 1996), and which may affect the parties' strategies at trial.  To determine whether a statement addresses an issue of public concern, courts look to "its content, form, and context as revealed by the whole record." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761 (1985) (internal quotation marks omitted).  Here, Defendants argue that the statements that form the basis of Plaintiff's defamation claims relate to matters of public concern because they implicate consumer protection.  (Defs.' Jury Mem. 7-10).  They note that courts applying California law — in the context of both defamation and anti-SLAAP (Strategic Lawsuit Against Public Participation) cases, *see, e.g.*, *Integrated Healthcare Holdings, Inc. v. Fitzgibbons*, 44 Cal. Rptr. 3d 517, 523, 528 (Cal. Ct. App. 2006) (finding that its anti-SLAPP analysis also resolved the public concern question with regard to the defamation claim) — have repeatedly held that "statements warning consumers of fraudulent or deceptive business practices constitute a widespread public interest, so long as they are provided in the context of information helpful to consumers." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 262 (9th Cir. 2013); *see, e.g.*, *Nizam-Aldine*, 54 Cal. Rptr. 2d at 789.

That general rule aside, however, several courts applying California law have held that statements affecting consumers should not be treated as matters of public concern in

circumstances such as those in this case.  For example, in *MCSi, Inc. v. Woods*, 290 F. Supp. 2d 1030 (N.D. Cal. 2003), a case similar to this one, an employee of the plaintiff's competitor posted negative statements about the plaintiff online under a pseudonym, and the plaintiff sued.  The Court easily dismissed the defendant's claim that the statements were made in connection with an issue of public concern because they were "speech by a competitor about a competitor." *Id.* at 1034.  Similarly, in *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 63 F. Supp. 2d 1127 (N.D. Cal. 1999), the Court held in the context of an anti-SLAAP motion that a competitor's statements "to the market" about the plaintiff's product did not rise to the level of an issue of public concern.  Otherwise, the Court reasoned, "any lawsuit alleging trade libel, false advertising or the like in the context of commercial competition would be subject to attack as a SLAPP suit."  *Id.* at 1130; *see also W.J.A. v. D.A.*, 43 A.3d 1148, 1157 (N.J. 2012) ("[T]here is no great societal benefit or higher free speech value in providing heightened protection for the defamatory and false statements uttered by one business competitor against another.  That form of commercial speech, generally, will call for the application of the negligence standard.").

      The Court concludes that these cases are persuasive, at least where the company about whom the statements are made is not otherwise a public figure (as this Court found in its summary judgment opinion).  *See, e.g.*, *Mann v. Quality Old Time Service, Inc.*, 15 Cal. Rptr. 3d 215, 219, 227 (Cal. Ct. App. 2004) (holding that the defendants' solicitation of the plaintiff's customers by making "fraudulent and disparaging comments" about the plaintiff and false reports to a government agency that the plaintiff was responsible for pollution were not of public concern in part because the plaintiff was not "an entity in the public eye"); *see also Ampex Corp. v. Cargle*, 27 Cal. Rptr. 3d 863, 869 (Cal. Ct. App. 2005) (noting that courts have "held that Internet postings about corporate activity constitute an issue of public importance upon

considering the following pertinent factors: (1) whether the company is publicly traded; (2) the number of investors; and (3) whether the company has promoted itself by means of numerous press releases"). In determining whether a statement is of public concern, a court must consider "what was said, where it was said, and how it was said." *Snyder v. Phelps*, 131 S. Ct. 1207, 1216 (2011). The statements at issue here were said by a competitor of Broadspring's, not only in public postings, but also in private e-mails; and Defendants' primary motivation was not to protect consumers, but rather to improve Congoo's bottom line. *Cf. Ezekwo v. N.Y. City Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991) (holding in the public employee speech context that statements were not about a subject of public concern where the speaker's "primary aim was to protect her own reputation," not to influence the public at large). Although such statements may tangentially affect consumers, they are primarily concerned with the speaker's *private* commercial interest, not the public interest. Accordingly, in instructing the jury on defamation, the Court will apply the standards for statements that do not relate to matters of public concern.

### D.  Defendants' Motion To Exclude Evidence of Congoo's Revenue and Profits

Next, Defendants ask the Court to exclude several categories of evidence concerning damages. (Mem. Law Supp. Defs.' Mot. *In Limine* To Exclude Evidence Congoo's Total Gross Revenues & Profits & Pl.'s Prospective Corrective Advertising Costs (Docket No. 212) ("Defs.' Revenues Mem.")). First and foremost, Defendants ask the Court to exclude evidence of Congoo's gross revenues and profits from publishers other than those who Plaintiff can prove saw the allegedly false advertising. (*See id.* at 7-13). More specifically, they argue that Plaintiff has the burden of proving that the gross revenues it seeks are "*attributable to the false advertising*" (*id.* at 7 (emphasis in original)), barring Plaintiff from simply introducing evidence

of the company's entire gross revenue, including revenue earned from publishers who were not exposed to any false advertising.  Second, Defendants contend that, as a matter of law, Plaintiff may not recover damages with respect to publishers with which Congoo had exclusivity agreements.  (*See id.* at 12-13).  And third, they argue that Plaintiff is not entitled to recover for prospective corrective advertising.  (*See id.* at 15-16).

On one level, the motion is plainly without merit and therefore DENIED.  With respect to the first category of evidence, whatever the validity of Defendants' argument that Plaintiff bears the burden of proving in the first instance that Congoo's gross revenues are attributable to the false advertising, evidence of Congoo's overall gross revenue and profits is independently admissible in light of the demand for punitive damages.  *See, e.g.*, *Neal v. Farmers Ins. Exch.*, 582 P.2d 980, 990 (Cal. 1978); *Pfeifer v. John Crane, Inc.*, 164 Cal. Rptr. 3d 112, 142-43 (Cal. Ct. App. 2013).  As for Defendants' other arguments, although they nominally seek exclusion of evidence, they are, in reality, requests for judgment as a matter of law on aspects of Plaintiff's claims.  Defendants could have raised those arguments on summary judgment, but failed to do so.  Consequently, their arguments must await resolution at trial.  *See, e.g.*, *Media Alliance, Inc. v. Mirch*, No. 09-CV-0659 (MAD), 2012 WL 162375, at *5 (N.D.N.Y. Jan. 19, 2012) ("Defendants['] attempt, at this late date, to assert novel arguments in an effort to obtain dispositive relief in a motion *in limine* is improper."); *TVT Records v. Island Def Jam Music Grp.*, 250 F. Supp. 2d 341, 344-45 (S.D.N.Y. 2003) (denying as impermissible motions *in limine* that, "in the guise of addressing limited evidentiary issues, . . . would effectively serve as a form of advance trial of substantive portions of the case, or indeed as a substitute for the trial itself"); *cf. Williams v. Regus Management Group, LLC*, No. 10-CV-8987 (JMF), 2012 WL 1711378, at

13

*2 (S.D.N.Y. May 11, 2012) (denying a motion *in limine* to exclude evidence in support of punitive damages on the ground that it was "in reality" a belated summary judgment motion).

That said, at some point the Court will have to resolve the legal dispute underlying Defendants' request to exclude evidence of gross revenues and profits because it will determine the parties' respective burdens at trial. Strictly speaking, the Court need not do so until the charge conference, but — in light of the fact that the issue may have some bearing on the parties' strategies at trial and may be helpful when it comes time to discuss the jury instructions — the Court offers its preliminary view that Plaintiff has the better of the argument. Defendants rely heavily on two cases — *Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767 (2d Cir. 1984), and *On Davis v. Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001). (Defs.' Revenue Mem. 8-11). Admittedly, both cases (and others cited by Defendants) do contain some language that supports Defendants' arguments. On close examination, however, the Court concludes that they are distinguishable or even cut in Plaintiff's favor.

In *Burndy*, the parties were both manufacturers of split bolt connectors. The defendant falsely advertised that its split bolt connectors met certain standards, when they did not. The plaintiff argued that this allowed the defendant to sell its connectors at a lower price, thereby costing the plaintiff sales. The Court, however, refused to order an accounting of profits, finding that "[u]njust enrichment warranting an accounting [of profits] exists when the defendant's sales were attributable to its infringing use of plaintiff's trademark, and the burden of proving this connection is on the plaintiff." 748 F.2d at 772 (internal quotation marks and citation omitted). Taken out of context, that language arguably supports Defendants here. As at least two district courts in this Circuit have recognized, however, *Burndy*'s main point was that the plaintiff could not demonstrate any injury, as there was no evidence that any of the defendant's sales would

14

Case 1:13-cv-01866-RJS   Document 266   Filed 12/29/14   Page 15 of 20

have otherwise gone to the plaintiff — "[i]n short, *Burndy* is a case about causation." *Rexall Sundown, Inc. v. Perrigo Co.*, 707 F. Supp. 2d 357, 362 (E.D.N.Y. 2010); *see also MyPlayCity, Inc. v. Conduit Ltd.*, No. 10-CV-1615 (CM), 2013 WL 4105698, at *4 (S.D.N.Y. 2013), *vacated on other grounds by* Nos. 13-2012-CV (L), 13-2279-CV (XAP), 2014 WL 5001736 (2d Cir. Oct. 8, 2014) (same).  Here, Congoo's allegedly false statements specifically targeted Broadspring, so *Burndy* does not apply.

In *On Davis*, the plaintiff, a creator and designer of jewelry similar to eyeglasses, sued The Gap, Inc. under the Copyright Act for using a picture of a person wearing the plaintiff's product in a national advertisement.  The plaintiff sought to submit evidence of the entire revenue of The Gap's parent company, but the Court found that this was improper.  Instead, "[b]ecause the ad infringed only with respect to Gap label stores and eyewear . . . it was incumbent on [Plaintiff] to submit evidence at least limited to the gross revenues of the Gap label stores, and perhaps also limited to eyewear or accessories."  246 F.3d at 160.  Notably, "[ha]d he done so, the burden would then have shifted to the defendant," under a provision of the Copyright Act similar to the statute at issue here, "to prove its deductible expenses and elements of profits from those revenues attributable to factors other than the copyrighted work."  *Id.*  Thus, taken to its logical extreme, *On Davis* stands for the proposition that a plaintiff is entitled to recover the profits earned only from an infringing or falsely advertised product, not from other products that happen to be manufactured or sold by the same defendants, let alone other divisions of the defendants' business.  *See, e.g.*, *Complex Sys., Inc. v. ABN Ambro Bank N.V.*, No. 08-CV-7497 (KBF), 2013 WL 5970065, at *2 (S.D.N.Y. 2013) (citing *On Davis* for the proposition that "[g]ross revenue should not be construed so broadly as to include revenue from lines of business unrelated to the act of infringement"); *Semerdjian v. McDougal Littell*, 641 F. Supp. 2d 233,

15

246-47 (S.D.N.Y. 2009) (interpreting *On Davis*'s "causal relationship" requirement to mean that "the starting point for calculating profits to be disgorged is to identify the gross revenues from the infringing product"); *Fournier v. Erickson*, 242 F. Supp. 2d 318, 327 (S.D.N.Y. 2003) (finding that *On Davis* and *Orgel v. Clark Boardman Co.*, 301 F.2d 119 (2nd Cir. 1962) "counsel the Court to conclude that Fournier may offer evidence of Microsoft's sales or profits from its overall sales of its Windows 2000 product line — but not from any of its other products or services — for the relevant time period.").

Here — despite Defendants' contentions to the contrary (Defs.' Revenue Mem. 10 n.10) — Plaintiff is not seeking to recover profits Congoo earned from selling unrelated products or services. Instead, its gross revenue and profit evidence is limited to the online advertising business that Congoo operates under the Adblade trade name. And while some of that gross revenue may well have been earned from customers that were not exposed to Congoo's allegedly false statements (Defs.' Pretrial Mem. 20; Pl.'s Mem. Opp'n Defs.' Mot. *In Limine* To Exclude Evidence Congoo's Total Gross Revenues & Profits & Pl.'s Prospective Corrective Advertising Costs (Docket No. 239) ("Pl.'s Revenue Mem.") 4), the *On Davis* decision appears to place the burden on Defendants to prove that — not on Plaintiff to prove the opposite. That is, the Second Circuit indicated that, had On Davis proved the profits the defendants earned from the Gap label stores or eyewear and accessories, it would have been the defendants' burden to show which of those profits were unrelated to the infringement. The Court gave no indication that it was the plaintiff's burden in the first instance to prove that particular customers had viewed the advertisements at issue.[3]

---

[3] At least one out-of-Circuit district court appears to have held that a plaintiff does have the burden of proving which customers were exposed to a false advertisement. *See Nat'l Prods., Inc. v. Gamber-Johnson LLC*, 734 F. Supp. 2d 1160, 1169-71 (W.D. Wash. 2010). That Court's

As Plaintiff concedes, "at the end of the day, Broadspring should receive only those profits attributable to the false advertising." (Pl.'s Revenue Mem. 7). In the Court's view (at least at present), however, Plaintiff is correct that its initial burden is merely to present evidence of gross revenues and profits for Congoo's online advertising business, at which point the burden would shift to Defendants to show whether and to what extent "'the infringement had no relationship' to those earnings." *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1539 (2d Cir. 1992) (quoting *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942)). Moreover, in the final analysis, "any profit award under the Lanham Act is subject to the principles of equity, and the statute also requires that any monetary award serve as 'compensation and not a penalty.'" *Rexall Sundown, Inc.*, 707 F. Supp. 2d at 362 (quoting 15 U.S.C. § 1117(a)). Thus, even if Defendants are unable to apportion profits, Plaintiff will "not necessarily" be entitled to all of Congoo's profits from its online advertising business during the relevant period. *Id.* at 363.

### E. Defendants' Motion Regarding the Theory of Implied Falsity

Next, Defendants move to preclude the jury from considering an implied falsity theory on the ground that Plaintiff does not plan to introduce a consumer survey. Once again, the motion is a patently improper attempt to seek judgment as a matter of law in the guise of a motion *in limine* concerning the admissibility of evidence. *See, e.g.*, *Pavone v. Puglisi*, No. 08-CV-2389 (MEA), 2013 WL 245745, at *1 (S.D.N.Y. Jan. 23, 2013) (stating that a motion *in limine* is "not a proper vehicle for a party to ask the Court to weigh the sufficiency of the evidence to support a

---

holding, however, was based, at least in part, on "equitable considerations." *Id.* at 1169. In any event, the weight of authority in this Circuit indicates that the burden of apportionment should be placed on the defendant. *See, e.g.*, *Rexall Sundown, Inc.*, 707 F. Supp. 2d at 359-363 (citing cases); *My Play City, Inc.*, 2014 WL 5001736, at *2; *Chloe v. Zarafshan*, No. 06-CV-03140 (RJH) (MHD), 2009 WL 2956827, at *5 (S.D.N.Y. Sept. 15, 2009).

particular claim" (internal quotation marks omitted)).  In any event, the motion is meritless.  As Defendants themselves acknowledge, a plaintiff does not have to introduce a consumer survey if it can demonstrate that "a defendant has 'intentionally set out to deceive the public, and the defendant's deliberate conduct in this regard is of an egregious nature.'"  (Mem. Law Supp. Defs.' Mot. *In Limine* To Preclude Consideration Implied Falsity Theory Pl.'s Lanham Act Cause Action (Docket No. 205) ("Defs.' Falsity Mem.") 2 n.1 (quoting *Tiffany (NJ), Inc. v. eBay, Inc.*, No. 04-CV-4607 (RJS), 2010 WL 3733894, at *3 (S.D.N.Y. Sept. 13, 2010))).  Here, a reasonable jury could find that that standard is met.  Further, as Defendants all but acknowledge (*see* Defs.' Falsity Mem. 3 (describing "the use of a survey" as "the most common and generally accepted means of proving" implied falsity)), introduction of a consumer survey "is not a hard-and-fast requirement."  *Reed Constr. Data Inc. v. McGraw Hill Cos.*, — F. Supp. 3d —, No. 09-CV-8578 (JPO), 2014 WL 4746130, at *23 (S.D.N.Y. Sept. 24, 2014).  Instead, "a plaintiff need only show — using whatever evidence — that a substantial number of consumers were, in fact, confused."  *Id.*; *see also Merck Eprova AG v. Gnosis S.P.A.*, No. 07-CV-5898 (RJS), 2011 WL 1142929, at *4 (S.D.N.Y. Mar. 17, 2011) (finding that deposition testimony may be enough to demonstrate consumer confusion, particularly where "the number of potential direct consumers is arguably fairly small").  For those reasons, the motion is DENIED.

### F.  Defendants' Motion To Exclude Certain Exhibits

Finally, Defendants move, pursuant to Rules 401, 402, 403, and 802 of the Federal Rules of Evidence, to exclude certain exhibits as irrelevant, unfairly prejudicial, and/or hearsay.  (Mem. Law Supp. Defs.' Mot. *In Limine* Pursuant Fed. R. Evid. 401, 402, 403 and 802 To Exclude Certain Pl.'s Trial Exs. (Docket No. 208) ("Defs.' Trial Ex. Mem.")).  To the extent Defendants seek to exclude evidence of communications with the Federal Trade Commission and related

testimony, the motion is DENIED, substantially for the reasons stated in Plaintiff's memorandum of law. (Pl.'s Mem. Law Opp'n Defs.' Mot. *In Limine* Pursuant Fed. R. Evid. 401, 402, 403 and 802 To Exclude Certain Pl.'s Trial Exs. (Docket No. 236) ("Pl.'s Trial Ex. Mem.") 2-4). To the extent that Defendants seek to exclude evidence concerning Defendants' reaction to negative publicity on Wafflesatnoon.com (Defs.' Trial Ex. Mem. 7-9), the motion is GRANTED in part and DENIED in part. Specifically, the Court will allow limited questioning concerning the incident — to support Plaintiff's argument that Defendants were aware that articles on the Internet are not necessarily reliable and that negative information on the Internet could be damaging. (*See* Pl.'s Trial Ex. Mem. 5). But the Court will not allow Plaintiffs to introduce the Wafflesatnoon.com articles themselves or Defendants' communications about them (or ask questions about the contents of such exhibits), as such evidence has little or no marginal probative value and, what value it has is substantially outweighed by the dangers of unfair prejudice, wasting time, and jury confusion. *See* Fed. R. Evid. 403. Finally, to the extent that Defendants seek to exclude evidence of Defendants' communications with its public relations firm about this lawsuit (Defs.' Trial Ex. Mem. 9-11), the motion is GRANTED, albeit only preliminarily with respect to Plaintiff's Trial Exhibit 110. All the other evidence is irrelevant to the issues in this case (and subject to exclusion under Rule 403 to boot). And while Plaintiff's Trial Exhibit 110 — an e-mail in which a representative of the public relations firm described the Squidoo Lens as "irresponsible and inflammatory" (Pl.'s Trial Ex. Mem. 5) — is certainly relevant, Plaintiff has not, on the present record, made a sufficient showing that the declarant was Congoo's agent within the meaning of Rule 801(d)(2)(D) or that Nashed clearly manifested his adoption of the contents of the e-mail to make it admissible under Rule 801(d)(2)(B).

## CONCLUSION

For the foregoing reasons, some of the parties' motions are granted, some are denied, and some are granted in part and denied in part. The parties are directed to confer in light of the Court's rulings and, to the extent that any disputes warrant further attention in advance of trial, shall raise them at or before the final pretrial conference on January 6, 2015. In addition, the parties shall confer with respect to any limiting instructions that are warranted in light of the Court's rulings, and shall propose any such limiting instructions in advance of trial.

The Clerk of Court is directed to terminate Docket Nos. 199, 202, 204, 206, 211, 217, 219, and 242.

SO ORDERED.

Dated: December 29, 2014
New York, New York

_____
JESSE M. FURMAN
United States District Judge