UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-24-16
```

BROADSPRING, INC.,

                    Plaintiff,

-v-

CONGOO, LLC, *et al.*,

                    Defendants.

No. 13-cv-1866 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

    Plaintiff Broadspring, Inc. ("Plaintiff" or "Broadspring") commenced this action against Defendant Congoo, LLC ("Congoo"), and two of its executives, Ashraf Nashed and Rafael Cosentino (collectively, "Defendants"), alleging that Defendants engaged in a campaign to spread false and defamatory information about Broadspring in violation of California defamation law and Section 43(a) of the Lanham Act. (Doc. No. 164.) A jury trial in this matter took place from January 12, 2015 to January 22, 2015. On January 22, 2015, the jury rendered a verdict finding that Defendants were not liable on Plaintiff's Lanham Act claim but were liable for ten statements that Cosentino made on Plaintiff's state law defamation claim. (Doc. No. 309.) The jury awarded Plaintiff $157.17 in actual damages and $1.00 in assumed damages. (Doc. No. 294.) The jury further assessed $10,000 in punitive damages against Congoo, $25,000 in punitive damages against Cosentino, and $5,000 in punitive damages against Nashed. (*Id.*)

    Now before the Court are Plaintiff's motions for a permanent injunction, a new trial, and attorneys' fees (Doc. No. 314), as well as for taxation of costs (Doc. No. 326). Also before the Court is Defendants' motion for taxation of costs. (Doc. No. 311.) For the reasons set forth below,

the Court grants in part and denies in part both parties' motions for taxation of costs. The Court denies Plaintiff's other motions.

## I. PLAINTIFF'S MOTION FOR A PERMANENT INJUNCTION

Plaintiff asks for a permanent injunction against Defendants, arguing that monetary damages have proven insufficient to dissuade Defendants from defaming Broadspring. "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court. . . ." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Under California law, which applies to Plaintiff's claims here,[1] courts have generally recognized that an injunction is an "extraordinary remedy," *Intel Corp. v. Hamidi*, 71 P.3d 296, 303 (Cal. 2003), and that "a court must tread lightly and carefully when issuing an order that prohibits speech," *Balboa Island Vill. Inn, Inc. v. Lemen*, 156 P.3d. 339, 351 (Cal. 2007), *as modified* (Apr. 26, 2007); *see also Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 239 F.3d 172, 177 (2d Cir. 2001) ("[F]or almost a century the Second Circuit has subscribed to the majority view that, absent extraordinary circumstances, injunctions should not ordinarily issue in defamation cases."). "To qualify for a permanent injunction, the plaintiff must prove (1) the elements of a cause of action involving the wrongful act sought to be enjoined, and (2) the grounds for equitable relief, such as inadequacy of the remedy at law." *City of S. Pasadena v. Dep't of Transp.*, 29 Cal. Rptr. 2d 113, 120 (1994).

Plaintiff has satisfied the first element of the California standard for an injunction by virtue of the jury verdict in its favor. After Defendants had a full and fair opportunity to litigate the

---

[1] Whether the Court should grant a permanent injunction is a substantive question governed by state – here, California – law. *See, e.g., Franke v. Wiltschek*, 209 F.2d 493, 494 (2d Cir. 1953) (applying state law to injunction in trade secret case); *Sullivan By & Through Sullivan v. Vallejo City Unified Sch. Dist.*, 731 F. Supp. 947, 956 (E.D. Cal. 1990) ("Where federal courts are called upon to adjudicate a claim predicated on state law, under either its diversity or pendent claim jurisdiction, there appears to be no question that the ultimate issue of whether injunctive relief may issue must be decided under applicable state law.") (citation omitted).

merits of their case at trial, the jury returned a verdict in Plaintiff's favor with respect to ten defamatory statements. Plaintiff has thus proven the elements of its defamation claim at trial.

However, Plaintiff has not shown that a remedy at law is inadequate, and it is therefore not entitled to a permanent injunction. Plaintiff argues that Defendants have demonstrated a "refusal to accept that their statements about Broadspring were false and tortious," thereby warranting injunctive relief. (Doc. No. 316 at 4.) Plaintiff first faults Defendants for continuing to defame Plaintiff by asserting a substantial truth defense throughout the trial after the Court denied summary judgment to Defendants. However, the Court's refusal to grant summary judgment to Defendants on their substantial truth defense did not bar them from asserting that defense at trial, and, in fact, they prevailed with this defense on some of their allegedly defamatory statements. (*See* Doc. No. 325, Declaration of Norman C. Simon, dated Apr. 1, 2015 ("Simon Decl."), Ex. A at 1430-33.) Moreover, statements asserting a defense to liability, which are made during a judicial proceeding, are privileged under California law. *See* Cal. Civ. Code. § 47(b); *see also Passman v. Torkan*, 40 Cal. Rptr. 2d 291, 298 n.5 (Cal Ct. App. 1995) ("[P]arties to judicial proceedings have the same absolute immunity as do attorneys for defamatory statements made prior to, in the institution of, or during the course[] of, a proceeding." (quoting Robert D. Sack, *Libel, Slander, and Related Problems* 273-74 (2d ed. 1980))). Thus, Plaintiff cannot use Defendants' statements at trial as evidence that Defendants have continued to defame Plaintiff after the verdict.

Plaintiff further argues that Defendants' press release after the trial is indicative of Defendants' continued defamatory behavior. As an initial matter, it is noteworthy that Defendants' press release was issued in response to a press release from Plaintiff. (*See* Simon Decl. Ex. B.) Moreover, the defamatory statements that Plaintiff identifies in Defendants' press release are direct quotes from Defendants' summation, explaining the basis for Defendants' defense at trial.

Specifically, the press release recites a passage from the summation of Defendants' lawyer in which the lawyer explains two inaccuracies contained in reviews authored by Cosentino. *Compare* Simon Decl., Ex. D, *with* Simon Decl., Ex. A at 1257:17-1258:2.) In the summation, the lawyer acknowledged "technical inaccuracies" in the reviews – that Sanford Wallace was not Mindset's founder and that the Federal Trade Commission did not shut down Mindset in 2005 – and clarified how the statements could have been "more accurate." (Simon Decl., Ex. D.) Significantly, the press release does not include any actionable defamatory statements. At most, it references certain statements found defamatory by the jury as part of counsel's explanation of the defenses asserted at trial. Thus, although the press release is not protected by the same absolute privilege as Defendants' statements made during trial because it occurred outside of the judicial proceeding, *see Bradley v. Hartford Accident. & Indem. Co.*, 30 Cal. App. 3d 818, 827 (Ct. App. 1973), it is not evidence that Defendants have continued to defame Plaintiff after trial.

The cases cited by Plaintiff in support of its request for an injunction do not dictate a different result because, in each of them, the court concluded that injunctive relief was necessary to stop the defendants' repeated defamatory behavior. For example, in *Balboa Island Village Inn, Inc.*, the court noted "the importance of limiting any order restraining speech," but found that a narrowly tailored injunction could be permissible to prohibit the defendant from repeating the same defamatory statements after trial. 156 P.3d at 351. And in *Merck Eprova AG v. Gnosis S.p.A.*, the Court found that the defendants' false advertising was "willful and done in bad faith," 901 F. Supp. 2d 436, 463 (S.D.N.Y. 2012), *aff'd*, 760 F.3d 247 (2d Cir. 2014), and therefore concluded that an injunction was necessary, since the defamation continued for several years while the litigation was underway, *id.* at 462 n.15. Here, however, as already discussed, Plaintiff has not demonstrated

4

that Defendants have continued to repeatedly defame Plaintiff and that further deterrence is necessary.

In sum, Plaintiff has not shown that the remedy at law has been insufficient or that extraordinary circumstances warrant injunctive relief. Since a permanent injunction is an extreme and drastic remedy, it is clearly not appropriate here, where the jury's findings on Defendants' liability were narrow and Plaintiff has not shown that a remedy at law has been inadequate.

## II. PLAINTIFF'S MOTION FOR A NEW TRIAL

Plaintiff seeks a new trial on damages or, in the alternative, asks for *additur*, arguing that the jury's minimal damage award and failure to award compensatory damages are a "denial of justice" under California law. (Doc. No. 316 at 14 (quoting *Turner v. Hearst*, 70 P. 18, 19 (Cal. 1902)).) "A motion for a new trial should be granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992) (internal quotation marks and citations omitted). *Additur*, by contrast, is the practice by which a court increases a damage award after a jury verdict. However, the Second Circuit has noted that such relief is constitutionally impermissible in federal court under the Seventh Amendment. *See Elyse v. Bridgeside Inc.*, 367 F. App'x 266, 267 (2d Cir. 2010) (citing *Dimick v. Schiedt,* 293 U.S. 474, 486-88 (1935)); *see also Gentile v. Cty. of Suffolk*, 926 F.2d 142, 155 (2d Cir. 1991) (noting the "constitutional prohibition of additur under the Seventh Amendment"). For the reasons that follow, Plaintiff has not shown that the damages verdict in this case warrants a new trial.

Plaintiff contends that the Court's instruction on nominal damages constituted error because the Court instructed the jury that an award of nominal damages was permissible in this case. However, the instruction directly mirrored California's model jury instruction on damages

5

in a defamation case. *Compare California Civil Jury Instruction* § 1702 ("Without presenting evidence of damage, [*name* of *plaintiff*] is entitled to receive compensation for this assumed harm in whatever sum you believe is reasonable. You must award at least a nominal sum, such as one dollar." (brackets in the original)), *with* (Simon Decl., Ex. A at 1336 ("Without presenting evidence of damage, Broadspring is entitled to receive compensation for this assumed harm in whatever sum you believe is reasonable. You must award at least a nominal sum, such as 1 dollar.").) The Court's instruction on damages thus accurately stated the law in this area. *See Sommer v. Gabor*, 48 Cal. Rptr. 2d 235, 246 (Cal. App. Ct. 1995) (finding no error in jury instructions that included statement: "You may in the exercise of your discretion award nominal damages only, namely an insignificant sum such as one dollar.").

*Turner v. Hearst*, on which Plaintiff relies heavily for this argument, does not suggest otherwise. In that century-old case, which has not been cited in a published judicial opinion since 1937, the California Supreme Court recognized that damages of "a merely nominal sum" may generally be proper in defamation cases, but emphasized that given the particular circumstances of that case – in which the defendant committed libel "of a most serious character" – the plaintiff was entitled to more substantial damages. 70 P. at 18-19. Specifically, the defendant newspaper in *Turner* wrongfully stated that the plaintiff had been arrested on a criminal charge after swindling an actress out of money, and then took almost sixty days after publication to retract the false statements, despite admitting to their falsity. *Id.* at 18. Here, although the jury did find Defendants liable for ten defamatory statements relating to false reviews posted online, these statements do not rise to the level of the libel in *Turner* where the plaintiff was wrongly branded a criminal. In sum, Plaintiff has not shown that the defamation in this case is so serious so as to merit deviating from California's model instruction on damages.

Furthermore, Plaintiff *did* have an opportunity to argue for more substantial damages in front of the jury. Indeed, the Court allowed Plaintiff to introduce evidence at trial of its losses. For example, Jonathan Markiles, Broadspring's Chief Executive Officer, testified that Plaintiff lost between $4 and $5 million. (Simon Decl., Ex. A at 1201). Obviously, the jury was entitled to accept or reject these arguments, and the Court will not now second guess the jury's verdict. As Plaintiff has not shown that the "verdict is a miscarriage of justice," the Court denies Plaintiff's motion for a new trial based on the jury's award of nominal damages.

### III. PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

Plaintiff argues that it should have been permitted to introduce evidence of attorneys' fees as special damages. (Doc. No. 316 at 7-8.) However, the Court has already ruled that, under California law, attorneys' fees may not be treated as special damages for purposes of a defamation action, and the Court reaffirms that ruling here. In a cause of action for a statement that is not defamatory *per se*, California law requires a plaintiff to show he has "suffered special damages." Cal. Civ. Code § 45a. Special damages are defined as "all damages which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation, including such amounts of money as the plaintiff alleges and proves he has expended as a result of the alleged libel, and no other." *Id.* § 48a. Although Plaintiff attempts again in its post-trial motion to argue that money spent on a legal defense is money "expended as a result of the alleged libel," neither case law nor common sense supports that argument.

First and foremost, the inclusion of attorneys' fees in special damages would essentially render California's special damages requirement in defamation actions meaningless. Indeed, if the mere retention of an attorney were enough to satisfy this element of a defamation action, California would effectively have a mandatory requirement of attorneys' fees in defamation cases,

something no court has ever found. Put another way, it surely cannot be the case that California's special damages requirement may be satisfied merely by hiring a lawyer.

In addition, although no case is directly on point, California courts have indicated that attorneys' fees are *not* to be treated as special damages. For example, in *Martin v. Szeto*, the California Supreme Court upheld a trial court's denial of attorneys' fees in a defamation case. 84 P.3d 374, 377-78 (Cal. 2004). In analyzing Section 1021.7 – California's statute permitting the award of attorneys' fees for actions against peace officers – the court concluded that awarding attorneys' fees in a case not involving a peace officer "would . . . create a significant and heretofore unrecognized exception to the general rule that all parties to litigation must pay their own attorneys' fees." *Id.* at 376. The court noted that "nothing in the [statute's] legislative history suggests a broader intent to make attorneys' fees available in libel and slander actions generally." *Id.* at 377. Although *Martin* was factually different from this case because there defendants, and not plaintiffs, sought attorneys' fees, the case is indicative of California's general policy in favor of each party paying its own litigation expenses.

To be sure, Plaintiff cites two cases in which federal courts in California have permitted attorneys' fees in defamation cases, but neither of these cases – which are factually and procedurally different from this case – compels the same result here. For example, in *Oakley, Inc. v. McWilliams*, the court awarded attorneys' fees of less than $45,000 as special damages, where the total damage award exceeded $1,000,000. No. 09-cv-07666 (DDP) (RNBX), 2012 WL 4936559, at *4 (C.D. Cal. Oct. 17, 2012), *aff'd*, 584 F. App'x 528 (9th Cir. 2014). Nevertheless, although the court awarded attorneys' fees as "special damages," it did so in a factually distinct context in which a default judgment was entered against the defendant after he refused to appear at trial. Moreover, the court cited no authority for the award and the issue of attorneys' fees was

not raised on appeal. Similarly, in *Sargent v. National Broadcasting Co.*, the court – in evaluating whether a complaint was sufficient to survive a motion to dismiss – found that allegations that plaintiff incurred "legal and other expenses" were sufficient to plead special damages. 136 F. Supp. 560, 564-65 (N.D. Cal. 1955). Once again, however, the court cited no authority for the proposition that attorneys' fees are to be treated as special damages in a case such as this one in which the total damages awarded amounted to $40,158.17. Accordingly, the Court rejects Plaintiff's argument that it is entitled to over $1.8 million in attorneys' fees as special damages.

## IV. Defendants' Motion for Taxation of Costs

Defendants seek taxation of costs for deposition and trial transcripts, witness fees and expenses, exemplification, trial graphics, and internet connection services pursuant to 28 U.S.C. § 1920, Rules 54 and 68(d) of the Federal Rules of Civil Procedure, and Local Rule 54.1(c)(6) of the Southern District of New York Local Civil Rules. (Doc. No. 313 at 1.) Rule 68(d) provides that "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d). On December 23, 2014, Defendants served Plaintiff with a Rule 68 Offer of Judgment for the total sum of $1,500,000.00. (Simon Decl., Ex. A.) Plaintiff acknowledged receipt of the Offer of Judgment but declined it. Because the jury's award of $40,158.17 – comprised of $157.17 in actual damages, $1.00 in assumed damages, and $40,000 in punitive damages – fell far short of the amount offered by Defendants in their Rule 68 Offer of Judgment, Defendants are entitled to have Plaintiff pay their "costs incurred after the offer was made." Fed. R. Civ. P. 68(d); *see also Stanczyk v. City of New York*, 752 F.3d 273, 281 (2d Cir. 2014) ("Rule 68 reverses Rule 54(d) and requires a prevailing plaintiff to pay a defendant's post-offer costs if the plaintiff's judgment is less favorable than the unaccepted offer."). Specifically, Defendants request $300 for fees related

to service, $213.35 for expenses related to transporting nonparty witness Mr. Godin, $35,508.78 for court reporter fees, $6,549.72 for exemplification and copying, $136,130.22 for trial graphics and demonstratives, and $2,180.00 for Courtroom Connect internet service, for a total of $180,882.07. (Doc. No. 313 at 1-2.)

Section 1920 provides a list of the costs that may be included in taxation of costs in a federal action:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Several of the costs requested by Defendants fall squarely within the language of Section 1920 and are thus taxable to Plaintiff for the period post-dating Defendants' Rule 68 offer. For example, the $35,508.78 spent on court reporter fees for the transcripts and videos used at trial and in depositions are recoverable under subsection 2.[2] Similarly, the $300 for fees related to service and $213.35 for expenses related to transporting nonparty witness Mr. Godin are recoverable under subsection 3. And the $6,549.72 spent on exemplification and copying of documents and the $2,180 for the costs of Courtroom Connect to allow for the use of digital copies of evidence in the courtroom are recoverable under subsection 4.

---

[2] Plaintiff argues that Defendants are not entitled to recover the costs of depositions that pre-date the Offer. However, even if the depositions themselves took place before trial, the transcripts were necessary for trial and are thus taxable under 28 U.S.C. § 1920(2) as "necessarily obtained for use in the case." Moreover, a significant portion of the depositions addressed Plaintiff's Lanham Act claim on which *Defendants* are the prevailing party and would arguably be entitled to costs pursuant to Federal Rule of Civil Procedure 54(d). *See* Fed. R. Civ. P. 54(d).

However, the costs of trial consultants DOAR Litigation Consulting LLC ("DOAR") – which amount to over $136,000 – do not fall within the textual confines of 28 U.S.C. § 1920 and, accordingly, are not taxable. Defendants argue that the costs are recoverable under Section 1920(4) as further defined by Local Rule 54.1(c)(6). However, Local Rule 54.1(c)(6) states that "[c]osts of maps, charts, and models, including computer generated models, are not taxable except by order of the Court. The cost of compiling summaries, statistical comparisons and reports is not taxable." Although the local rule is helpful in guiding the Court's interpretation of Section 1920, the taxation of costs must still comply with that statute's terms, which the Court finds is not the case here.

And although the Supreme Court has not directly ruled on the issue of whether the costs of trial consultants providing technological support are taxable, it recently emphasized the "modest" and "narrow scope of taxable costs" under 28 U.S.C. § 1920, noting that the statute was intended for "relatively minor, incidental expenses." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012). In *Taniguchi*, the Supreme Court found that the cost of document translation could not be taxed under Section 1920's provision for the taxation of the cost of interpreters. *Id.* In dicta, the Court also noted that "expenses for experts and consultants are generally not taxable as costs." *Id.* at 2007 n.8. Although *Taniguchi* is not directly on point, it demonstrates the Supreme Court's reluctance to read Section 1920 broadly to permit the taxation of costs that fall outside the plain meaning of the statute.

Here, Defendants seek $136,130.22 to cover the costs of DOAR's assistance with trial graphics and demonstrative services at trial. (Doc. No. 313 at 2.) Although the Court recognizes that DOAR trial consultants played an important role in Defendants' trial preparation and presentation, its consultants, who bill at $395 per hour, appear to have acted as additional legal

11

support staff. As such, DOAR's assistance to Defendants in designing a compelling presentation of the trial evidence is not the type of minor expense taxable under 28 U.S.C. § 1920. Indeed, other courts have previously treated DOAR consulting services as "the equivalent of additional attorneys or legal para-professionals." *BD v. DeBuono*, 177 F. Supp. 2d 201, 204 (S.D.N.Y. 2001) ("DOAR's litigation consulting services fall properly under the rubric of attorneys' fees . . . ."); *see also Carco Grp., Inc. v. Maconachy*, No. 05-cv-6038 (ARL), 2011 WL 6012426, at *6 (E.D.N.Y. Dec. 1, 2011), *rev'd on other grounds*, 718 F.3d 72 (2d Cir. 2013) (awarding reimbursement of costs of DOAR consulting as *attorneys' fees* because "DOAR's presence at trial served the equivalent of additional litigation support staff"). Accordingly, although such costs may be reimbursable as attorneys' fees, they do not fall within the narrow category of costs captured by Section 1920. To hold otherwise would improperly stretch both the statute's plain meaning and its broader purpose. *See generally Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 444 (1987) ("Congress meant to impose rigid controls on cost-shifting in federal courts."). The Court thus finds that Section 1920 allows for the taxation of basic administrative costs, such as printing and photocopying, but that it does not contemplate the taxation of extensive consulting costs like those charged by DOAR.

Notably, all but three of the decisions on which Defendants rely to argue that courts may tax costs for trial technology consultants predate *Taniguchi*. In addition, the post-*Taniguchi* opinion *In re Omeprazole Patent Litigation* does not cite the *Taniguchi* decision and the Court disagrees with its outcome. No. 00-cv-4541 (BSJ), 2012 WL 5427791 (S.D.N.Y. Nov. 7, 2012). In that case, Judge Jones recognized that "[c]ourts in other circuits disagree about whether the reference in 28 U.S.C. § 1920(4) to 'exemplification' includes demonstrative aids," but allowed the taxation of consulting costs because the "graphics and models aided in the efficient and

effective presentation of complex evidence and were extremely helpful to the Court." *Id.* at *7. Judge Jones did not explain, however, how the statute could be interpreted to permit the taxation of these costs. Although the Court agrees that these graphics can be – and indeed were – very helpful to the presentation of Defendants' case, that is not sufficient to permit their taxation under 28 U.S.C. § 1920.

Similarly, although costs for trial technology support were awarded in the *Merck* cases, which postdate *Taniguchi*, those cases are also distinguishable on several grounds. First, in the *Merck* cases, the Court used its power to award costs "beyond those prescribed by [28 U.S.C. § 1920]" based on a finding that the "parties clearly acted in bad faith or conducted themselves dishonestly." *Merck Eprova AG v. Brookstone Pharm.*, No. 09-cv-9684 (RJS), 2013 WL 3146768, at *5 (S.D.N.Y. June 10, 2013) (citation omitted); *see also Gnosis S.p.A.*, 901 F. Supp. 2d at 463 (noting that "Gnosis's false advertising in this case was willful and done in bad faith" and that its "litigation strategy was conducted in bad faith"). The Court specifically noted that "'when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons,' the Court may award costs beyond the limits of those prescribed by statute, pursuant to the Court's inherent power to manage its proceedings." 2013 WL 3146768, at *5 (quoting *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10-cv-1853 (PGG), 2011 WL 1002439, at *3 (S.D.N.Y. Mar. 16, 2011), *aff'd*, 483 F. App'x 634 (2d Cir. 2012)); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). As there is no indication or allegation that either party acted in bad faith during the trial of this case, a deviation from statutorily-prescribed costs is neither warranted nor authorized. In addition, the *Merck* court also noted that, where the statute at issue in that case – the Lanham Act – allowed for "the shifting of attorneys' fees, awards may include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." No. 07-cv-5898 (RJS), 2013 WL

364213, at *5 (S.D.N.Y. Jan. 31, 2013) (internal quotation marks omitted), *aff'd* (July 29, 2014), *aff'd*, 760 F.3d 247 (2d Cir. 2014). Thus, in *Merck*, the court acknowledged that it was awarding costs *beyond* the statutory prescriptions of 28 U.S.C. § 1920, whereas here the Court is confined to the costs contemplated by that statute.

Given that the Court can find no statutory basis on which to tax the DOAR consulting fees, it has no choice but to deny them. Accordingly, Defendants are entitled to taxation of costs in the amount of $44,762.85.

V. Plaintiff's Motion for Taxation of Costs

Federal Rule of Civil Procedure 54(d) allows for the taxation of costs to a "prevailing party." As the prevailing party on its defamation claim only, Plaintiff is entitled to taxation of costs on that claim, but not on its Lanham Act false advertising claim. To reflect this partial success, the Court concludes that Plaintiff is entitled to recover half of its taxable costs. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting that "the most critical factor [in apportioning attorneys' fees] is the degree of success obtained"); *Kassim v. City of Schenectady*, 415 F.3d 246, 255-56 (2d Cir. 2005) ("Because the plaintiffs' degree of success is 'the most critical factor,' we authorized the district court to reduce the requested award to account for the limited success" (quoting *Hensley*, 461 U.S. at 426)). In addition, Plaintiff can only tax costs that predate Defendants' Rule 68 Offer. *See Stanczyk v. City of New York*, 990 F. Supp. 2d 242, 253 (E.D.N.Y. 2013), *aff'd*, 752 F.3d 273 (2d Cir. 2014) (allowing prevailing plaintiff to recover only pre-offer costs).

Plaintiff seeks $20,265.14 to cover the costs of deposition transcripts and $350 for docketing fees. (Doc. No. 328 at 19, 21.) As addressed above, these costs are taxable because they represent "[f]ees for printed or electronically recorded transcripts necessarily obtained for use

in the case" and "[d]ocket fees" under 28 U.S.C. §§ 1920(2) and (5). Plaintiff also seeks $273 to cover the cost of responding to Defendants' electronic discovery production requests prior to the Rule 68 Offer. The "costs of converting native files to TIFF are considered 'costs of making copies of any materials' under section 1920(4)." *Balance Point Divorce Funding, LLC v. Scrantom*, 305 F.R.D. 67, 73 (S.D.N.Y. 2015) (quoting 28 U.S.C. § 1920(4)). Plaintiff may thus also tax the cost of electronic discovery that was made in response to Defendants' request to convert files to TIFF before production. As Plaintiff is entitled to recover only half of these taxable costs, Plaintiff may tax $10,444.07 for transcripts, $175 for docketing fees, and $136.5 for electronic discovery.

As already discussed above, the Court concludes that the costs of trial graphics are not properly taxable. Accordingly, the Court denies Plaintiff's request to tax costs for VisuaLex, which assisted with the creation of trial graphics and demonstrative exhibits, and InData, which provided a trial technician. Plaintiff also may not tax $4,357.50 for Defendants' deposition of Plaintiff's expert, Russell W. Mangum. Dr. Mangum's deposition and his trial testimony addressed lost profits relevant to Plaintiff's Lanham Act claim and did not pertain to Plaintiff's defamation claim. (*See* Simon Reply Decl., Ex. N at 88-89.) As Plaintiff is only entitled to costs for the defamation claim on which it prevailed, it may not tax costs associated with the deposition of Dr. Mangum.

In sum, as the prevailing party on its defamation claim, Plaintiff may tax $10,755.57 to cover half of its pre-offer costs related to the defamation claim.

## VI. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT Defendants' and Plaintiff's motions for taxation of costs are GRANTED in part and DENIED in part. Defendants are entitled to taxation of costs in the amount of $44,762.85, and Plaintiff is entitled to $10,755.57

in costs. IT IS FURTHER ORDERED THAT Plaintiff's motions for a permanent injunction, a new trial, and attorneys' fees are DENIED. The Clerk of the Court is respectfully directed to terminate the motions at docket numbers 311, 314, and 326, and to close this case.

SO ORDERED.

Dated:      February 24, 2016
            New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE